**MICHAEL J. LIBMAN (SBN 222353)**
**LAW OFFICES OF MICHAEL J. LIBMAN, APC**
18321 Ventura Boulevard, Suite 700
Tarzana, California 91356
Telephone: (818) 995-7300
Facsimile: (866) 644-6764
_mjl@libmanlaw.com_

Plaintiff In Pro Per and Counsel for Plaintiffs
Law Offices of Michael J. Libman, APC, Barbara Libman
And, Minors "A" and "B"

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. LIBMAN an individual, LAW OFFICES OF MICHAEL J. LIBMAN, APC, A California Professional Corporation; BARBARA LIBMAN, on behalf of the class of US Citizens and Residents; MINOR "A" by and through the minor's parents MICHAEL J. LIBMAN AND BARBARA LIBMAN; MINOR "B" by and through the Minor's parents MICHAEL J. LIBMAN and BARBARA LIBMAN<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; National Government; US ATTORNEY GENERAL MERRICK B. GARLAND, in his official capacity; TRACY L. WILKISON, in her official capacity; KRISTI KOONS JOHNSON, in her official capacity MELISSA J. MILLS, ESQ (USACAC) in her individual capacity; FBI SPECIAL AGENT ANDREW CIVETTI in his individual capacity; FBI SPECIAL AGENT JULIENNE MAYFIELD in her individual capacity; FBI SPECIAL AGENT JOHN DOE in his individual capacity; FBI SPECIAL AGENT JIM DOE in his individual capacity; FBI SPECIAL AGENT THOMAS RUSCITTI, in his individual capacity; BRIAN S. KABATECK, ESQ, in | **CASE NO. 2:21-CV-09455**<br><br>**CLASS ACTION CLAIMS FOR INJUNCTIVE AND/ OR DECLARATORY RELIEF AGAINST THE UNITED STATES OF AMERICA**<br><br>**AND FOR VIOLATION OF INDIVIDUAL CIVIL RIGHTS, DAMAGES, INJUNCTIVE AND DECLARATORY**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**CLAIM FOR PUNITIVE DAMAGES ON THE INDIVIDUAL CLAIMS** |

his individual capacity and as an actor under )
color of state law; KABATECK, LLP, entity )
of unknown form; MICHAEL FEUER, in his )
individual capacity; JUDGE ELIHU M. )
BERLE, in his individual capacity; CITY OF )
LOS ANGELES, a municipal entity; )
MARIBETH ANNAGUEY, ESQ. )
individually; ERIC M. GEORGE, )
individually; ERIC KINGSLEY an )
individual; KINGSLEY AND KINGSLEY, )
entity form unknown; NICOLA HANNAH )
in his individual capacity; MACK ERIC )
JENKINS, ESQ. in his individual capacity )
and DOES 3 to 300 inclusive )
)
)
Defendants. )
)
)
)
_____ )

# I.   COMPLAINT

1.   MICHAEL J. LIBMAN ("MJL") an individual, LAW OFFICES OF MICHAEL J.

LIBMAN, APC, ("MJL APC") a California Professional Corporation; BARBARA LIBMAN

("BL"), an individual; MINOR "A" by and through the minor's parents MICHAEL J.

LIBMAN AND BARBARA LIBMAN; MINOR "B" by and through the Minor's parents

MICHAEL J. LIBMAN and BARBARA LIBMAN ("LIBMANS" or "INDIVIDUAL

PLAINTIFFS") bring this suit against the UNITES STATES OF AMERICA ("USA"); US

ATTORNEY GENERAL MERRICK B. GARLAND; TRACY L. WILKINSON; KRISTI

KOON JOHNSON; MELISSA J. MILLS,  ESQ. ("Mills"); FBI SPECIAL AGENT ANDREW

CIVETTI ("Civetti"); FBI SPECIAL AGENT JULIENNE MAYFIELD ("Mayfield"); FBI

AGENT JOHN DOE ("John Doe"); FBI AGENT JIM DOE  ("Jim Doe");  FBI SPECIAL

AGENT THOMAS RUSCITTI; NICOLA HANNAH, ESQ; MACK ERIC JENKINS, ESQ;

BRIAN S. KABATECK, ESQ. and KABATECK, LLP, ("Kabateck"); CITY OF LOS

ANGELES ("City");  HON. ELIHU M. BERLE, ("Judge Berle"), a California Superior Court

Judge, County of Los Angeles; MICHAEL FEUER ("Feuer"); ERIC M. GEORGE ESQ;

MARIBETH ANNAGUEY, ESQ. ("Annaguey"); ERIC KINGSLEY ESQ; KINGSLEY AND

KINGSLEY and DOES 3 to 300 inclusive, pleading class  claims for injunction and declaratory relief, as well as individual claims for compensatory damages, punitive damages, injunctions and declaratory relief, and any all other relief deemed appropriate.

## II.  INTRODUCTION

2.  This class and civil rights lawsuit seek to vindicate rights of thousands of people whose home or office surveillance cameras were destroyed or disabled during execution of federal search warrants. The individual civil right, and supplemental state claims, arise out of egregious civil and constitutional rights violations, abuse of power, abuse of process, battery, intimidation by force and threat of force, denial of right to fair trial, and domestic terrorism committed against an officer of the court, Michael J. Libman, and his family by defendants who conspired to do evil and vile acts, to try and intimidate and terrorize MJL, to prevent, pressure and coerce him to forego, and/ or abandon his independent investigation to expose cover ups, conspiracies, ploys, schemes, conflicts of interests by and in participation of the defendants, and others yet to be identified through discovery, that have cost, and will continue to costs, the City of Los Angeles Taxpayers and Los Angeles Department of Water and Power ("LADWP") ratepayers hundreds of millions of dollars, and likely over a billion dollars, stemming from the disastrous deployment of the CC&B System by LADWP/PWC in September of 2013 and the resulting consumer class actions that were settled in May of 2017, specifically those consolidated with and related to the heavily publicized action styled as *Antwon Jones vs City of Los Angeles* LASC Case No. BC577267 et al, ("*Jones*") in addition to all the harms inflicted on Plaintiffs as alleged more fully, *infra*.

3.     Defendants, most of whom are attorneys, a judge, political figures and City officials, and employees and/ or agents of federal agencies, caused and/or directly or indirectly participated in, encouraged, and facilitated an FBI military Gestapo-style invasion of attorney Plaintiffs' home on June 30, 2020, at 5:59 a.m., utilizing a false, untrue, misleading, unconstitutional, illegal, and without probable cause search warrant to invade the Libmans' Home under the false pretenses and manufactured pretext that MJL was an illegal "machine

guns" owner, smuggler, extortionist, and a money launderer in order to: 1) intimidate, scare and horrify MJL into submission and "cooperation"; 2) gain access to MJL's attorney work product and privileged client materials concerning MJL' investigation into possible corruption, self-dealing, undisclosed conflicts of interest between and among at least some of the defendants, and to seize MJL's attorney client-confidential materials related to his representation of MJL APC in a related class action, all to the immense harm, suffering and damages to Plaintiffs.

4.    Defendants, and some or all of whom, were, and are at all relevant times, motivated by malicious, nefarious, and outright evil motives intended to violate and destroy the reputation and lives of MJL and his family, and to unlawfully and maliciously shame, embarrass, defame, and inflict financial ruin, severe emotional distress, and violate Plaintiffs' constitutional rights.  Federal defendants went as far as lying to and misleading a federal magistrate judge to prevail on him to sign off on a search warrant based on false and misleading claim and allegations, without probable cause,  that MJL was in possession of machine guns, transported machine guns across state lines (aka a gun smuggler) and was a money launderer in order to perform an excessively forceful, intimidating, Navy-Seal-like, worthy only of a dangerous terrorist, invasion and incursion of Plaintiffs' home during the height of the COVID-19 pandemic.

5.     Moreover, one of the first things the FBI agents, dressed in full combat camouflage uniforms, and fully armed, did was to try and destroy, damage, and/ or disable the security/surveillance cameras installed on the outside perimeter of Plaintiffs' Home and in the interior of Plaintiffs' Home to conceal the government's illegal, egregious, unconstitutional, vile and likely criminal conduct, all in violation of the search warrant and the
Fourth and Fifth Amendments.  (*See* Photos as **Exhibit 1** to this complaint) The search warrants did not authorize the government to seize, take, destroy, disable, damage, or otherwise make inoperable the security/ surveillance cameras installed on the permitter of the Libmans' Home and in the interior of plaintiffs' home.  The government knew before their invasion that security cameras facing at least the front entrance to the house were affixed to the

edifice.

6.      As evidenced from still photos derived from the full video footage that the FBI failed to destroy, their illegal military-style invasion of Plaintiffs' home is self-evident. A lot of it was captured and preserved on a DVR'S hard drive that the FBI did not seize when they retreated, apologetically, from the Libmans' Home. Moreover, while the armed to the teeth FBI agents, and the Assistant US Attorneys were occupying the Plaintiffs' Home in their investigatory capacities, Defendant Assistant US Attorney, Melissa J. Mills, who simultaneously worked for and continues to do work for the Gibson, Dunn, & Crutcher LLP's ("Gibson Dunn" or "The GD Firm")  downtown Los Angeles Office (the same office that defended the *City of LA vs PWC* LASC Case No. BC574690) while allegedly working for the US Attorney, emailed MJL's attorneys telling them: "we remain interested in your client's (MJL) cooperation."  To further intimidate and terrorize plaintiffs, two government agents, JOHN DOE and JIM DOE, armed with machine guns, dragged the handcuffed and barefoot MJL, who was paraded in the middle of the street for the entire neighborhood to see for nearly 25 minutes, to an upstairs bedroom of his then obviously sleeping Minor B. Agent JOHN DOE positioned himself at the foot of the bed of Minor B.  Agent JIM DOE was behind the handcuffed MJL holding MJL at the side of the child's bed where the half-covered young child was obviously still fast asleep. JOHN DOE, very conspicuously pointed a machine gun at the little half-naked body of Minor B, noticeably making sure that MJL was able to see, comprehend and appreciate that the machine gun was being pointed at the sleeping child in an obvious and apparent attempt to scare, intimidate, horrify, and mortify, MJL and his child with this display and use of force.  JOHN DOE and JIM DOE succeeded: MJL was mortified and Minor B shocked, scared and emotionally distressed, as more fully alleged, *infra.* MJL felt like he aged 10 years during those mortifying moments as he was praying to all that he holds dear that his child would not make a sudden and startled move, while awaking to a sight of a military invasion in his bedroom, prompting the machine-gun-toting government agent to open fire on him. No parent should experience what MJL experienced in those terrifying moments. Recollecting that specific event makes MJL nauseous even as he types these words in this

complaint. **This cannot be allowed to happen again to any American who encounters government law enforcement agents at their home or place of business.** MJL, BL and the Minors, were thereafter, and still are, apprehensive, startled, anxious and fearful nearly every time there is some sort of a loud noise outside the Libmans' Home fearing it may be another government armed invasion.  The Libmans feel violated.

7.     During the government invasion, to make the experience even worse for MJL, Ms. Mills, approached MJL, who was wearing a surgical face mask placed on his face by one of the FBI agents earlier during the start of the invasion, with some device in one hand, and reached with her other hand to try and forcefully rip the facemask off MJL's face. MJL recoiled back, the face mask snapped against MJL's face. MJL asked Ms. Mills, with a stunned and surprised voice: "What are you doing?" Ms. Mills' shocking response was: "***I can do whatever I want***."   MJL in turn responded: "No, you cannot! You can only do what "this" (tapping with his finger on the search warrant that was placed on the corner of a desk, as by that time MJL was handed and had a chance to briefly peruse the warrant) allows you to do, and the constitution. You know I am a lawyer. And if you want me to respect your professionalism, respect mine." Ms. Mills turned around and hastily walked away.

8.     All this occurred at the home-office room of the Libmans' Home at the presence of special agent Civetti, a Caucasian, short, blond, young agent who was the apparent designated photographer to document the military style incursion, and three other FBI agents, two males and a female agent. They also appeared to have been taken aback or surprised by Ms. Mills' conduct and statement. However, they kept quiet and did not say a word. No machine guns or evidence of illegal gun running, money laundering, extortion or any kind of terrorism was discovered by the FBI at the Plaintiffs' home when they concluded rummaging through the Libman Home, while eating cupcakes that they brought with them (*See* photo **Exhibit 2**), as no such evidence ever existed, or could have, in the Libmans' Home, or anywhere else.  The armed government agents and Ms. Mills appeared to have a jolly good time at the Libmans' Home. Clearly, terrorizing a law-abiding lawyer and his family who were/ are investigating possible corruption by lawyers and other state and local government

officials, was a good and productive day for these federal government agents.

9. Additionally, due to the deception, fraud and misleading of a Federal Magistrate Judge in the process of obtaining the search warrant—by telephone—the Magistrate Judge unconstitutionally and without probable cause authorized the government to seize MJL's and MJL APC's, "***PLANS [aka ideas] to collect information about judge Elihu Berle and Brian S. Kabateck.***" Meaning, investigatory work product and *evidence of thoughts* of MJL who was/is investigating suspected corruption and concealed conflicts of interest, in violation of MJL/ MJL APC's civil and constitutional rights and to the harm of the LA City taxpayers and LADWP Ratepayers, ultimately. During the FBI's unlawful invasion of Libmans' Home, figuratively speaking, in effect the federal government laid out the US Constitution and the Bill of Rights at the entrance to the Libmans' Home, trampled on them, wiped their boots on them, and then gleefully ate cupcakes at Plaintiffs' valuable dining table and chairs, damaging the table and chairs with their side arms, belts, and boots/shoes in the process. (*See* pics of the cupcakes attached hereto as **Exhibit 3**) The government agents appeared to be having a grand old time at the Libmans' Home that day violating the Plaintiffs' civil rights judging from the agents' happy, smiling faces.

10. Moreover, undeterred by the military invasion of his home, MJL stated on the record in the *Jones* case several times, even after the FBI raid, that MJL did not like what he was seeing going on the *Jones* case since Kabateck was installed by Judge Berle as the new lead class counsel in *Jones* and will continue to investigate.

11. Moreover, in the afternoon of March 8, 2021, a person who identified himself as FBI Special Agent Tom Ruscitti, during an incoming telephone conversation that Agent Ruscitti initiated, wherein the caller-ID indicated the call was coming in from the FBI, conveyed a not-so-thinly-vailed threat to intimidate MJL to keep away from attorney Brian S. Kabateck indicating to MJL that the FBI have now assumed the role of security guards for Mr. Kabateck. The threat was made, on information and belief, on behalf of Ms. Mills, who appears to be working simultaneously for the The GD Firm's downtown Los Angeles Office ***and*** as an Assistant US Attorney in the Los Angeles office, as well as on behalf of Mr.

Kabateck.  When asked by MJL during that telephone conversation if agent Ruscitti was working with Ms. Mills, Agent Ruscitti's response was: "I am not gonna confirm or deny that." Plaintiffs reasonably interpret Agent Ruscitti's statement as an evasive and improper Glomar response that means that agent Ruscitti did in fact make the call on behalf of Ms. Mills to communicate at least an implied threat of more violence and intimidation by the government. All this, and much more, is alleged in greater detail in the below paragraphs of this complaint, supported by still photos from video footage of the government invasion, diagrams, documents, and other exhibits attached to this complaint.

### III. ISSUES AND HARMS THIS LAWSUIT SEEKS TO ADDRESS AND REMEDY

12.  To whom does a US citizen turn to for protection of his/her constitutional and civil rights when an Assistant US Attorney with the Civil Rights Section,  accompanied by militarized FBI agents, violate his/ her constitutional and civil rights while machine guns are pointed at his children and spouse? Marines? Navy? Army? CIA? NSA? Allies of the US? What if the citizen happens to be an attorney conducting an independent anti-corruption investigation?

13. Do we still live in the USA as it was envisioned by our founding fathers or do we already live in a Gestapo-like dystopia where a federal agent feels free to fabricate grounds to deceive a Federal Magistrate Judge, on the telephone, for that judge to bless a military invasion of a lawyer's home to intimidate the lawyer, his children and wife, by claiming that the agent can do "whatever she wants" in the lawyer's home, while surrounded by heavily  armed government agents, to coerce the lawyer by force and intimidation to "cooperate"?  If the answer is yes to all, then we, as a society are speeding ahead on the highway to dystopia, and likely have arrived at that destination already.  And, if at least redress of the harms to these plaintiffs, and prohibition of future such misconduct cannot be achieved in federal court, then these plaintiffs are destined to become a roadkill and a statistic to destination dystopia, several of many surely to come. Plaintiffs pray that the federal courts system will enable a resounding "No" response to these questions and issues.

14.      Is it acceptable, proper, legal, or constitutional for an Assistant US Attorney to

be a mole for, conspire, collude with, and/or do favors for a national law firm (The GD Firm) that she worked for, and still is apparently, while she is simultaneously working for the US Government purportedly, to enable that law firm to intimidate, coerce, and threaten lawyers, who are investigating the national law firm's involvement in depriving Los Angeles taxpayers of hundreds of millions of dollars in compensation due to them from that law firm's prominent corporate client-PWC by threats and intimidation?  Plaintiffs pray that this lawsuit will provide a resounding response in the negative to these specific issues as well.

15. Is a state court judge above the law when retaliating against a lawyer who is investigating the judge's possible involvement in a corrupt scheme, abuse of power and violation of multiple California's Judicial Cannons, to distract the public from the Judge's, and others', mishandling of the *Jones* and *PWC* lawsuits?

16.     This lawsuit will prove that the principal outcome since Kabateck was installed as lead class counsel in the *Jones* class action is a very expensive PR stunt, presided over by his undenied friend Judge Berle, who less than a month ago determined, after two years of "investigations" and millions of taxpayer dollars wasted that the settlement of at least 67.5 million dollars that he approved in 2017 (presently over $100 million), as fair, reasonable and adequate, is still is, and at all times was, fair, reasonable and adequate.  Millions of dollars of LA City Taxpayers' funds wasted on a court-appointed special master, who is not and was not on the list of California State Bar approved Special Masters, and at least hundreds of millions of dollars not recovered from some very happy insurance company and/ or companies and PWC.   Millions more of City of Los Angeles taxpayers' funds will likely be wasted on payments to Mr. Kabateck and others connected to the *Jones* PR stunt.

17.     Further, this Court should permanently enjoin the federal government from destroying, disabling, turning off,  tampering with, or rendering inoperable a home or office surveillance system of any person or business that is/are subject/ target of a federal search warrant, in line with the spirit of US Attorney General Merrick B. Garland's proclamation of September 1, 2021 that Federal Law Enforcement will be required to wear Body-Warn Cameras because: "*Law enforcement is at its most effective when there is accountability and trust between law*

*enforcement and the community. That is why we have expanded our body worn camera program to our federal agents, to promote transparency and confidence, not only with the communities we serve and protect, but also among our state, local and Tribal law enforcement partners who work alongside our federal agents each day.*" The desired transparency can be accomplished only if the neutral, unbiased video footage from home or office ubiquitous surveillance systems of Americans will not be subject to arbitrary destruction or disabling by the same law enforcement agents whose transparency is sought by the US Attorney General.

18.     Is the first amendment to the US Constitution no longer the law in California when it concerns making poignant inquiries of a judicial officer who is subject to a suspicious financial transaction during funding of the 67.5-million-dollar class settlement that he approved? Plaintiffs pray the federal court will reaffirm that the US Constitutions First Amendment is still the law of the land.

19.     Should lawyers now dread even thinking about investigating suspected corruption, and/ or investigating judicial officers for possible bias and lack of integrity?  The answer to this question must be a resounding "NO" to protect the integrity of the justice system, or destination dystopia it is for our society.

## IV. THE PARTIES

### Plaintiffs

20. Plaintiff, MICHAEL J. LIBMAN ("MJL"), is an individual over eighteen years of age, at all times relevant to this action was, and is, an attorney authorized to practice law before all the courts in the State of California and the Central District of the Federal Court, Los Angeles, and residing in the State of California, County of Los Angeles. MJL was at all relevant times a foreign-born, multilingual, naturalized citizen. At times, the multi-lingual skill can appear as an impediment to clear and articulate verbal expression in English, that manifests itself in an accent, as opposed to a native-born speaker. MJL's accent never appeared to be an impediment to practicing law until recent events in the *Jones* class action, wherein a state court and at least one of its deputized "investigators" initiated and encouraged

discrimination against MJL based on his national origin, as more fully alleged, *infra.*

21.     Plaintiff, LIBMAN APC, was, and is, at all relevant times to this action, a professional corporation duly organized and existing under the laws of the State of California, with its principal office located in the County of Los Angeles.

22. Plaintiff, BARBARA LIBMAN, is an individual over eighteen years of age, at all times relevant to this action, residing in the State of California, County of Los Angeles. BL is MJL's spouse and joint owner of the Libmans'/ Plaintiffs' Home located in Tarzana, California.

23. MINOR "A" by and through the Minor's parents MICHAEL J. LIBMAN and BARBARA LIBMAN is a child, residing in the State of California, County of Los Angeles.

24. MINOR "B" by and through the minor's parents MICHAEL J. LIBMAN AND BARBARA LIBMAN is a child, residing in the State of California, County of Los Angeles.

## Defendants

25.     Defendant UNITED STATES OF AMERICA is the national federal government established by the U.S. Constitution. As such, it is subject to limitations imposed by the Constitution, including, as relevant here, the Fourth and Fifth Amendments. The constitutional violations at issue involve the actions of federal agencies and employees and are therefore ultimately chargeable to the federal government itself.

26.     Defendant ATTORNEY GENERAL MARRICK B. GARLAND was sworn in as the 86th Attorney General of the United States on March 11, 2021.  As the nation's chief law enforcement officer, Attorney General Garland leads the Justice Department's 115,000 employees, who work across the United States and in more than 50 countries worldwide. Under his leadership, the Department of Justice is tasked with upholding the rule of law, keeping our country safe, and protecting the civil rights of all Americans. He is sued in his official capacity.

27.     Defendant TRACY L. WILKINSON is the Acting U.S. Attorney for the Central District of California. She is the chief federal law enforcement officer within this jurisdiction,

and she is sued in her official capacity.

28.     Defendant KRISTI KOONS JOHNSON is an Assistant Director of the FBI. She oversees the FBI's Los Angeles Field Office, and she is sued in her official capacity.

29.     The Complaint uses the phrase "the government" of "federal government" to refer to the officers, employees, and agents of the United States of America, including officers, employees, and agents acting under the direction and control of Defendants, Garland, Wilkinson, and Johnson, within the FBI and US Attorney's Office.

30.     Defendant CITY OF LOS ANGELES is a public municipal entity organized and existing under the Laws of the State of California.

31. Defendant MICHAEL FEUER is an individual over eighteen years of age, at all times relevant to this action, is the elected City Attorney of the City of Los Angeles, head attorney and policymaker of the Los Angeles City Attorney's office, a citizen of the State of California, and a resident of Los Angeles County, California. He is being sued in his individual capacity.

32. Defendant MARIBETH ANNAGUEY, ESQ. is an individual over eighteen years of age, at all times relevant to this action, an attorney and partner at Brown George Ross, LLP, a citizen of State of California, and a resident of Los Angeles County, California.

33. Defendant Melissa J. Mills is an individual over eighteen years of age, at all times relevant to this action was/is an assistant attorney at U.S. Attorneys' Office ("USAO"), a citizen of the State of California, and a resident of Los Angeles County, California. She is sued in her individual capacity.

34. Defendant ANDREW CIVETTI is an individual over eighteen years of age, at all times relevant to this action, a Special Agent with the Federal Bureau of Investigations, Los Angeles Office. He is sued in his individual capacity.

35. Defendant JULIENNE MAYFIELD is an individual over eighteen years of age, at all times relevant to this action, a Special Agent with Federal Bureau of Investigations, Los Angeles Office. She is sued in her individual capacity.

36. Defendant JOHN DOE is an individual over eighteen years of age, at all times

relevant to this action, an agent with the FBI. The true identity of agent JOHN DOE will be learned through discovery as his face was obscured by a military style mask. He is sued in his individual capacity.

37. Defendant JIM DOE is an individual over eighteen years of age, at all times relevant to this action, a Special Agent with Federal Bureau of Investigations. The true identity of agent JIM DOE will be learned through discovery as his face was obscured by a military style mask. He is sued in his individual capacity.

38. Defendant NICOLA HANNA, former US Attorney, Central District of California, past and current partner in The GD Firm, and, on information and belief, supervising attorney of Mack Eric Jenkins and Melisa E. Mills. He is sued in his official and individual capacities.

39. Defendant MACK ERIC JENKINS is the Chief of Public Corruption and Civil Rights Section of US Attorney, Central District of California, Los Angeles Office, and past associate of The GD Firm.

40. Defendant BRIAN S. KABATECK, ESQ. is an individual over eighteen years of age, at all times relevant to this action, is an attorney doing business and residing in the State of California, County of Los Angeles, and a partner in Kabateck LLP. He is sued in his individual capacity and as a partner of Kabateck, LLP.

41. Defendant KABATECK, LLP is and at all times relevant to this action, is an entity of unknow form, despite the LLP designation, with its principal place of business located in County of Los Angeles.

42. Defendant ANASTASIA MAZZELLA is an individual over eighteen years of age, at all times relevant to this action, is an attorney doing business and residing in the State of California, County of Los Angeles, and a partner with defendant Brian S. Kabateck in Kabateck LLP. She is sued in her individual capacity and as partner of Kabateck, LLP.

43. Defendant ERIC KINGSLEY is an individual resident of Encino, California, and partner, principal, manager, owner of KINGSLEY and KINGSLEY, an entity of unknown form, with its principal place of business in the County of Los Angeles.

44.     KINGSLEY AND KINGSLEY, an entity of unknown form, is a law firm based out of Encino, California with its principal place of business in Los Angeles County.

45.     Defendant Honorable ELIHU M. BERLE is a Judge of the Civil Department of the Superior Court of the State of California for the County of Los Angeles, Spring Street Courthouse, Department 6 and a resident of Los Angeles County, California. Judge Berle is sued in his individual capacity.

46.     This is an action for damages, injunctive and declaratory relief pursuant to, the US Constitution, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, 42 U.S.C. § 1983, 1985 and 1986 based upon the continuing violations of Plaintiffs' rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and State of California causes of action.

47. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of each of the Defendants acted with an awareness of their primary wrongdoing and realization that their conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## V. JURISDICTION AND VENUE

48. Venue is proper in the Central District in that the events and conduct complained of herein all occurred in the Central District. This Court also has subject matter jurisdiction over Plaintiffs' federal claims for relief under 42 *U.S.C.* §§1983, 1985 and 1986 and over Plaintiffs' state law claims, because they are so related to their federal law claims as to form part of the same case or controversy, pursuant to 28 U.S.C. §1367(a). Jurisdiction also exists pursuant to 28 U.S.C. §§ 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C.

§1367. This lawsuit is also related to the *Bradshaw v. City of Los Angeles* Action ("*Bradshaw*") Case No. 2:19-cv-06661-VAP (JCx) and *Antwon Jones vs City of Los Angeles* et al ("*Jones II*") Case No. 2:20-CV-11502 both currently pending before the Honorable Virginia A. Philips.

## VI. BACKGROUND ALLEGATIONS ABOUT PLAINTIFFS

49.    MJL has been licensed to practice law in California Since December 2002. MJL's license to practice law is in good standing with no disciplinary actions ever taken against him.

50.    From about 2005 or so, MJL collaborated, co-ventured, and co-counseled with the firm of Kingsley & Kingsley ("Kingsley Firm") in Encino, California, on various consumer and employment class actions, as well as individual matters, until about early 2016.

51.    Simultaneously, MJL was collaborating with other firms and attorneys on other class actions and civil matters, who were also collaborating with the Kingsley firm, including Scott A. Miller Esq, of Law Offices of Scott A, Miller, APC.

52.    MJL and several other attorneys, including Scott A. Miller, were all sharing space on the 12th floor in a spacious office suite in prominent building in Encino—the "Kingsley Suite" at 16133 Ventura Boulevard Suite 1200, Encino California 91436.

53.    MJL left the Kingsley Suite on good terms in 2016 and formed a professional corporation, Law Offices of Michael J. Libman, APC ("Libman APC"), a California Professional Corporation, based in Tarzana, California.

54.    MJL or MJL/APC have never been sanctioned in any way by defendant Honorable Elihu M. Berle in the *Jones* action until the retaliatory, unconstitutional, unjust sanctions and disgorgement judgment in excess of 1.8 million dollars entered on or about March 24, 2021.

55.    MJL is the father of, and counsel for, Minor Plaintiffs "A" and "B", a husband of and counsel for Plaintiff BL. MJL was at all relevant times Liaison Counsel in the *Jones* matter, until without notice, grounds, briefing or hearing arbitrarily and improperly ordered

"removed" from his post by Judge Berle because MJL continued investigating and declared so on the record.

56.    MJL was at all relevant times, and still is, counsel of record for MJL APC, in the *Bradshaw* class action.

57.    Plaintiff Barbara Libman is MJL's spouse since 2002 and mother to Minor Plaintiffs "A" and "B" and joint owner with MJL of the Libmans' Home located in Tarzana, California.

## VII. THE *JONES* CLASS ACTION GENESIS AND HISTORY

58.    MJL learned of the LADWP overbilling problem from an unusually high LADWP bill for his late "mother-in-law's house" which was received in the fall of 2013. BL is, and was at all relevant times, the legal title holder of her deceased mother's house. The LADWP account for that house was at all relevant times under BL's name. This house was affectionately referred to by MJL as "my mother-in-law's house."

59.    MJL started researching and working the LADWP overbilling issues in the fall of 2013 and eventually associated with Mr. Landskroner to work the *Jones* action after Attorney Paul R. Kiesel, whom MJL approached first in early 2014 to co-counsel with, declined to participate in a class action by the ratepayers against the City and was ultimately retained by the City as "special counsel" to help the City with its claims on behalf of the ratepayers against PWC.

60.    Mr. Landskroner had the lead role in the *Jones* litigation.

61.    After over two years of very contentious, public, and acrimonious litigation, multiple mediations with retired federal judge Dikran M. Tevrizian, and several edits and rewrites to the settlement agreement at the behest of counsel for the related class actions and Judge Berle, Judge Berle granted final approval of the *Jones* class settlement on July 7, 2017 and issued a Final Judgment. (*See* Final Judgment attached *as **Exhibit 4*** and incorporated herein by reference as if fully set forth herein).

62.    At the July 7, 2017 fairness hearing regarding the proposed *Jones* class settlement, Judge Berle made the following findings: (1) that "the settlement, taken as a whole,

is fair, reasonable and adequate and it is in the best interest of the Class" (2) "…the settlement obviously eliminates the risk associated with continuing litigation.   According to CC&B system monitor, Paul Bender, at a minimum $67.5 million in refunds and credits will be available to class members. ***This number will increase*** as field work investigation[s] are completed" (3) although "settlements are always a compromise of disputed claims and rarely able to place class members in a position of being made completely whole [,] [t]he settlement in this case goes further than most settlements in providing complete monetary recovery for the losses for overbilling, misbilling, and errors in billing"; and (4) that "counsel did an outstanding job and engaged in Herculean efforts to reach an agreement which is in the best interested of all concerned."

63.     The GD Fim, on behalf of defendant PWC among other related defendants, did not object to the *Jones Settlement* despite having notice of the fairness hearing. Judge Tevrizian filed a very detailed declaration in support of the *Jones* settlement agreement.

64. Judge Berle signed an Order Granting Final Approval of the *Jones* Class Action Settlement and ***Final Judgment*** ("Final Judgement" or "Class Order").

65.     In that Class Order, Judge Berle approved "the right of Class **and** Liaison Counsel [a.k.a MJL] to make quarterly applications to this Court for additional awards of reasonable attorneys' fees at the rate of twenty-nine percent (29%) of all future recoveries by Class Members subsequent to Final Approval for: (i) Field Work claims; (2) Pre-Identified Claims Made claims; (iii) Omnibus claims; and (iv) all claims paid in connection with the Settlement, by or on behalf of, the City of Los Angeles, including all departments thereof."

66.     Mr. Paul Bender was appointed as system monitor to monitor LADWP and report to the court on the implementation of the settlement terms, which included overhaul of systems and procedure and to make sure that the publicized promise made by all involved of obtaining 100% refunds to all affected ratepayers would be met.

67.     For the next approximately 18 months, the implementation of the *Jones Settlement* proceeded on track without any serious problems or hiccups. In parallel, Mike Feuer, with City's special outside counsel Paul R. Kiesel, Esq. spearheaded the litigation of the

*City v. PWC*, continued their efforts to recoup the damages the City [rightfully] alleged PWC caused the LADWP/ ratepayers in the course of the CC&B system's deployment.

68.     During the *City v. PWC* litigation, discovery showed that City's then outside counsel (who represented the City as a plaintiff in the *City v. PWC* action), Paul O. Paradis, Esq. (a New York Attorney) had a role in drafting the original *Jones* complaint and that Mr. Paradis at some point before the original *Jones* complaint was filed by MJL's office briefly represented Mr. Antwon Jones—the Class Representative and plaintiff in the *Jones* case.

69.     MJL had no knowledge at all relevant times that Mr. Paradis represented Mr. Jones at some point nor did MJL ever meet Mr. Paradis or spoke to him prior to 2015. MJL had no direct and personal dealings with Mr. Paradis, up to and including the time that the Final Judgement was signed by Judge Berle, in 2017, accept shaking his hand once at one of the mediations.

70.     PWC's attorney, Mr. Daniel J. Thomasch of The GD Firm, working out of that firm's downtown LA office, used the evidence concerning Mr. Paradis to argue that the entire *Jones* settlement was a product of collusion and alleged "conflict" of interest.  This issue caused a sudden and drastic negative shift in the direction of *Jones* and *City of LA v. PWC* action to recover damages of the LADWP ratepayers and the demeanor and posture of Judge Berle toward MJL.

71.     The GD Firm, for PWC, took the position that because special counsel for the City, Mr. Paradis, at one point before the *Jones* action briefly represented Mr. Jones, and was involved in drafting of the original complaint in the *Jones* class action, therefore the entire *Jones* Settlement was suspect as collusive by PWC and its attorneys.

72.     On November 15, 2018, Judge Berle denied PWC's (The GD Firm's) motion for summary adjudication in the *City v. PWC* action on key causes of action and discovery and litigation continued in the related *City v. PWC* case.  The *Jones* Settlement's implementation continued also unabated.

73.     On January 30, 2019, MJL appeared at a status conference in the *Jones* matter at Mr. Landskroner's last minute request, as Mr. Landskroner became unavailable.

74.    MJL was not provided detailed instructions and led to believe that this was going to be just another run-of-the-mill status conference of the kind MJL appeared on in the past in *Jones*.

75.    Mr. Landskroner was leading the work on the implementation of the *Jones* Settlement on behalf of the entire class of ratepayers with MJL's support and participation as needed.

76.    When Judge Berle took the bench, he made it clear that he was displeased that Mr. Landskroner was not present in person and, in a visible emotional response, became aggressive with MJL in tone and demeanor.

77.    When MJL inquired of the court "what the issue [was]" with Mr. Landskroner's absence, Judge Berle became visibly angry with MJL.  Judge Berle began angrily interrogating MJL about his role as class liaison counsel, took umbrage at MJL's description of his honor's demeanor as "peeved," and took his ire as to Mr. Landskroner out on MJL.  During this exchange, Judge Berle's posture made it clear that he was angry, and he glared at MJL from the bench during this exchange with eyebrows frowned.

78.    MJL was baffled by Judge Berle's acrimony and quickly apologized. MJL thought at that moment that Judge Berle might have had a bad day in stressful job, or something like that, but later it became apparent that Judge Berle developed an actual bias against MJL.  Prior to this exchange at the hearing, MJL did not have a single issue with Judge Berle and Judge Berle saw MJL appear at nearly all of the many hearings in the *Jones* matter to that date going back to the inception of the case.

79. Shortly thereafter, in a subsequent hearing, Mr. Landskroner asserted the Fifth Amendment privilege against self-incrimination in response to Judge Berle's questions in open court for reasons unknown to Plaintiffs.

80.    Mr. Landskroner subsequently filed a motion to be relieved as counsel for the class on March 8, 2019, hearing on which was continued multiple times until he withdrew his application to withdraw as counsel for unknown reasons.  Mr. Landskroner died in June 2021.

///

## VIII. "__INVESTIGATIONS__" BY MR. KABATECK AND MR. ROBBINS

81.     On information and belief, Judge Berle invited other lawyers to apply for the position of new class counsel to replace Mr. Landskroner. Several lawyers applied, including some who were counsel in the related *Jones* class actions and participants in approval of the *Jones* Class Settlement, and Mr. Brian S. Kabateck, Esq.

82.     MJL did not apply to be the lead counsel to replace Mr. Landskroner and wished only to remain in his court-approved post as Liaison Counsel.

83.     MJL never had any kind of dealings with Mr. Kabateck prior to Mr. Kabateck applying for the New Class Counsel position in the *Jones* matter.

84.     Mr. Paul Kiesel and Mr. Paul O. Paradis were abruptly fired by the City of LA, and Mr. Eric George and Ms. Annaguey and their firm, were associated in by City Attorney Mike Feuer's office on March 15, 2019, to serve as counsel to the City to continue the prosecution of the City's action against PWC.

85.     On or about April 16, 2019, the *Jones* counsel reported to the court that the *Jones Settlement*, estimated in July 2017 to be $67.5 million, was approaching at least $100 million based on information from the independent monitor Mr. Paul Bender which was learned prior to that date in the course of Mr. Bender's work.

86.     On April 17, 2019, Kabateck was appointed by Judge Berle as new class counsel to replace Mr. Landskroner.

87.      Defendant Mr. Kabateck represented to the court that "he has no conflict with any of the parties, the other attorney's including the City Attorney, and he has no affiliations with anyone else involved in this case."

88.      Mr. Kabateck did not disclose that he was/is friends with Judge Berle going back decades, a claim made multiple times in court papers which was never denied by either Kabateck or Judge Berle; did not disclose that he/ his firms is/are heavy financial political donors to City Attorney Mike Feuer; and did not disclose that Mr. Kabateck and his firm's co-counseled on the same side with Mr. Eric George and his firm up to at least six years prior-i.e., at least three undisclosed affiliations and conflicts of interest.



89.     Judge Berle, pursuant to his authority under California state laws, empowered Kabateck to engage in "an investigation into how the settlement was arrived at and an analysis of whether the settlement of the class action was fair, reasonable, and adequate," but was expressly admonished not to "conduct an open-ended investigation of the conduct of all the other parties and their counsel and potential conflicts of interest on matters unrelated to the claims and benefits of the class members."

90.     Nevertheless, Mr. Kabateck conducted himself as if he was deputized by Judge Berle to conduct an open-ended investigation with unlimited state powers. In fact, other counsel, including MJL complained subsequently to Judge Berle, on the record and in filings, to no avail.

91.     MJL remained Liaison Counsel to assist Mr. Kabateck in transitioning into his role as New Class Counsel in *Jones*.  Mr. Paul Bender remained in his post as the system monitor of the LADWP.

92. On May 24, 2019, the City filed an Independent Monitor's declaration with the trial Court in *Jones*. The Independent Monitor confirmed that recovery to the class is in excess of $100 million, including about $38 million of Rule 17 credits—a.k.a new and additional monies for the class to recover post-the July 7, 2017 Final Judgment, announcing in effect that MJL/Libman APC very likely will have claim to additional fees under the July 7, 2017 *Jones*

Settlement Agreement, once the investigations enabled, authorized, and directly managed by Judge Berle would run their course.

93.     On June 17, 2019, Judge Berle appointed Edward M. Robbins, Jr. Esq. as Special Master and impermissibly authorized the Special Master to conduct a *secretive* investigation with *ex-parte* communications with others and with Judge Berle expressly invited and authorized.

94.     Neither Mr. Robbins nor his firm, or anyone at his firm, were on the California State Bar's List of approved Special Masters at any relevant time.

95.      Discovery will reveal precisely how an attorney not on the State Bar's list of approved Special Master was hired to be a Special Master who was authorized by Judge Berle to claim and collect millions in fees and costs from the City in the course of a secret investigation.

96.     Mr. Robbins, despite formal objections by Mr. Landskroner's attorney, Mr. Mark T. Drooks, joined by MJL (for a total of four) that Judge Berle did not rule on or address until ordered to do so by the California Court of Appeal, Second District, lodged secret ex-parte reports with Judge Berle.

97.     Mr. Robbins never contacted MJL or took any depositions, that MJL is aware off.

98.     No one else, other than probably Mr. Kabateck and/or Ms. Mills, know what is in those ___**ex-parte, secret**___ communications between Judge Berle and Mr. Robbins about MJL.

99.      MJL, among others, was deliberately deprived of an opportunity to rebut or respond to whatever is in those secret reports.

100.    Mr. Robbins is former head of the US Attorney's Office Tax Division, Los Angeles Office.

101.    Despite there being no evidence from any source that anyone paid any illicit monies, bribes or kickbacks to anyone connected to the *Jones* case, Judge Berle ordered MJL to provide "accounting" of all fees and costs ___**in connection with**___ *Jones,* without explaining what Judge Berle meant by "accounting" or "in connection with *Jones.*"

102.    MJL promptly complied and filed an envelope, *in camera* with copies of all checks and invoices that MJL/MJL APC received and incurred in connection with *Jones*. Kabateck objected that this was not enough for him.

103.    Judge Berle ordered MJL to *create* and produce a new accounting showing "debits and credits" as to all monies "***in connection with Jones***."

104.    MJL created a short spread sheet, as there was not a whole lot to input of all the monies received and paid out *in connection* with *Jones* to anyone, including a 1.65-million-dollar check that was received from Mr. Landskroner's firm for MJL/MJL APC's court-approved fee and costs.

105.    To protect MJL/MJL APC/s. and other clients' confidentiality and privacy rights, as MJL was and is obligated to do under California law, MJL also asserted privacy and attorney client privileges over MJL/ MJL APC's private expenditure of the 1.65-million-dollar fee as ordinary business expenses.

106.    And even this was not enough for Mr. Kabateck who was in search of a purse and scapegoat(s) to justify payment for his then anticipated fee request of millions of dollars for the havoc he created in the *Jones* litigations and in the press that he will ask his friend Judge Berle to approve, with no oppositions from Kabateck's other friends Mr. Feuer and Mr. Eric George expected. In fact, on information and belief, the City, by and through Mr. Feuer and Mr. George, is expected to support Mr. Kabateck's forthcoming multi-million attorney fee application.

107.    Additionally, court documents, transcript and investigation reveal that the three friends—Mr. Kabateck, Mr. Feuer and Mr. Eric George—are meeting presently *in secret* to negotiate Kabateck's multi-million-dollar payoff from the City, and in fact "tentatively" agreed to an amount, they refused to disclose when asked by MJL to do so during a hearing on November 18, 2021.

108.    These Three Friends have conspired, and are conspiring, to reward Mr. Kabateck for his help to sweep Mr. Feuer's incompetence, failures and carelessness in prosecuting the City's action against PWC under the proverbial rug and create the

"optics" that Judge Berle did not mishandle the LADWP/ PWC fiasco in a process that cost the City of Los Angeles taxpayers up to a billion dollars in lost revenue, in all likelihood.

109.    On information and belief, Judge Berle will very likely approve the multimillion-dollar payoff by the City, at the expense of city of Los Angeles rate and taxpayers, as this is in line with the Public Relations ("PR") stunt Judge Berle has been presiding over since PWC levied exaggerated allegations that the settlement that Judge Berle approved in 2017 was collusive.

110.    On information and belief, the PR campaign directed from the bench intended, at least in some significant part, to clear Judge Berle from the "optics" that he was to blame, at least, in part, for approving the _allegedly_ collusive settlement that cost the City's rate payers about 500 million dollars, and likely over a billion dollars.

111.    The confirmation of Judge Berle's preoccupation with the appearance of things came unequivocally on September 24, 2021 when Judge Berle expressly referred to "optics" as within his jurisdiction as part and parcel of Judge Berle approving a cosmetic "clarification" of the _Jones Settlement_ agreement and judgment of 2017, while expressly ruling that the 2017 Jones Settlement and judgement were still fair, reasonable and adequate.

112.    In the meantime, MJL is still being contacted by his clients—the LADWP rate payers—about unusually high water and power bills as recently as about a week prior to the filing date of this Complaint; news reports, as recent as September 29, 2021, [1] and community blog posts by disgruntled LADWP ratepayers express their frustration helplessness facing the mighty LADWP.    All a testament to Kabateck ignoring the interests of the clients whose interests he is obligated to advance and colluding with his friends who also proclaim to be allegedly serving the interests of the same persons—the LADWP Ratepayers.

113.    On July 15, 2019, MJL personally delivered five banker boxes of documents and a stack of nearly 1600 emails constituting MJL/ MJL APC's file in _Jones_, per Mr. Kabateck's request and Judge Berle's order.

---

[1] https://www.circlingthenews.com/water-and-power-bills-too-high-call-ratepayer-advocate-pickel/#:~:text=Residents%20continue%20to%20be%20dismayed%20over%20the%20dramatically,bills.%20There%20is%20supposed%20to%20be%20an%20option.

114.    The FBI raided the DWP and City Attorney offices on July 22, 2019 as related to the overbilling class actions and the City's case against PWC-in connection with the *Jones* and PWC's action which was defended by Mr. Thomasch of the firm of The GD Firm, along with other associates and partners from The GD Firm's Los Angeles Office.

115.    Plaintiffs are informed and believe that defendant Ms. Mills, took part in, and and/ or led, raids at least on one, or more business locations on July 22, 2019.

116.    Ms. Mills is a former associate of the Gibson Dunn, downtown Los Angeles Office. Ms. Mills is part of the Civil Rights Division of US Attorney's Los Angeles Office.

117.    Mr. Marc Eric Jenkins was at all relevant times the leader of the Civil Rights Division and Public Corruption Division of the US Attorney's Los Angeles, office. Mr. Jenkins is also a former Gibson Dunn associate and the direct supervising attorney of Ms. Mills.

118.    Ms. Mill and Mr. Jenkins were both, at all relevant times, under the supervision, direction and/or management of Mr. Nicola Hanna who was head of the US Attorney's for the Central District Los Angeles during all relevant times until about January 2021.

119.    Mr. Hanna before joining the US Attorney's Office was a partner of Gibson Dunn, Los Angeles Office.

120.    Mr. Hanna returned to his position as partner at of Gibson Dunn's Los Angeles Office in January 2021.

121.    Plaintiffs believe and allege that at least the US Attorney's Los Angeles office, and particularly its Civil Rights and Public Corruption Section, was overstaffed with former and current Gibson Dunn partners and associates who have had at all relevant times at least divided loyalties between their official employer—the US Attorney's Office—and their big-law and corporate overlord—Gibson Dunn.

**\*\*SEE DIAGRAM ON NEXT PAGE\*\***

122.    Also on July 22, 2019, MJL deposition was being taken at the offices of Gibson Dunn downtown Los Angeles office by attorney Michael H. Dore, partner in Gibson Dunn.

123.    From 2010 to 2015, Mr. Dore served as an Assistant United States Attorney in the United States Attorney's Office for the Central District of California, in Los Angeles.

124.    Mr. Dore threatened MJL with an FBI "investigation" during a deposition in order to help his client PWC to gain advantage in the civil litigation with the City by intimidating MJL, in violation of California Rules of Professional Conduct.

125.    On July 24, 2019, Mr. Kabateck stated in a filing that the class was owed an additional $50 million falsely suggesting that this "newfound" money was due to the timing of him being appointed by the trial Court/Judge Berle as New Class Counsel.

126.    Mr. Kabateck's claim contradicts the actual evidence, and Mr. Kabateck made this claim knowing it was false or with reckless disregard for the truth at minimum.

127.    At the same time, Mr. Kabateck went on a media blitz insinuating, falsely, that prior lead class counsel, Mr. Landskroner, and MJL by implication, shorted the class $50 million.   To date, there has been no evidence or finding of this alleged $50 million "shorting", on which incidentally, the *Bradshaw* Class action is founded, in large part, although the *Bradshaw* lawsuit refers to "40 millions that is owed to the class." Clearly, both of these claims were at all times fabricated and without basis or foundation in evidence or reality.

128.    Additionally, Mr. Kabateck made unfounded suggestions in court filings, media, and hearings that he suspected that MJL might have paid kickbacks or bribes out of his/ its fee in *Jones*. None of this was true and Mr. Kabateck must have known this at all relevant times.

129.    On August 2, 2019, Denis Bradshaw, a LADWP ratepayer, filed a Federal Class action in Central District, against City of LA, Michael Feuer, James, Clark, Thomas Peters, Jack Landskroner, MJL and MJL/APC, case number 2:19-cv-06661-CAS-PLA ("*Bradshaw'*") based in large part on the false allegations of Mr. Kabateck regarding a $40 million "shorting" and alleged misrepresentations to the court (Judge Berle).   Later Paul Paradis and Paul Kiesel were added as additional defendants in *Bradshaw*.

130.    *Bradshaw* is currently stayed to allow *Jones* to reach some kind of finality.

131.    The only possible "finality" to *Jones* is the full and final opening of the Pandora's Box that *Jones* is to allow all the misery to come out now into public view and consumption to fulfill the promise of transparency made by Mike Feuer, his office, City's other lawyers, PWC's lawyers, Kabateck and the outgoing Mayor of Los Angeles City, Mr. Eric Garcetti.       *See*        https://spectrumnews1.com/ca/la-west/this-month-with-the-mayor/2019/09/04/garcetti--pleased--about-transparency-into-dwp-problems.

## IX. MJL'S INVESTIGATION, THE PERSECUTION, VIOLATIONS OF CIVIL RIGHTS OF MJL/MJL APC BY MR. KABATECK, JUDGE BERLE, MIKE FEUER, ANNAGUEY

132.    On September 24, 2019, MJL/ MJL APC filed and served a Notice of Lien against the City.  The notice of lien was intended to put all concerned on notice of MJL/MJL APC's rights under the *Jones Settlement* and Final Judgment of July 7, 2017 to protect MJL/MJL APC's rightful prospective claim and entitlement to 29% of additional recoveries by Class Members, as stated in the Order Granting Final Approval of Class Action Settlement and Final Judgment—it is about $11 million.

133.    MJL pointed out to the trial court/Judge Berle that Mr. Kabateck's claim of the

Shorted $50 million is nothing more than Mr. Kabateck's ill-conceived attempt of trying to take an opportunistic credit for the work already completed and monies to be refunded to the ratepayers identified long before Mr. Kabateck even came into the picture, let alone the *Jones* settlement, as a result of work already completed by MJL/MJL APC, and Mr. Landskroner.

134.    At a September 25, 2019 hearing the next day, Judge Berle visibly unleashed his ire at MJL for having filed the Notice of Lien.

135.    Not only did Judge Berle aggressively interrogate MJL as to his right to file the Notice of Lien and ridiculed MJL's responses, Judge Berle did so with an indecorously raised voice.

136.    Judge Berle yelled that he was "very upset" that [MJL] felt justified in filing a notice of lien:

"MR. LIBMAN: WHY ARE YOU YELLING AT ME? I'M TRYING TO UNDERSTAND.

THE COURT: WHY?  MR. LIBMAN: -- AN APPLICATION GIVES YOU JUSTIFICATION TO PLACE A LIEN ON THE CASE?"

137.    Most poignantly, although no party had objected to MJL/ MJL APC's notice of lien, Judge Berle prodded, invited and encouraged "any party who believes it is inappropriate for [MJL] to file a lien on the case" to file "a motion to vacate or strike this notice of lien." Given the obvious subtext of Judge Berle's invitation, and advisory opinion, to all to move to strike MJL's Notice of Lien, it became clear that Judge Berle was not going to fairly adjudicate any motion related to MJL or entitlement to additional contractual fees.

138.    Judge Berle visibly appeared that he had made up his mind how he was going to rule on any motion related to MJL's fees before anyone had even filed any such motion or application. Judge Berle appeared to have convicted MJL by association with Mr. Landskroner who asserted his right against self-incrimination under the 5th Amendment, for reasons that may never be truly know as he died in June of 2021.

139.    On September 26, 2019, Mr. Kabateck and the City filed a joint Application to Disgorge Fees.  No disgorgement was sought from any of the other attorneys in the *Jones*

related class actions, who together received over $8 million from the settlement attorney fee fund of $19 million as they remained quiet and allowed the charade to go on unabated.   On the same day, the City asserted in *Bradshaw*, that the *Jones Order Granting Final Approval of Class Action Settlement and Final Judgment was final and therefore res judicata and could not be relitigated*.

140.    On September 26, 2019, the City, for speciously asserted reasons that witnesses were unavailable due to assertion of the 5th and despite the City prevailing against PWC's motion for summary adjudication in late 2018 in the City of LA vs. PWC action, abruptly dismissed its lawsuit against PWC, with prejudice, abandoning the ratepayers and depriving them and the taxpayers of the opportunity to recoup approximately hundreds of million in damages the City [rightfully] alleged were caused by PWC in the course of the deployment of the CC&B system.

141.    On recent information and belief, the City Attorney Mike Feuer was pressured, and extorted, intimidated, by Gibson Dunn, by and through Melisa Mills, with the FBI behind her, to drop their lawsuit against PWC under threats of criminal prosecutions and/ or California State Bar action.

142.    On information and belief, Mr. Feuer improperly succumbed to the extortion and intimidation, to safeguard his hopes for a political future, and dismissed the City's action, with prejudice, against PWC which cost the City of Los Angeles Taxpayers and LADWP ratepayers hundreds of millions of dollars in potential recovery from PWC and/ or its insurers, for PWC's role in the CC&B rollout disaster.

143.    On information and belief, Mr. Feuer set out on a course of scapegoating, framing, and otherwise violating MJL/ MJL/APC's civil rights, in collaboration and support of Mr. Kabateck's scheme to scapegoat, frame and otherwise falsely accuse MJL, because this would serve his own political and other goals by trying to shift responsibility to others away from him. Plaintiffs believe and allege, that it would be an unmitigated disaster to allow Mike Feuer to be put at the helm of the City [of Angeles].

144.    It became increasingly apparent to MJL, that Mr. Kabateck was not acting properly and/or lawfully and Judge Berle was ignoring this and encouraging this conduct apparently, despite MJL repeatedly bringing this up in court papers and hearings.

145.    MJL stated on the record at hearings, that MJL did not like what he was seeing going on and will continue to investigate independently.

146.    On October 7, 2019, attorneys for Paul O. Paradis, filed a brief, with exhibits, showing that Mr. Kabateck failed to disclose that he was trying unsuccessfully behind the scenes to get involved in the *Jones* case from 2015, that Mr. Kabateck was a heavy political ally, donor and likely friend of his "opponent" City Attorney Mike Feuer.

147.    Judge Berle ignored this evidence of Mr. Kabateck's deceit. MJL was calling for the removal of Mr. Kabateck from his appointment as sole New Class Counsel, which was also ignored by Judge Berle repeatedly.

148.    MJL requested a committee of three class counsel to be appointed, also ignored by Judge Berle.

149.    At a hearing on October 18, 2019, attorney Katherine McCann for the City, confirmed to Judge Berle that $38 million was not "newfound money" [due to sudden appearance of Mr. Kabateck], was a product of past work, and in fact was already mostly paid out to the class member by that time. This was the additional monies that created MJL's right to claim entitlement to 29% of it as fee per the Final Judgment of 2017.

150.    However, it was futile to apply for any further payments at least until the investigations of Judge Berle, by and through Kabateck and Robbins, reached a conclusion on the fairness, reasonableness, adequacy the *Jones* Settlement.[2]

151.    On October 23, 2019, the City lodged a report by ethics specialist Ellen Pansky, Esq. about the *Jones* settlement.  In her 178-page report, a product of 800 hours of work and

---

[2]   Judge Berle on September 24, 2021, found that the entire *Jones Settlement* was/is fair, reasonable and adequate, as more fully alleged *infra*. No mention of any collusion or fraud by MJL or others.   Mr. Kabateck filed a Notice of Ruling in October 2021 that the Court found the entire *Jones Settlement* fair, reasonable and adequate.

investigation, Ms. Pansky opined that while special counsel to the City had violated their ethical duties to the City by participating in the drafting of the *Jones* complaint without obtaining a conflict of waiver form from the City, they "violated no ethical duties in seeking to settle the class actions arising from the CC&B problems." Ms. Pansky further noted that "lawyers are ethically permitted to participate in 'friendly lawsuits' and to negotiate with one of a group of opposing counsel." Ms. Pansky, in effect, cleared MJL from any alleged unethical wrongdoing as MJL was not even mentioned in her ultimate conclusions.

152.    In the meantime, on September 26, 2019, the City with Mr. Kabateck, filed an Application for OSC Re Issuance of Preliminary Injunction Requiring Disgorgement of Attorney fees with a hearing date for December 2, 2019 based on a hodgepodge of unsupported arguments of Mr. Kabateck and Ms. Annaguey of alleged but baseless improprieties.

153.    Since this was an entirely new proceeding, and MJL was never a party in the *Jones* case, MJL filed a detailed declaration in support of MJL's application for Recusal/ Disqualification of Hon. Elihu M. Berle from ruling on anything related to MJL specifically because of Judge Berle's apparent bias against MJL, and a *C.C.P* §170.6 ("170.6") Peremptory Challenge form against Judge Berle.

154.    On 11/21/2019 Judge Berle denied MJL's 170.6 peremptory challenge as untimely and struck MJL's statement of disqualification, stating that he "knew no facts or circumstances that could require [his] disqualification or recusal in this case."

155.    On December 2, 2019, MJL filed a Petition for Writ of Mandate with the California Court of Appeals, 2nd Appellate District, to overturn Judge Berle orders regarding his disqualification.

156.    On December 12, 2019 Eric George's associate, Ms. McCann, wrote a short letter to the court asking for summary denial of MJL's writ.

157.    MJL's writ was denied on 12/16/2019.

158.    At a December 2, 2019 *Jones* hearing, MJL advised Judge Berle of the suspicious representations by Mr. Kabateck in court papers wherein Mr. Kabateck claimed that he spent 2,000 hours in 210 days since his appointment working on *Jones*, while Kabateck

argued to the court that the 1,400 hours that MJL spent working on the DWP overbilling and *Jones* matter over five years was not plausible.

159. Judge Berle ignored MJL's representations and instead cross-examined MJL, in a disrespectful tone and demeanor, as to the reasons of MJL not seeking to be lead counsel in *Jones*.

160. MJL advised Judge Berle that he put MJL in a position of getting MJL to inadvertently waive work product and attorney client privileges. It appeared from the body language and smile of Judge Berle that he was mocking MJL.

161. At the same hearing, MJL advised Judge Berle, that by that point he already provided testimony and declarations that no kickbacks or any illicit payment were paid by MJL to anyone.

162. MJL represented to Judge Berle that MJL even offered to Kabateck to serve a limited subpoena to MJL/APC's bank with as many names as Mr. Kabateck wished to name to verify that MJL/MJL APC did not make any illicit payments. That was rebuffed. Mr. Kabateck wanted access to all of MJL's *personal* finances.

163. Through the abuse of power, ignoring of MJL's due process rights under the US Constitution, MJL was being oppressed, pressured, intimidated and coerced  to prove a negative by intimidating MJL/ MJL APC into waiving all of MJL/MJL APC's privacy rights, others' privacy rights, MJL/ MJL APC's other clients' confidentiality and privileges.

164. Also, Mr. Kabateck argued to Judge Berle that Mr. Jones did not approve MJL's fees.  When MJL read to Judge Berle the declaration of Mr. Jones filed in 2017 wherein Mr. Jones unequivocally declared that he read all the documents and approved the settlement, and all the attorney fees, including MJL's, still Judge Berle appeared to ignore this irrefutable evidence and accepted Kabateck's baseless and false arguments.

165. However, Judge Berle acknowledged at that hearing that MJL provided accounting multiple times already.

166. Still, Mr. Kabateck filed a false Notice of Ruling that the Court ordered MJL to provide yet another accounting. MJL filed an objection promptly on December 19, 2019, also

ignored.

167.    On December 18, 2019, Kabateck filed a motion to strike MJL's notice of lien. MJL's opposition clearly stated that even the law and cases cited by Kabateck in his motion hold that "[a]ppellate courts have consistently held that the trial court in the underlying action has no jurisdiction to determine the existence or validity of an attorney's lien on the judgment."

168.    Regardless, Judge Berle struck MJL/MJL APC's Notice of Lien in January 2020 without having jurisdiction at all to do so.

169.    On January 7, 2020, in preparation to oppose the OSC to disgorge fees, MJL filed an ex-parte application asking Judge Berle for leave to take the deposition of Kabateck as Kabateck submitted a "factual" declaration in support of the OSC attaching as exhibits emails wherein Kabateck called MJL "a clown" and MJL pointed all this out to the court/ Judge Berle. This was ignored by Judge Berle who appeared to condone such behavior.

170.    In retaliation, Kabateck filed an ex-parte application to sanction MJL and incarcerate him for *failure to provide an accounting*.  This is despite Judge Berle's then just recent finding that MJL already provided accounting multiple times, as stated *supra*.

171.    On 1/10/2020, Judge Berle denied MJL's application for leave to take the deposition of MJL's accuser, and undenied friend of Judge Berle, Mr. Kabateck.

172.     On the other hand, on 1/13/2020, Judge Berle granted Kabateck's ex-parte for an OSC why MJL should not be held in contempt *and incarcerated* for failing to file a "complete accounting."

173.    The hearing for the OSC was set for March 12, 2020 and then continued to April 28, 2020 due to COVID-19.

174.    Also, the hearing on the disgorgement was stayed on 1/30/2020 allegedly per the request of the US Attorney's Office as represented by Mr. Kabateck to the trial court/Judge Berle.

175.    On about 2/11/2020 the hearing on the OSC regarding contempt was continued by stipulation to 4/30/2020.

176.    At a hearing on 2/14/2020, MJL advised Judge Berle that MJL felt harassed by

Mr. Kabateck as it appeared to MJL that Mr. Kabateck's plan was to harass MJL out of the *Jones* case so Mr. Kabateck could brazenly take credit for MJL's work for Mr. Kabateck to fraudulently claim the 11-million-dollar outstanding attorney fees for himself.

177.    Judge Berle cut MJL off and did not allow MJL to finish his argument. Instead, Judge Berle directed Mr. Kabateck's associate to state her position.

178.    MJL was also summarily removed by Judge Berle from his post as Liaison Counsel, without a motion, notice, or hearing or any finding of wrongdoing by MJL and in retaliation for MJL stating that he was investigating and was not "pleased with what ["MJL"] was seeing" as it appeared to MJL that Mr. Kabateck was colluding with PWC's attorney's and the City of LA instead of making sure that the settlement was being implemented as was agreed to and ordered on July 7, 2017.

179.    By the 1/30/2020 hearing, Mr. Kabateck filed reports with the court that ***he [Kabateck] found no evidence that the Jones settlement was not fair, adequate and reasonable.***

180.    MJL advised all that what he saw happening was not in the best interest of the class in accordance with MJL's fiduciary duties to the class.

181.    Judge Berle mockingly asked MJL if MJL still believed that he had fiduciary duties owed to the class. MJL had to politely remind Judge Berle that Judge Berle himself ordered MJL in a prior hearing to maintain fiduciary duties to the class.

182.    Judge Berle then mockingly asked MJL if MJL is an officer of the court. MJL responded in the affirmative. Judge Berle then continued to make mockery of MJL by quizzing MJL on MJL's obligations to the Court to which MJL politely responded that MJL is bound by a duty of candor to the court and to MJL's clients.

183.    Judge Berle's tone, demeanor and expressions clearly indicated that he was mocking MJL and tried to shame, humiliate and embarrass MJL.   Judge Berle then abruptly ordered MJL to produce all of MJL time records that were submitted to support MJL's fee application in the *Jones* matter, again.

184.    MJL submitted detailed time records with his declaration and fee application in

2017.

185.    MJL complied with the order and produced the records again.

186.    MJL also expressly vowed to continue to monitor what is going on the *Jones* case and conduct his own investigation. MJL also advised that future lawsuits were likely as a result from what he was seeing and learning.

187.    By that time, MJL already had evidence of Mr. Kabateck and Judge Berle being board members of the same organization at the same time and the many cases Mr. Kabateck appeared in before Judge Berle he appeared to be doing very well consistently. They appeared to be friends.

188.    Mr. Kabateck is also a past LA County Bar President and by his own admission made at least $500,000.00 in political contributions, some of which Plaintiffs believe, and therefore allege, were made in support of Judge Berle, in addition to those already uncovered by Mr. Paradis and/ or his attorneys.

189.    Mr. Kabateck holds himself in high regard, and position of influence in the legal community in Los Angeles, at least.

190.    On 4/17/2020 MJL filed in the trial court a second notice of fraud wherein Mr. Kabateck falsely claimed that MJL did not file an opposition to the OSC regarding contempt where in fact MJL did.  No reaction from Judge Berle. On 4/23/2020 the Court continued all hearings due to COVID-19 to 7/09/2020.

191.    On or about 6/22/2020, Kabateck filed his belated one-year 269-page report, with exhibits, falsely representing to the court that MJL attended a certain key allegedly improper meeting with Mr. Landskroner and Ms. Annaguey, and others, in April of 2018 where in fact Mr. Kabateck already knew that MJL did not attend that specific meeting or even knew about it.

192.    Kabateck falsely alleged that on April 13, 2015 MJL was "presumably" part of a telephonic conversation that MJL was clearly not a part of and Kabateck knew or must have known this at all times.

193.    Mr. Kabateck falsely represented that MJL was part of another allegedly

improper conversation with attorney for the City Ms. Agrusa, which was also untrue.

194.    Mr. Kabateck falsely and fraudulently attributed to MJL handwritten notations and alleged 10 pages of handwritten notes that were clearly not in MJL's handwriting and Kabateck knew it at all times.

195.    Kabateck falsely represented to the trial court that MJL did not produce a single email for 2015 contrary to the physical evidence in Kabateck's possession in the form of hundreds of emails from 2015 from the stack of about 1600 emails that MJL produced to Kabateck personally.

196.    Kabateck falsely represented again to the *Jones* trial court that MJL did not file an opposition to the OSC despite MJL's Second Notice of fraud by Kabateck filed on 4/17/2020.

197.    Despite requests for depositions of Ms. Annaguey and Ms. Agrusa to obtain sworn testimony that MJL did not participate in that alleged meeting with Ms. Annaguey, the false claims regarding the handwritten notes, and the alleged telephone conversation with Ms. Agrusa, City and its outside counsel, Eric George and Ms. Annaguey refused to produce Ms. Annaguey. Mr. Nichols on behalf of the City, Mr. George and Ms. Annaguey copied MJL on an email to his partners that he was going to warn Ms. Agrusa in an apparent attempt to thwart MJL's quest for her deposition as well.

198.    Ultimately, since Mr. Kabateck, in collusion with others as more fully alleged in this complaint, could not find any evidence of MJL's wrongdoing, he, while colluding and conspiring with other defendants, resorted to manufacturing "evidence" that was not there in order to aid Mr. Kabateck in depriving MJL/MJL APC of his/its property and constitutional rights, through unprecedented abuse of state power, and collusion with Judge Berle who convicted MJL as guilty by association with people who themselves were merely under a cloud of suspicions based on ultimately disproved claims and allegations, at all relevant times.

## X. THE FBI RAID ON THE INDIVIDUAL PLAINTIFFS' HOME

199.    On 6/30/2020 at about 5:59 a.m., while MJL and his family were isolating at

home due to COVID and all the restrictions, about 50, or more, FBI agents armed in tactical gear, loudly woke MJL, BL and the two Minors banging on the front door and announcing their presence via bullhorn(s).

200.   The FBI Agents brought an armored personnel carrier and pointed what appeared to be a small cannon at the Libmans' Home's windows.

201.   First thing that the FBI agents did, while loudly blazing over bullhorn(s) that they were there, they knocked off, broke and/ or partially disabled all the security/ surveillance cameras on the outside and inside of the Libmans' Home with a metal stick.

202.   Unbeknownst to the FBI agents and Ms. Mills, they were not entirely successful in breaking or dislodging all the cameras and the DVR kept recording.

203.   Some of the cameras were dangling from the wall on wires and still capturing video. (*See* photos attached as *Exhibit 1* to this complaint)

204.   The FBI dragged MJL out, slapped a blue surgical face mask on MJL (most of the government agents were without surgical face masks), and handcuffed MJL.

205.    MJL was pulled out into the middle of the street by one of the agents in tactical gear and face shields at about 06:00:54.

206.   The entire street looked like a warzone. Agents pointed machineguns at Plaintiffs' neighbors as well who stepped out due to the loud noise the FBI was making to see what was happening.

207.   Then Plaintiff BL and Minor "A" were dragged out into the street barely clothed at about 06:03:03 to 06:03:39.

208.   The individual Plaintiffs were in utter shock, fear, terror, dismay, horror and disbelief and did not know what was happening.

209.   Many FBI fully armed agents stormed the Libman Home and started rummaging through it and the surroundings.

210.   Within a few minutes, Plaintiff BL and Minor "A" informed the FBI agents holding them in the middle of the street that Minor "B" was sleeping upstairs.

211.   MJL also informed the agent who was holding MJL that Minor "B" was sleeping upstairs. The agent holding MJL appeared to convey what MJL had told him over a shoulder radio to someone.

212.   At about 06:22:17 FBI agents escorted BL and Minor "A" back into the Libman Home and BL immediately wanted to go upstairs to get Minor "B" but was stopped at gun point by FBI agents and was not allowed to go upstairs to awake Minor "B."

213.   Within about a minute or so later, defendant Ms. Mills and other agents are seen huddled at the front of the Libman Home (judging from the video of their feet) to discuss what to do about Minor, on information and belief.

214.   At about 06:26:04, FBI Agent JIM DOE escorted MJL, while handcuffed and still barefoot, back into the Libman Home.

215.   MJL was walked upstairs into Minor B's bedroom, while handcuffed, into Minor B's bedroom.

216.   The child was clearly calmly sleeping in the child's bed, partially covered with a blanket, the child's torso and upper body exposed.

217.   Agent JOHN DOE stood at the foot of the child's bed and pointed the machine gun/shotgun/ long gun that he was holding in the direction of the sleeping child's torso/head.

218.   JIM DOE positioned MJL at the side of his child's bed, near the sleeping child.

219.   Agent JOHN DOE, while still pointing the machine gun at the child's torso/head, laughingly said: "Your [child] is a heavy sleeper."  MJL did not respond.

220.   MJL was terrified that the child would be startled and make a sudden move that would provoke the agent to open fire on the child.  MJL thought at that moment that his pounding heart would break through his chest wall.

221.   MJL kept calling out to his child, as quietly and as calmly as he could muster, to wake up and the child finally did. Minor "B" was seized by Agent JOHN DOE and walked down the stairs.  Minor B has been severely traumatized by what the child experienced and witnessed that day.

222.   Plaintiffs believe and allege that JOHN DOE pointed his machine gun at Minor

"B" while the child was visibly sleeping, in MJL's presence, to convey the government's and its co-conspirator's message to MJL: "Shut up or else; we have your child[ren] in our gun sights."

223.    Shortly thereafter, MJL was led into Minor "A"'s bedroom where Assistant US Attorney Mills and 3-4 FBI agents sat MJL down, uncuffed him, and handed him the search warrants, one for person the other for the home.

224.    The search warrants listed the following items to be seized:

"ITEMS TO BE SEIZED The items to be seized are evidence, contraband, fruits, and instrumentalities of violations of 18 U.S.C §§371 (Conspiracy); 922 (o) (Possession of a machine gun); 922 (a)(3)(Illegal transportation of firearms).... Plaintiffs never possessed machine guns or illegally transported any firearms nor did the FBI find any such machine guns let alone evidence of gun smuggling.  Also, item "e." of the warrant states:

**"Records, documents, communications, or other materials from January 1, 2020, to the present reflecting _plans to collect information about_ Judge Elihu Berle and Brian Kabateck or any existing collections of information about the same."**

225.    The search warrants for the Libman Home and MJL's person, paragraphs 22, respectively, expressly prohibited law enforcement from violating _Graham v Conor_ 490 US 386 (1989), which the FBI, agents and Mills deliberately, recklessly, intentionally, and maliciously disregarded by using excessive force against MJL and his family.

226.    At about 16 minutes into the FBI invasion, Ms. Mills, emailed one of MJL/MJL APC's attorney in the _Bradshaw_ case, from the Libmans' Home, telling MJL's attorney that they were there to search, and they wanted MJL's "cooperation."  (_See_ email as **Exhibit 5** attached to this complaint).

227.    Upon, perusing the warrants and instantly realizing the unlawfulness of the

Search, MJL immediately advised all present that he considered the search unlawful and that he intended to seek redress through the courts.  MJL requested business cards and Ms. Mills, Agent Civetti, and Agent Mayfield each provided a business card.

228.   Another FBI agent asked MJL as they were retreating, apologetically already at that point, that they wanted MJL to "cooperate."

229.   At no time it was explained to MJL what the United States Government meant by "cooperate" or "cooperation."

230.   On information and belief, Ms. Mills provided a false probable cause telephonic statement to a federal magistrate judge to deceive him into signing off on the search warrants based on false and/ or misleading/ deceptive claims that MJL possessed machine guns and was involved in an illegal transportation of arms in order to deceive the Magistrate Judge to authorize the government to execute an excessively intimidating and forceful search and seizure warrants to get MJL to stop investigating Judge Berle and Kabateck.

231.   It is self-evident that the primary goal of the government raid was not to search for any work product or evidence but to intimidate MJL because if the government was really interested in MJL's work product about Mr. Kabateck and Judge Berle all they had to do was walk about 75 yards and cross the boulevard from where they were standing to MJL's office building located at the corner of the Libmans' residential street and the boulevard, which the government knew or must have known at all relevant times.

232.   The government never did walk across the boulevard, and, on information and belief, never asked the magistrate judge to allow the search of MJL/APC office even though they knew, or should have known, the address to MJL/MJL APC's office as it was written all over court papers in *Jones*, at the very least.  It was also stated on MJL's state bar profile at all relevant times, and in the *Bradshaw* action.

233.   Plaintiffs are informed, believe, and therefore allege that the FBI raided the offices of the DWP, City Attorney's Offices, and the office of Ms. Paul Kiesel.  Plaintiffs are not aware of any information that anyone else involved in *Jones* experienced such an invasion of their home as Plaintiffs did.

234.    The FBI swatting-type raids have become known, and are described in the public lingo as, "the process is the punishment." What happened in this case to the Plaintiffs, as alleged, clearly evidences that the public's perception of these type of government raids is true. If the obscenely aggressive "process" of the government's investigative raids on homes or business is perceived as meting out punishment through excessive use of force before evidence of any crime has been uncovered or charges brought, then "due process's" underpinning of the US Constitution and out system of justice have been perverted by the federal government to simply mean "due punishment."

## XI. POST-FBI RAID RELEVANT FACTS AND EVENTS

235.    Over several months, two separate law firms retained by MJL/MJL APC made repeated contacts and offers to come in and talk to the FBI and Ms. Mills to find out who they/she wanted MJL to cooperate with and how.  With The GD Firm? The US Government? Someone else? Ms. Mills and the government disengaged contact with MJL's legal teams after several attempts.

236.    At no time did the government attempt to compensate at least BL, as the joint owner of the Libmans' Home, for the damage, destruction and/or cost of repair of the governments' taking of her property: the surveillance cameras, dining table and chairs.

237.    MJL did not stop investigating. MJL filed a Third Notice of Fraud against Mr. Kabateck detailing all the fraudulent statements Kabateck/Mazzella made in his/its/theirs one-year report, Judge Berle ignored these also.

238.    On July 27, 2020, at about 7:36 p.m., MJL personally served Mr. Kabateck, at the driveway of Mr. Kabateck's home, with subpoenas for Mr. Kabateck's deposition and a person most qualified of Kabateck LLP as Judge Berle appeared to have authorized MJL, finally, at a hearing.

239.    MJL executed the lawful service of process with MJL's then paralegal, now associate, as a witness.

240.    The paralegal videotaped and photographed the interaction. Mr. Kabateck came

out rushing/charging from behind the gate took the subpoenas, ripped then to shreds, and tossed the shreds angrily on the hood of MJL's car. (*See* photo attached to this complaint as **Exhibit 6** )

241.    Mr. Kabateck was aggressive and menacing.

242.    Mr. Kabateck came within an inch of MJL's face and MJL thought that Kabateck was going to strike MJL's person.

243.    MJL stepped back and walked away.

244.    On August 3, 2020, Mr. Kabateck filed for an ex-parte restraining order against MJL Despite photographic evidence and declaration of MJL/APC's paralegal that Mr. Kabateck was the aggressor, and this was a lawful service of process, Judge Berle pressured MJL at the hearing to stop investigating Mr. Kabateck.

245.    MJL respectfully declined.

246.    Therefore, Judge Berle, in retaliation, and in collaboration, conspiracy, with Brian Kabateck, and others, issued a permanent restrainig order, skipping over the TRO or a trial, against MJL not to come near Mr. Kabateck, his home, office, his partners, associates.

247.    *California Judicial Cannon* 3 D(5) states: "A judge shall not retaliate, directly or indirectly, against a person known or suspected to have assisted or cooperated with an investigation of a judge or a lawyer."

248.    On 6/18/2020 Eric George's firm and Mr. Kabateck filed a joint notice and stipulation of lodging KPMG's (auditor) executive summary of its report informing the court that they were filing the entirety of the KPMG report under seal at the request of Mr. Kabateck. That appeared suspicions to MJL.

249.    MJL objected to the KPMG report being filed under seal especially since Mr. Kabateck asked for it to be hidden from the public and the ratepayers on the alleged ground that it would endanger cyber security of LADWP.  On information and belief this was a ruse, as argued by MJL based on the evidence and declarations presented by the City.

250.    Ms. McCann, counsel of Eric George's office, offered MJL to review the KPMG report in person while she would watch MJL to try and make it appear that the Feuer/

Kabateck were not trying to hide the truth from the public, and avoid the promised transparency.

251.     MJL did review the KPMG report outdoors in a restaurant in Beverly Hills with Ms. McCann and her associate watching over MJL.

252.     MJL was not allowed to make a copy or even take contemporaneous notes.

253.     From MJL's recollection, the KPMG report states that the CC&B system is subject to fraud and is highly flawed with many fixes still required.

254.     On or about July 1, 2021, MJL filed and served an "OPPOSITION AND OBJECTION TO COLLUSIVE JOINT REQUEST OF NEW CLASS COUNSEL AND CITY OF LOS ANGELES TO FILE KPMG'S FULL REPORT UNDER SEAL" with the trial court/ Judge Berle stating that the request to seal the KPMG is a ruse to hide Mr. Kabateck's/ City's failure to do what they were obligated to do for the ratepayers under the *Jones* Settlement and that the ratepayers are at high risk of serious harm.

255.     Judge Berle ignored MJL once again and sealed the report where KPMG states that the flaws with the CC&B system are not being fixed as the settlement agreement mandates.

256.     Judge Berle ordered MJL to submit to two more Zoom remote depositions while Judge Berle was presiding remotely from his chambers.

257.     At MJL deposition, Volume 2, on October 23, 2020, Kabateck's began with the admonition that MJL should assert the 5th Amendment. Judge Berle said nothing after MJL inquired of Mr. Kabateck why he was admonishing Mr. Libman to assert the 5th Amendment against self-incrimination.  MJL interpreted this admonition to be what it was intended to communicate: an implied threat of criminal prosecution for Ms. Kabateck to get an advantage in the *Jones* civil class action to step into MJL/MJL APC's shoes regarding paragraph 13 of the July 2017 Final Judgment in order, in collusion with others as more fully alleged in this complaint, and deprive MJL of the right claim to 29% from the City the additional attorney fees.

258.     The threat of criminal charges, in the context of this action and the preceding

events, is a violation of California Rules of Professional Conduct Rule 3.10(a) which states:

> "A lawyer shall not threaten to present criminal, administrative, or disciplinary
>
> charges to obtain an advantage in a civil dispute."

259.    About 99% of MJL's proper and legitimate objections, including privacy, work product and attorney client privilege were instantly overruled by Judge Berle during Vol 2 of the deposition. Apparently, MJL/ MJL APC, or its clients, had no rights or privileges in Judge Berle's court, including the attorney client privilege.

260.    When MJL asked to adjourn to allow briefing of the issues, Judge Berle refused.

261.    Mr. Kabateck inquired about MJL's resume submitted in 2017 in support of MJL's fee application and insinuated that the resume was not accurate as it related to the class actions MJL collaborated with the Kingsley firm.

262.    Near the time of the deposition on October 23, 2020, MJL discovered through investigation and search of public records the following:

> a.  Judge Berle on **July 7, 2017** signed the order/ judgment approving the $67.5
>
>     million Jones, settlement, with likelihood of a higher recovery;
>
> b.  Public records show that days after Judge Berle signed the 67.5 million *Jones*
>
>     *Settlement*, on **July 14, 2017**, Judge Berle personally entered into a contract
>
>     to purchase, cash, a nearly 5,000 square foot estate on nearly half an acre of
>
>     land in the hills of Tarzana, in a neighborhood riddled with celebrity multi-
>
>     million-dollar estates;
>
> c.  Days after the *Jones Settlement* was funded, Judge Berle paid, in cash,
>
>     $1,645,000.00 for his new abode when the sale was closed on **August 10,**
>
>     **2017.** MJL received his court-approved fee distribution from Mr.
>
>     Landskroner on about August 4, 2017.

263.    It appeared at all relevant times, as it still does, and reasonably should to any one who does any investigative work, that the *timing* of the purchase of the mansion in the hills of Tarzana that overlapped with the signing of the *Jones* Settlement Agreement and its funding appears to be suspicious. It could be a coincidence. However, not fully and thoroughly

investigating this would amount to investigative malpractice and a violation of MJL fiduciary duties, ironically, ordered by Judge Berle for MJL to maintain even after Judge Berle "dismissed" MJL improperly, months before, from his post as Liaison Counsel.

264.    Given the suspicious and improper acts and omission MJL was uncovering and observing going on in the *Jones* matter, during MJL's deposition, and what MJL already knew and experienced as a result of the US government's invasion on June 30, 2020, MJL felt compelled, and duty bound, to ask Judge Berle during MJL's deposition about Judge Berle's real estate transaction because of the ***suspicious timing*** of the cash purchase intertwined with Judge Berle's approval of the 67.5-million-dollar *Jones Settlement* and its funding. Judge Berle's face turned red, and he responded that he would not dignify MJL's question with a response. Mr. Kabateck instantaneously rushed to the defense of Judge Berle, as any good friend would do, instead of considering the possible implications of this evidence.

265.    Then Judge Berle ordered Mr. Kabateck to take *whatever* "enforcement procedures are appropriate" against MJL.

266.    A Daily Journal reporter, Mr. Blaise Scemama, was invited by Mr. Kabateck to attend MJL's deposition. On information and belief, Ms. Scemama was invited because Mr. Kabateck intended, and very likely expected, to intimidate MJL into asserting the 5th Amendment to enable Mr. Scemama to write and publish an article in the Daily Journal that MJL asserted the 5th so Kabateck could continue to propagate the improper narrative that there must be criminality just because people asserted their constitutional right under the 5th Amendment. Mr. Scemama did write an article about some of MJL's testimony, as Mr. Scemama interpreted the testimony to be.

267.    On November 23, 2020, during MJL's third deposition, also via Zoom and presided by Judge Berle remotely, Mr. Kabateck continued to harass and oppress MJL with clearly improper and invasive questions intended to intimidate MJL in the presence of Judge Berle. When MJL tried to cite the law to inform Mr. Kabateck, and alert Judge Berle, that Mr. Kabateck is acting contrary to law, Mr. Kabateck stated: ***"I don't care to hear the law."*** There was no response or admonishment from Judge Berle.

268.   The following occurred at the deposition of November 23, 2020: "The Witness [MJL]: Please don't yell at me, Your Honor. I'd appreciate—The Court: I am not yelling. I am speaking in a normal voice. And don't try to create an erroneous record."

269.   MJL is informed and believes that Judge Berle must have forgotten that MJL gave formal notice of MJL's joinder in the deposition that MJL will also be recording the entire proceeding digitally or otherwise. There were no objections raised or filed. The video and audio file of that Zoom deposition will speak for itself as Judge Berle was still yelling at MJL while Judge Berle was denying that he was yelling at MJL, while accusing MJL that MJL was the one making an erroneous record.

270.   At this deposition, Mr. Kabateck inquired about MJL's billing records submitted in support of MJL's fee application in 2017 in *Jones*. Mr. Kabateck inquired about MJL's contemporaneous time records. These questions were asked of MJL briefly during MJL's first deposition in 2019 at The GD Firm and responded that these were entered electronically for the most part in a spread sheet at that time.

271.   MJL testified that in 2018, MJL/APC suffered a cyber-attack, and many Microsoft Excel, other files and electronically stored records in several cases, including *Jones,* were corrupted, overwritten, or lost, and hardware was irreparably damaged and replaced in 2018. MJL provided the name of the reputable third-party IT company that has maintained MJL/APC's computer systems since 2016.

272.   On January 4, 2021, Brian Kabateck electronically filed three untimely motions for: 1) for an injunction for an order to disgorge MJL's $1.65 million fee; 2) for monetary sanction of over $116,000 and for evidentiary and terminating sanctions; 3) for OSC for contempt sanctions of over $44,000 all over the same "discovery issues". Discovery was never formally reopened by the trial court in *Jones* post the Final Judgment. None of the Motions were personally served as mandated under the *Code of Civil Procedure* as MJ/MJL APC were never parties in *Jones*.

273.   In support of Mr. Kabateck's motions Mr. Eric Kingsley submitted a very brief and false declaration declaring that MJL was in essence merely a tenant and did not "work"

with the Kingsley's on employment class actions over the time that MJL was there.

274.    Kabateck also submitted another declaration full of falsehoods, misstatements and mischaracterizations in support of his motions.

275.    At a hearing on 1/27/2021, MJL requested again to take the deposition of Mr. Kabateck as he already had three depositions of MJL and MJL still could not get even one to inquire about all of Mr. Kabateck's claims and allegations against MJL.

276.    Judge Berle denied MJL's request, again.  At the same hearing judge Berle denied MJL/ APC's IT person's motion protective order to limit the scope and protect the IT person from unwarranted intrusion into his privacy and his cyber security protocols and of MJL/APC.

277.    Judge Berle ordered an unlimited deposition of the IT person *without setting a specific date.* MJL requested at least the depositions of Mr. Kabateck, Mr. Eric Kingsley, Mr. George Kingsley, Mr. Paul Bender.   Judge Berle ordered only the deposition of Mr. Kingsley for February 8, 202, probably mistakenly.

278.    Although Mr. Paul Bender submitted a misleading declaration in support of Mr. Kabateck's motions Judge Berle denied MJL's request to take the deposition of Mr. Bender to prevent MJL/MJL APC ability to fairly oppose Kabateck's motions.

279.    Judge Berle continued the hearing on Kabateck's motions to March 4, 2021.

280.    When MJL served the deposition notice for Mr. Kingsley's deposition, MJL asked for one category of documents to be produced: all communications between Mr. Kabateck and Mr. Kingsley about the declaration Mr. Kingsley submitted in support of Kabateck's three motions.

281.    Mr. Kabateck just blew up in a litany of threatening and aggressive emails.

282.    Eventually, the Kingsley firm produced some email correspondence, and *one of six drafts* of the Kingsley declaration. Five drafts were suppressed and never produced.

283.    At the deposition on February 8, 2021 of Mr. Eric Kingsley, Mr. Kingsley testified that he knew MJL as honest and ethical person and attorney until October 13, 2020 when he spoke to Mr. Kabateck and Mr. Kabateck told him "only bad things" about MJL.

284.    Mr. Kingsley admitted that the declaration he signed was drafted by Mr. Kabateck's office, that Mr. Kingsley did not speak to anyone other than Mr. Kabateck, not even anyone in the Kingsley Firm before he signed "his" declaration.

285.    Mr. Kabateck referred to Mr. Libman as "an idiot" during the deposition.

286.    Mr. Kabateck coached and encouraged Mr. Kingsley on the record for Mr. Kingsley not to disclose to MJL the meaning of "only bad things" expressly to try and preempt a defamation claim by MJL against Mr. Kabateck. Mr. Kingsley complied with Mr. Kabateck's coaching and colluded with Mr. Kabateck in this regard, in furtherance of the conspiracy to falsely accuse, frame, scapegoat, intimidate and deprive MJL/ MJL of his constitutional, civil and property rights.

287.    Eric Kingsley, in the apparent encouragement of Mr. Kabateck, referred to MJL as "stupid."

288.    Mr. Kingsley admitted that MJL speaks English with a foreign accent.

289.    Mr. Kingsley admitted that to even respond to MJL's question about someone speaking with an accent would be considered racial stereotyping.

290.    In MJL's supplemental opposition and objections to Mr. Kabateck's evidence, MJL submitted a declaration from attorney Scott A. Miller who also collaborated with MJL and the Kingsley firm on at least half of the same cases stated in MJL's 2017 fee application in *Jones.*

291.    Defendant Eric Kingsley admitted that the Kingsley's asked MJL to join the Kingsley Suite to create "synergy" and to collaborate on cases.  Most of the cases the Kingsley & Kingsley have done over the years were employment class actions, and some consumer class actions.

292.    Mr. Miller declared that he was shocked at the negative tenor of Mr. Kingsley's declaration and deposition testimony and confirmed that indeed MJL collaborated on at least those cases that Mr. Miller also collaborated with the Kingsley firm.

293.    MJL/APC's IT person also submitted a declaration with a copy of another

declaration filed by the IT person in 2018 in an unrelated civil case attesting to the cyber-attack, damaged files and lost electronic data in the course of routine and good faith operation of the firm's computer system.  Judge Berle ignored this evidence as well.

294.    *California Code of Civil Procedure* §2021.310 states: "absent exceptional circumstances, the court shall not impose sanctions on a party or any attorney of a party for failure to provide electronically stored information that has been lost, damaged, altered, or overwritten as the result of the routine, good faith operation of an electronic information system."

295.    On March 4, 2021, Judge Berle, held a "hearing" on Kabateck's untimely "motions" including the one for OSC RE Contempt.  *California Code of Civil Procedure* and Los Angeles Superior Court Local Rule 3.11(b) mandate:

"3.11 (b) Trial. The hearing on the OSC re: contempt is in the nature of a quasi-criminal trial. The accused person has the right to appointed counsel, to remain silent, to confront and cross-examine witnesses, and to be proven guilty beyond a reasonable doubt. The only major difference between contempt and a criminal trial is that the accused person has no right to a jury. The moving party must appear for the trial with witnesses prepared to testify unless the accused person stipulates in writing that the moving party's declarations will constitute the case-in-chief against him or her. If there is no stipulation, the parties should stipulate that the moving parties' declarations will constitute the direct testimony of each declarant, with the declarant then subject to cross-examination."

296.    No witnesses were sworn to testify and no stipulations entered into.

297.    On March 4, 2021, Judge Berle declined to recuse himself from "hearing" the OSC; did not conduct a trial; did not take testimony under penalty of perjury; allowed Mr. Kabateck to merely argue and submit his own declaration and declaration of Mr. Paul Bender wherein MJL was denied any opportunity to cross examine Mr. Kabateck or Mr. Bender; and read from a prepared ruling wherein Judge Berle ordered disgorgement sanctions of $1.65 million of MJL's fees, over $116,000.00 in monetary sanctions in the form of attorney fees, issued evidentiary and terminating sanction (wherein MJL was not a party in *Jones* at any

time); entered MJL's default even though MJL was never a party in *Jones*; granted the motion for OSC for contempt relating to discovery and ordered more monetary sanctions for over $44,000.00 in connection with the same "discovery issues." The prepared written ruling reading by Judge Berle, drafted and based on Kabateck's proposed ruling, is proof positive that Judge Berle had no intent at any time to even listen, let alone consider, anything MJL would say, or to any evidence that would contradict what his friend Mr. Kabateck was alleging. Complete denial of substantive due process due MJL. This "hearing" was an entirely lawless proceeding and an unfair "trial" in violation of the Fourth, Fifth, Sixth Amendments and Fourteenth Amendments o the US Constitution.

298.    On September 24, 2021, Judge Berle, approved a "clarification" of the Jones settlement agreement while appointing Mr. Siva Thorpe, who was at all times a teammate of Mr. Paul Bender, the Independent Monitor, to continue monitoring the LADWP. Judge Berle found that Kabateck did not conduct any formal discovery and relied only on information provided by "LADWP" in his "investigation"—all the things Kabateck publicly complained off were allegedly wrong with the *Jones* Settlement. Apparently, defendants are subscribers to the "rules for thee and not for me" school of thought. Hypocrisy, dishonesty and malice by Kabateck and co-conspirators to cover up very costly bad decisions.

299.    On or about November 18, 2021, the City filed an Application with the *Jones* trial court/ Judge Berle, to file KPMG's second audit report regarding the CC&B, ***under seal***, again.

300.    On December 1, 2021, Kabateck, on behalf of the *Jones* class, filed with the trial court in *Jones* notice that he does not intend to even oppose the City's application to file KPMG's second report under seal. Plaintiffs believe and alleges, that KPMG's reports identify serious ongoing problems with the CC&B billing system that the City/ LADWP, Mike Feuer, Kabateck, are part of clandestine conspiracy to conceal, coverup and hide from the public the true extent of the ongoing, inexcusable, illegal, and reckless failures of City/ LADWP to fix, remedy, and/ or repair CC&B's disastrous ongoing failures and deficiencies since it was launched.

301.     Widespread news and media reports of a plea deal between the Assistant US Attorney, Los Angeles Office and Mr. Paradis of November 29, 2021, allege that the independent monitor, Mr. Bender, was a recipient of "gifts" from Mr. Paradis and Mr. Paradis allegedly "drafted nearly all" of the independent monitor's reports.  If proven true, MJL had no idea or knowledge at any time until this was reported in the online publications on November 29, 2021 that these alleged transactions between Mr. Paradis and Mr. Bender occurred. MJL finds these revelations shocking, if they are proved true.

302.     However, this new development should also provide an explanation as to why Judge Berle refused MJL's request to take the deposition of Mr. Bender who submitted the misleading declaration in January 2021 in support of Mr. Kabateck's motions, as Mr. Bender already was represented by a white-color-crime criminal defense attorney—Ms. Nina Marino. https://kaplanmarino.com/nina-marino/. Plaintiffs, therefore, reasonably infer, and therefore allege, that Mr. Bender was also being pressured by Mr. Kabateck, and/ or Kabateck's co-conspirators, to frame and falsely accuse Mr. Libman in order to enable Kabateck and his co-conspirators to take MJL's and MJL/APC's property, and violate MJL/ MJL APC's constitutional rights, while railroading and scapegoating MJL/APC.

303.     MJL also had no knowledge, notion, or idea regarding any referral fees, bribes or kickbacks to Mr. Paradis of $2.2 million through some questionable real estate entities, allegedly, or others, from Mr. Landskroner as reported in the news media. MJL finds these reports, and the plea deal—shockingly troublesome, if true.  MJL would have blown the proverbial whistle immediately had he known about any illegal bribery schemes. Plaintiffs believe that if these allegations prove true, MJL was not told of these bribery allegations because all concerned must have known that MJL would have never gone along with them.

304.     MJL/ MJL APC claims, believe and allege, that Judge Berle committed multiple acts of misconduct in violation of Judicial Cannons, that amount to violations of First, Fifth, Sixth, Eighth and Fourteenth Amendments to the US Constitution, that include: (1) Abuse of Bench Authority In Performance of Judicial Duties; (2) Ex Parte Communications; (3) Failure

to Insure Rights; (4) Obvious and displayed bias and animosity directed at MJL from the bench; (4) Failure to Recuse or Disqualify himself due to undisclosed conflict of interest, despite multiple requests; (5) Abuse of Contempt and Sanction Power; (6) Hostile Demeanor; (7) Making a false record of his comments during one of MJL's depositions Judge Berle presided over; (8) retaliated against MJL for MJL's investigating Judge Berle, Mr. Kabateck and others.

305.     Judge Berle violated MJL's constitutional rights including, First Amendment to the US Constitution's freedom of speech; 5th Amendment's equal protection based on national origin; 5th Amendments' Equal Protection clause to be free for discrimination based on national origin; denied due process under the US Constitutions 4th and 14th Amendments and denied cross examination and fair trial per the 6th Amendment. Pursuant to 42 USC §1983, Plaintiffs MJL and MJL APC are seeking an immediate prospective remedy from the federal court to enjoin Judge Berle from further violating MJL/ MJL APC's Constitutional rights under the US Constitution, a declaration that MJL's constitutional rights have been violated, and that MJL/ MJL APC's are entitled to be heard on all issues relating to the *Jones* matter by a different and unbiased California State Court judge who will be determined by a procedure to be delineated in this litigation to guarantee that the new judge will have no prior affiliation or dealings of any kind with the parties, or attorneys in *Jones* or in this federal action to insure MJL/ MJL APC's constitutional rights.

## XII. CLASS ACTION ALLEGATIONS

306.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if set forth herein verbatim.

307.     Plaintiff BL seeks to maintain this action on behalf of herself and all others similarly situated under Rule 23(b)(2) of the Federal Rules of Civil Procedure. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiff proposes the following class definition: "All citizens and residents of the United State of American who were at any time in the past two years to the present, going forward, were,

are, subject or subject of an execution of a search warrant of their person, home or place of business, in the course of which outdoor and/ or indoor surveillance cameras and/or component digital recording media were destroyed, disconnected, disabled, or otherwise rendered inoperable by federal law enforcement.

308.    This action meets all the Rule 23(a) prerequisites for maintaining a class action.

309.    Numerosity under Rule 23(a)(1): The putative class and subclasses are so numerous that joinder of all members is impracticable.

a.    The Proposed Class:

i.    Thousands of sealed and unsealed search warrants were executed by the US Government law enforcement in the past two years wherein surveillance cameras and/ or component parts were either disconnected, destroyed, damaged or rendered inoperable during execution of search warrants;

ii.    On information and belief, per the 2020 US Census Bureau, 258.3 million people were adults 18 years or older living in the USA;

iii.    On information and belief, millions of households and businesses have some sort of outdoor and/ or indoor surveillance system(s) that include cameras and digital recording media devices. Private surveillance cameras in/on/ at homes and businesses is already ubiquitous in America, and their use is accelerating rapidly. The search for the truth and transparency demand that federal law enforcement be enjoined and prohibited from destroying, disabling, damaging or rendering inoperable any home or business of any American.

310.    Commonality under Rule 23(a)(2): This action presents questions of law and fact common to the putative class, resolution of which will not require individualized determinations of the circumstances of any particular plaintiff. Common questions include but are not limited to:

    a.  <u>The Proposed Class:</u>

      i.  For the class as a whole, does the government's practice of disabling, disconnecting, destroying, or otherwise rendering inoperable of a home' or business' surveillance cameras and/ or component parts during execution of a search warrant, violate the Fourth Amendment?

      ii.  For the class as a whole, does the government's practice of disabling, disconnecting, destroying, or otherwise rendering inoperable of a home or business surveillance cameras and/ or component parts during execution of a search warrant, violate the Fifth Amendment amendments takings clause?

311.    Typicality under Rule 23(a)(3): Plaintiffs' claims are typical of the claims of the putative class.

    a.  <u>The Proposed Class:</u>

      i.  Plaintiff's claim and the putative class members' claims arising out of the same course of conduct of the government, are based on the same legal theories and involve the same harms.

      ii.  Plaintiff seeks the same class-wide declaratory and injunctive relief for herself and for the other members of the putative class.

312.    Adequacy of representation under Rule 23(a)(4): The interests of the putative class are fairly and adequately protected by Plaintiff and her attorney.

    a.  <u>The Proposed Class:</u>

      i.  Plaintiff adequately represents the putative class because their interests are aligned and there are no conflicts of interest between the Plaintiff and members of the putative class. Like other members of the class, her property was searched and seized in violation of the Fourth and Fifth Amendments, and the government is free to continue its unconstitutional practice of destroying, disabling, disconnecting or otherwise rendering inoperable the ubiquitous surveillance cameras and/ or recording

equipment during execution of a search warrant to avoid transparency despite the proclamation of the US Attorney General that at least body cams are required "to promote transparency and confidence" in law enforcement. Full transparency mandates that the government will not be allowed to destroy evidence of how it conducts searches of homes and businesses.  Things are either transparent or opaque.  There cannot be a middle ground.

    ii.    Plaintiff and the putative class members are ably represented by attorney Michael J. Libman of Law Offices of Michael J. Libman, APC, who was the investigating, local and Liaison Counsel in *Jones,* a historic class action settlement achieved through "Herculean" efforts of the attorneys in *Jones*, including Plaintiff's counsel herein, a settlement that already achieved a recovery of about $100,000,000 to the LADWP ratepayers since 2017 to the present, and evidently found by the *Jones* trial court to be fair, reasonable and adequate, despite criticism and baseless allegations by others, by the same trial court twice: once in 2017 and then on September 24, 2021. Through the travails of *Jones*, MJL has achieved substantial, particularized experience, and knowledge litigating the issues involved in this case. Michael J. Libman, Esq. is uniquely qualified to handle the class claim(s) in this case.

313.    This action also meets the requirements of, and is brought in accordance with, Rule 23(b)(2) of the Federal Rules of Civil Procedure.

    a.    The Proposed Class:

    i.    Defendants have acted, or refused to act, on grounds generally applicable to the putative class. Specifically, on June 30, 2020, prior to and thereafter, to the present, on information and belief, the government conducted, and has been conducting searches and seizures of homes or businesses during which the government destroyed, disabled, damaged,

or otherwise rendered inoperable, surveillance cameras and related equipment of a searched home or business.

ii. Final injunctive and declaratory relief is appropriate with respect of the members of the class, otherwise the government will continue its unconstitutional practice of destroying, disabling, damaging or otherwise rendering inoperable security cameras of American homes and businesses, undeterred, during searches of American homes or businesses. The government cannot be allowed to suppress and destroy evidence of its abuses and misconduct in the name of the people.

314.   Finally, as per Rule 23(b)(2)'s requirement that class must be ascertainable, this action satisfies that requirement. The membership of the putative class and subclasses are ascertainable because the government maintains records of the identity of those persons, homes or businesses where the government executed search warrants. Also, while notice is not required for class action brought under rule 23(b)(2), the government's records contain contact information for all members of the proposed class as government maintains records of those whose homes or businesses were searched, such that notice could easily be provided should the Court deem it appropriate.

## XIII. CLASS CLAIMS

## COUNT I: SEIZURE AND DESTRUCTION OF SECURITY CAMERAS VIOLATE THE FOURTH AND FIFTH AMENDMENTS

### (Against the US Government Defendants)

315.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if set forth herein verbatim.

316.   Defendants, and each of them, acting under color of state law, conspired to deprive, Plaintiffs of their rights under the laws of the United States and US Constitution.

317.   Specifically, Defendants conspired with, and did unlawfully seize Plaintiffs' personal property without a valid warrant, court order, consent, probable cause, or exigent

circumstances.

318.    The conduct of Defendants, and each of them, interfered with Plaintiffs' rights, including their rights to be protected against unlawful search and seizure under the Fourth Amendment and Fourteenth Amendments of the Constitution of the United States, and the right to be free of government interference as guaranteed by the First and Fourteenth Amendments of the Constitution of the United States.

319.    Plaintiffs did in fact suffer the deprivation of numerous rights granted to citizens of the United States, including those under the Fourth Amendment that protect against unreasonable seizure, and those under the Due Process Clause of the Fourteenth Amendment. Defendants, and each of them, engaged in said conspiracies for the purpose of depriving Plaintiffs of equal protection of the laws of the State of California and of the United States, and depriving Plaintiffs of their rights under the Constitutions of the United States and the State of California.

320.    As the direct and proximate result of these Defendants' actions, Plaintiffs have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorneys' fees, costs and expenses, including those authorized by *42 U.S.C. Section 1988*, to an extent and in an amount subject to proof at trial.

321.    As further direct and proximate result of government's June 30, 2020 unreasonable search and seizure of BL's and the putative class members' personal property, named Plaintiffs and other members of the putative class have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property and taking of their property under the Fifth Amendment's takings clause which prohibits taking of private property for public use without just compensation. Government's dislodging, breaking, damaging or destroying an American's home or business' surveillance cameras during execution of a federal search warrant is an unconstitutional taking of private property for public use, without just compensation. Declaratory and injunctive relief is necessary to remedy this injury.

# XIV. INDIVIDUAL CLAIMS

## COUNT I: RETURN OF UNLAWFULLY SEIZED PERSONAL PROPERTY

### (By MJL, MJL APC, AND BL against Government defendants, Melisa Mills, Special Agent Civetti and Does 3-300 )

322.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if set forth herein verbatim.

323.   This Count seeks to vindicate the Fourth Amendment right of the individual plaintiffs and MJL APC to be free from unconstitutional searches and seizures under the Fourth Amendment.

324.   The U.S. Constitution's Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

325.   The Fourth Amendment protects the individual plaintiffs' and MJL APC's personal property and fixtures attached to real property from unreasonable searches and seizures.

326.   On June 30, 2020, the government raided the Libmans' Home and seized a dozen personal items, none of which contained any evidence of the "suspected" "Subject Offenses" fraudulently listed as grounds for the fraudulent and without probable cause warrants. One of the items was business personal property item of MJL APC and was identified as such during the raid to the government; another item was BL's personal property used by BL in the course and scope of her occupation as a professional and the Minors for games and homework. Another item seized is a flashcard containing irreplaceable video footage of MJL's milestone birthday party. These items are still being held without valid or legal grounds by the government.

327.   Three items of personal property were returned to the plaintiffs. Nine are still being held by the government without valid reason or explanation.

328.     On or about June 30, 2020, the government seized BL's and Minors' personal property without individualized suspicion and as such violated the Fourth Amendment.

329.     The government exceeded the scope of the search warrants' authorization because the search warrants did not authorize the government to seize, disable, destroy, damage, take, or render inoperable the security cameras on the outside of the Libmans' Home or the interior of the Libmans' Home.  Nor did the warrant authorize to damage, and as such take the MJL's and BL's dining table and dining chairs.  As such the government violated the Fourth Amendment and Fifth Amendment's taking clause which states: "nor shall private property be taken for public use, without just compensation."

330.     Any evidence or records that Defendants obtained through the unauthorized criminal search of the Plaintiffs' home and person were obtained in violation of the Fourth Amendment as the "fruit of the poisonous tree."

331.     Accordingly, the named Plaintiffs ask the Court to declare that the government's action in seizing the Plaintiffs' personal property and security cameras of the subject property and subjecting the property to a criminal search violated the Fourth Amendment and the Fifth Amendment.

332.     Similarly, named Plaintiffs ask the Court to enter judgment declaring that due to the government's Fourth Amendment violation in subjecting the Plaintiffs' property to a criminal search, governments' retention and/ or use of any records or evidence obtained through that search, other than for the limited purpose of reuniting them with their property, violates the Fourth Amendment.

333.     To that end, Plaintiffs request that this Court order that all records the government created during their search, and thereafter, of the Libmans' Home, other than those records necessary for reuniting the Plaintiffs with their property, be destroyed and/ or returned to Plaintiffs forthwith.

334.     Also, Plaintiffs ask for a declaration and judgment that Plaintiffs are entitled to fair compensation for the taking of the surveillance system, table and chairs, to be proven at trial.

335.    As a direct and proximate result of the government's June 30, 2020 unreasonable search and seizure of Plaintiffs personal property, named Plaintiffs have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury.

### COUNT II: DECLARATORY RELIEF

**(By MJL and MJL APC against City of Los Angeles; Brian S. Kabateck, Esq.; Kabateck, LLP, Annaguey and Does 3-300)**

336.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if set forth herein verbatim.

337.    The Declaratory Judgment Act, 28 U.S.C. §2201, provides that "upon the filing of an appropriate pleading," this Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

338.    An actual controversy exists as to the amount of attorneys' fees and costs owed to the MJL and MJL APC from City in connection with the *Jones* matter pursuant to the Final Judgment and *Jones* Settlement Agreement.

339.    Defendants Kabateck  unilaterally and fraudulently "wrote out" MJL/ MJL APC in his belated one-year report from the Final Judgment indicating that Kabateck is going to claim  29% of the monies recovered post Final Judgment monies for himself usurping MJL/ MJL APC's claims.  In fact, under the terms of the Final Judgment Kabateck is not entitled to any attorney fees, particularly to claim 29% from the additional recovery post the *Jones* Final Judgement.

340.    Additionally, the City, by and through Mr. Eric George, did not respond to MJL/ MJL's inquiries whether the City intends to comply with its obligation concerning Liaison Counsel's (MJL) right to claim fees at a rate of 29% of the post Final Judgment recovery to the *Jones* Class and subclasses.  Therefore, City's silence is interpreted that the City intends to oppose or dispute MJL/ MJL APCs' claims under the *Jones* Final Judgment.

341.   Plaintiffs are entitled to and request a declaration that MJL/ MJL APC are entitled to 29% in attorney fees from the monies recovered post the date of the Final Judgment, believed to be at least $11,020,000.00 based on court filings in *Jones* that the post Final Judgment recovery, before Kabateck got involved, is at least $38,000,000.00.

342.   Plaintiffs ask this court to declare that Kabateck is not entitled to any portion of the 29% of attorney fees from any monies recovered, or to be recovered, under the *Jones* Settlement and Final Judgment.

343.   Plaintiffs ask this Court to declare and enter a judgment that MJL/ MJL APC are entitled to an independent audit of any and all monies paid by City in connection with the *Jones* Settlement to anyone, including class members, costs of the audit to be paid by City through MJL APC.

344.   Plaintiffs also ask this court to declare and enter judgment that the City must pay MJL/MJL APP at least $11,020,000.00, including 29% of any additional monies recovered that an audit may reveal.

345.   Pursuant to Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs respectfully request that they be afforded a speedy hearing on this claim for declaratory relief.

## COUNT III: VIOLATION OF CIVIL RIGHTS (42 U.S.C §1983)

**(By MJL and MJL APC against; Brian S. Kabateck; Anastasia Mazzella; Eric M. George; Maribeth Annaguey; Mike Feuer; Eric Kingsley; Judge Elihu M. Berle in their individual capacities, and Does 3-300)**

346.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if set forth herein verbatim.

347.   Each defendant acted under color of state law, as they were in a symbiotic relationship with the Judge Berle and/ or City at relevant times, Kabateck and Mazzella were performing traditionally a government function, such as investigation and determination whether a settlement was fair, reasonable and adequate, existence of a close nexus between theses here defendants, the court, city and Mike Feuer, and jointly participated with Judge

Berle in a scheme to scapegoat, falsely accuse and deprive MJL/ MJL APC of property in violation of his/its federal protected rights.

a. BRIAN S. KABATECK –appointed by Judge Berle, empowered and deputized to conduct an "*ultra vires*" investigation whether the *Jones* settlement was fair, reasonable and adequate on Judge Berle's behalf and under his authority. Ultra Vires acts by their very definition are entirely devoid of any jurisdiction. Kabateck took his newfound state power to mean that he has been given license to fabricate evidence, manufacture evidence, frame MJL, accuse MJL, scapegoat MJL, railroad MJL, with acts and actions Kabateck knew or must have known were untrue.  And drunk with state power, conferred on him by his friend Judge Berle, Kabateck abused this state power.

b. ANASTASIA MAZZELLA –Kabateck's partner, aided, contributed, encouraged, participated in and took part in all the acts and actions of Mr. Kabateck, under color of state law.

c. MIKE FEUER –City Attorney acting under color of state law in his individual capacity who acted in concert with Kabateck and defendants to violate Plaintiffs' civil rights.

d. MARIBETH ANNAGUEY—City's and Mike Feuer's outside counsel acting with authority under color of California state law conspired with co-defendants to deprive MJL of his property and constitutional rights.

e. ERIC M GEORGE – Partner of MARIBETH ANNAGUEY and Mike Feuer's outside counsel, friend and former-co-counsel of Kabateck, acting under color of state law as it flowed from the City and through Kabateck's cloaking with state powers by Judge Berle;

f.  JUDGE ELIHU M. BERLE—California State Court judicial office acting under color of law as a state actor and entirely in absence of any jurisdiction to retaliate against MJL/ MJL APC for MJL exercising his first amendment

rights and/ or investigating Judge Berle, Kabateck and other lawyers connected to the *Jones* case.

    g.   ERIC KINGSLEY –joint actor, collaborator, co-conspirator with Mr. Kabateck and Ms. Mazzella acting under color of state law.

348.    These herein defendants are not immune under the joint participation doctrine per *Dennis v Sparks* (1980) 449 US, 24, 28, because, as plead in detail in this complaint, private parties may be subject to section 1983 liability when they are a willful participant in joint action with the state judge even if the judge is immune from a suit from liability. "[T]here [is] no good reason in law, logic, or policy for conferring immunity on private persons who persuaded the immune judge to exercise his jurisdiction corruptly. *Id* at 26."

349.    These herein defendants, engaged in conduct that was the proximate cause of the violation of plaintiffs' federally protected rights, as more fully alleged supra in this complaint.

350.    These herein defendants conspired by action, omissions and silence to deprive plaintiffs of their federally protected constitutional rights, including 1st, 4th, 5th, and 14th amendments and property rights from the *Jones* settlement agreement and Final Judgment, as more fully alleged in detail in this complaint, *supra*.

351.    Defendants herein shared a common objective of scapegoating, framing, falsely accusing MJL/ MJL APC, and depriving MJL/ MJL APC of his federally protected and property rights, and, in order to fraudulently shift responsibility for mishandling the *Jones* settlement implementation, and the *City v PWC* litigation that cost the ratepayers/ taxpayer up to a billion dollars in lost recovery from PWC and/ or its insurers, away from themselves to MJL/ MJL APC.

352.    Plaintiffs suffered actual, damages in the amount of as a direct and proximate cause of defendants' actions.

353.    Plaintiffs are entitled to award of punitive damage against these individual defendants, in their individual capacities, according to proof at trial as per *Smith v Wade* (1983) 461 *US* 30, as section 1983 case.

354.    Plaintiffs are entitled to attorney fees on this claim, according to proof, pursuant to 42 *USC* § 1988(b).

## COUNT IV: DECLARATORY AND/ OR INJUNCTIVE RELIEF (42 U.S.C §1983)

### (By MJL and MJL APC against Hon. Elihu M. Berle in his official capacity)

355.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if set forth herein verbatim.

356.    42 *U.S.C.* §1983, relevant part provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ***except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." [EMPHASIS ADDED]***

357.    Judge Berle is a state court judge acting under color of state law when he empowered Kabateck and Mr. Robbins to conduct *ultra vires* "investigations" into the *Jones* settlement and attorneys connected to the *Jones*, and all related matters, and then retaliated against MJL/ MJL APC, in express violation of the *California Judicial Cannon* 3 D(5), and the first amendment right to freedom of speech,  because MJL conducted, and still is conducting, his own independent investigation into Judge Berle, Kabateck and other attorneys connected with the *Jones* matters.

358.    Judge Berle engaged in conduct, as more fully alleged in this complaint, *supra*, that was the proximate cause of the violation of the plaintiffs' federally protected rights, including the 1st, 5th, 6th and 14th amendments.

359.    Judge Berle presently remains a California State Court judge, who is assigned to handle, and is still handling, the *Jones* matter.

360.     To prevent further violation of Plaintiffs' constitutional rights by Defendant, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 *U.S.C.* §2201, 42 USC §1983, and Fed. R. Civ. P. 57, declaring which defendants' practices are unconstitutional.

361.     Further, pursuant to 28 U.S.C. §2202 and Fed. R. Civ. P. 65, and 42 USC §1983, it is appropriate and hereby requested that this Court issue a permanent injunction prohibiting Judge Berle from enforcing restrictions on MJL's expressive activities to the extent they are unconstitutional, so as to prevent an ongoing violation of MJL's constitutional rights. Plaintiffs are suffering from irreparable harm from continued enforcement of defendant's unconstitutional practices. Monetary damages are inadequate to remedy and may not be available in the event Judge Berle is deemed immune, the harm suffered as a result of the deprivation of rights under the First, Fifth, and Fourteenth Amendments, and the balance of equities and public interest both favor a grant of injunctive relief.

362.     Judge Berle remains in the position to oversee "collection" of the 1.8 million dollars in sanctions awarded by him to Kabateck and City without any jurisdiction over MJL/ MJL APC, and to exercise his judicial authority in this regard. As such, Plaintiffs will suffer irreparable injury if prospective injunctive relief ordering judge Berle to seize and desist from retaliating against Plaintiffs' for MJL's ongoing and continuing investigation in violation of MJL's federally protected rights is not granted.

363.     Declaratory relief declaring that MJL is privileged to conduct an investigation into Judge Berle and other attorneys connected to *Jones* activities*, and that Judge Berle is prohibited from retaliating against Plaintiffs for MJL's investigation of Judge Berle or any lawyer connected to *Jones* in any way or to infringe on MJL/ MJL APC's constitutional rights, and that Judge Berle is prohibited from issuing any further rulings or making any orders that concern Plaintiffs.

///

///

///

## COUNT V: DEPRIVATION OF CIVIL RIGHTS PURSUANT TO *BIVEN'S*

**(By All Plaintiffs against Melissa J. Mills, Esq.; FBI Special Agent Andrew Civetti, FBI Special Agent Julianne Mayfield; FBI Special Agent DOE 1; FBI Special Agent DOE 2 and Does 3-300)**

364.    Plaintiffs reallege and incorporate by reference each allegation of all preceding paragraphs as if set forth herein verbatim.

365.    Plaintiffs allege violation of civil right per *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* (1971) 403 U.S. 388.

366.    Here, Plaintiff' *Bivens* claims against Defendants accrued on June 30, 2020. Plaintiffs are filing this Complaint within the three-year statute of limitations. Thus, Plaintiffs' *Bivens* claims are timely.

367.    Plaintiffs have constitutionally protected rights under the 4th and 5th Amendments, from the defendants fabricating, and/or conspiring to do same, a false probable cause affidavit, conduct excessively forceful and intimidating search and seizure to threaten, intimidate and terrorize plaintiffs, destroyed surveillance cameras in violation of the search

368.    These defendants acting under color of federal authority violated plaintiffs' federally protected rights, as more fully alleged in this complaint, *supra.*

369.    Contrary to Ms. Mills' unfounded, uniformed, and unreasonable belief that she is completely immune and "can do whatever she wants" in the Plaintiffs' home, section 1983/ *Bivens* jurisprudence denies her prosecutorial immunity for the following conduct for which federal courts have already denied prosecutorial immunity, some of which plaintiffs allege Ms. Mills already committed (in bold), as more fully alleged in this complaint, *supra*:

   a.   Wiretapping

   b.   Holding press conferences and leaking information to the media

   **c.   Obtaining evidence prior to indictment**

   **d.   Fabricating evidence before grand jury is empaneled**

   **e.   Organizing a sting operation**

   **f.   Participating in an illegal search and seizure of property**

   g.   Falsifying a death certificate and covering up a murder by interfering with

an investigation by the police and coroner

h.   Altering a trial transcript

**i.   Participating in a raid**

j.   Giving Miranda warnings and participating in the interrogation of a suspect

k.   Making an arrest, or ordering a warrantless arrest

l.   **Managing and retaining seized property;** and disposing of seized property post-trial

m.   Revealing the identity of a witness to the subject of a prosecution and refusing to provide the witness with protection

n.   Obtaining a "safekeeping order" from the court in order to keep an inmate incarcerated after the reversal of his conviction686

o.   Authorizing transfer of a suspect's property to the county in exchange for dismissal of charges, when criminal proceedings had not yet commenced

p.   Agreeing to dismissal of criminal charges on condition the criminal defendant swears to his innocence on a Bible in a church

q.   Failing to report allegations of child abuse to the Department of Child Welfare, as required by state law

r.   Intervening to prevent the execution of a writ of habeas corpus as testificandum.

s.   Ordering a court reporter not to prepare transcripts for a habeas corpus proceeding, despite a court order that the transcripts be provided to habeas petitioner at government expense

t.   Withholding of exculpatory evidence by prosecutors who were not involved in a pending appeal

u.   Destroying exculpatory evidence

**v.   Advising police to pursue preliminary investigation and advising police that there was probable cause to support [search] warrant**

w.   Failing to notify court that issued warrant to arrest material witness of the status of the underlying criminal case.

          x.   Detaining and questioning a witness who is the subject of a material witness warrant;

370.    Additionally, defendants herein conspired to, and acted in concert, jointly and in participation with Ms. Mills, to intimidate plaintiffs and deprive plaintiffs of their constitutional rights in violation of 42 *USC* §1985 (2) and (3).

371.    Plaintiffs seek actual, special, general, compensatory and punitive damages from each defendant herein that were proximately caused by defendants' violations of plaintiffs' constitutional rights according to proof at trial, and such other relief deemed just and equitable.

## CLAIM VI: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS IN VIOLATION OF 42 *USC* §1985 (2) AND (3)

### (By All Plaintiffs against Melissa J. Mills, Esq. FBI Special Agent Thomas Ruscitti, and Kabateck and Does 3-300)

372.    Plaintiffs reallege and incorporate by reference each allegation of all preceding paragraphs as if set forth herein verbatim.

373.    42 USC §1985 (2) states:

"If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his

property for lawfully enforcing, or attempting to enforce, the right of any person, or

class of persons, to the equal protection of the laws"

374.     42 USC §1985(3) states in relevant part:

"If two or more persons in any State or Territory conspire …to prevent by force,

intimidation, or threat, any citizen who is lawfully entitled to …giving his support

or advocacy in a legal manner…; or to injure any citizen in person or property on

account of such support or advocacy; in any case of conspiracy set forth in this

section, if one or more persons engaged therein do, or cause to be done, any act in

furtherance of the object of such conspiracy, whereby another is injured in his

person or property, or deprived of having and exercising any right or privilege of a

citizen of the United States, the party so injured or deprived may have an action for

the recovery of damages occasioned by such injury or deprivation, against any one

or more of the conspirators.

375.     As more fully alleged in this complaint, supra, on or about March 8, 2021, or

shortly before that date, defendants herein conspired to, and acted in accordance and

furtherance of the conspiracy, to have Agent Ruscitti call MJL on telephone at MJL/ APC's

office and intimidate MJL/ MJL APC on behalf of the other co-conspirators to deter, impede,

and obstruct MJL's investigation into Kabateck, and others connected to him relating to the

*Jones* matter and deprive him of rights of a citizen of the United States afforded to him under

the US Constitution.

376.     Plaintiffs seek actual, special, general, compensatory and punitive damages

from each defendant herein that were proximately caused by defendants' violations of

plaintiffs' constitutional rights according to proof at trial, and such other relief deemed just and

equitable.


**CLAIM VII: DEPRIVATION OF CIVIL RIGHTS PURSUANT TO *TOM BANE* ACT,**

**CA CIVIL CODE SECTION 52.1**

**(By MJL, BL and Minors A and B against: Melissa J. Mills, Esq.; FBI Special Agent**

**Andrew Civetti; FBI Special Agent Julianne Mayfield; FBI Special Agent JOHN DOE;**

**FBI Special Agent Jim Doe; FBI SPECIAL AGENT THOMAS RUSCITTI; Brian S.**

**Kabateck AND DOES 3-300)**

377.   Plaintiffs reallege and incorporate by reference each allegation of all preceding paragraphs as if set forth herein verbatim.

378.   The *California Constitution, Article I, Section 13*, textually identical to the Fourth Amendment to the United States Constitution, at all times material herein, provided in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; ...."

379.   *California Civil Code § 52.1(a)* provides in pertinent part: "If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state ...; §52.1(b) provides in pertinent part ... "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages ..."

380.   No discriminatory animus or intent needs be shown, per the California Supreme Court in *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, where plaintiffs' rights were violated and *Civil Code §52.1.*

381.   In *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, the Court, interpreting Civil Code §52.1, stated: The word "interferes" as used in the Bane Act means "violates." *City of Simi Valley v. Superior Court* (2003) 111 Cal.App.4th 1077. The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.

382.   Plaintiffs were legally entitled to be free of unreasonable search and seizure,

intimidation, coercion, threats.

383.    Defendants and each of them violated Plaintiffs' right to be free of an unreasonable search and seizure, intimidation, coercion and threats, in violation of the U.S. Constitution, Fourth Amendment and of the *California Constitution, Article I, Section 13*, through the use of threats, intimidation and/or coercion, within the meaning of ***Civil Code § 52.1(b)*** as follows:

A. Threats: Plaintiffs expressly and/or impliedly, were threatened by words and acts of defendants intended to scare Plaintiffs into "cooperation" and to abandon MJL's investigation into possible corruption, undisclosed conflicts, collusive schemes to fraudulently shift their individual responsibility for the hard they cause the LA taxpayers.

B.  Threats: MJL was threatened with criminal prosecution if he did not assert the 5th Amendment right to remain silent during a deposition in abuse of the deposition process; MJL was threatened by government agents to dissuade him from investigating Judge Berle and Kabateck. Individual plaintiffs were also seized pursuant to an unlawful and unconstitutional search against their will by force and MJL, BL were handcuffed against their will.

C. Intimidation: JOHN DOE and JIM DOE, intimidated MJL by pointing a machine gun at Minor B to horrify, mortify, scare and intimidate MJL to abandon his investigation, and to force him by psychological intimidation to "cooperate" without explaining with whom or how.  Agent Thomas Ruscitti, at the direction of Ms. Mills and in conspiracy with Kabateck and others,  called MJL at the office and intimidated him suggesting future government raids, violence, and threats against his well-being. Ms. Mills intimidated MJL and his family, by falsely but menacingly proclaiming that she could do whatever she wanted to Plaintiffs and their property.

D. Coercion: Plaintiffs were held against their will (and right to leave) but could not leave the conditions of handcuffs, and other physical barriers and devices meant to

E. seize and confine Plaintiffs. Plaintiffs communicated verbally that they were not supposed to be constrained under the false pretenses in the search warrants, all of which defendants wrongfully ignored, rejected or refused.

384. Defendants' conduct was a substantial factor in causing Plaintiffs' injury, damage and harm.

385. Plaintiffs incurred and are incurring attorney fees to vindicate their right to be free of the unlawful confinement imposed upon them.

386. They are entitled by *Civil Code §52(b)* to be compensated for all injury, damages, humiliation and harm caused by violation of their right to be free of unreasonable seizure pursuant to *California Civil Code Section 52.1(h).*

387. Plaintiffs' suffered injury, damage and harm is in an amount, according to proof, including but not limited to deprivation of familial relationships, monetary and financial losses, medical, psychiatric, psychological and incidental expense and hardships to be shown at the time of trial, according to proof.

388. Defendants acted with malice and oppression and with a conscious disregard of Plaintiff's rights, making them liable for punitive damages under *California Civil Code* §§3294, 3295.

**CLAIM VIII: RELIEF-Violation of Ralph Civil Rights Act of 1976 [Civ. Code § 51.7]
and conspiracy to violate same**

**(By Plaintiffs against Melisa Mills, FBI Special Agent Andrew Civetti; FBI Special Agent Julianne Mayfield; FBI Special Agent JOHN DOE; FBI Special Agent Jim Doe; FBI SPECIAL AGENT THOMAS RUSCITTI; Brian S. Kabateck; Kabateck LLP, Eric Kingsley, Kingsley and Kingsley and Does 30300)**

389. Plaintiffs reallege and incorporate by reference each allegation of all preceding paragraphs as if set forth herein verbatim.

390. *California Civil Code section 51*.7, subdivision (b) states that all persons within the jurisdiction of California have the right to be free from any violence, or intimidation by

threat of violence, committed against their persons or property on account of any characteristic listed or defined in subdivision (b) of Section 51 (national origin) or because another person perceives them to have one or more of those characteristics.

391.     *Civil Code* section 52, subdivision (b) states that whoever denies the right provided by Section 51.7, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following: (1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages; (2) a civil penalty of twenty-five thousand dollars ($25,000.00) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right; and (3) attorney's fees as may be determined by the court. *Civil Code section 52*, subdivision (b)(1) states that damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

392.     A private cause of action under section 51.7 has been recognized by the California Supreme Court *Supreme Court in Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820. The rights guaranteed in section 51.7 apply against private actors, not just those whose conduct is chargeable to the state as our Supreme Court has held in *Jones v. Kmart Corp*. (1998) 17 Cal.4th 329.

393.     Defendants intentionally threatened violence against the plaintiff and/ or their property when machine gun was pointed at Minor B  in the presence of MJL to intimidate, horrify, and terrorize MJL to drop his investigation into corruption, self-dealing, undisclosed conflicts of interest, because plaintiffs believe and allege that defendants perceived MJL, and his family by extension, to be weak and not worthy of the same protections of the state and federal laws because of MJL's national origin.

394.     The substantial or motivating factor in the intimidation by threat of violence committed against Plaintiffs as alleged herein as engaged in by defendants was their perceptions of plaintiffs protected characteristic, and the aiding abetting, inciting and/or

compelling of the threatening conduct, was based on the plaintiffs' national origin and constituted a violation of *Civil Code* section 51.7 which was the proximate and legal cause to plaintiffs' damages as alleged herein.

395.    Any reasonable person would have been intimidated by machine guns pointed at them or their children, during a concocted military invasion of their home, and by intimidating calls from an FBI special agent delivering a not-so-vailed threat on behalf of an Assistant US Attorney in cahoots with other lawyers.

396.    Plaintiffs were harmed and defendants were the proximate cause of their harm.

397.    Plaintiffs seek actual, special, general, compensatory and punitive damages according to proof.

398.    Defendants acted with malice and oppression and with a conscious disregard of Plaintiff's rights, making them liable for punitive damages under *California Civil Code* §§3294, 3295.

### CLAIM IX: VIOLATION OF 42 USC §1986

**(By Plaintiffs against Nicola Hanna, Mack Eric Jenkins and Does 3-300)**

399.    Plaintiffs reallege and incorporate by reference each allegation of all preceding paragraphs as if set forth herein verbatim.

400.    The unlawful threats and other wrongful acts conducted against the Plaintiffs by the collective defendants constituted abuse of process, abuse of authority, violations of state and federal laws and violations of the plaintiff's Fourth, Fifth and Fourteenth Amendment rights.

401.    The Defendant officers negligently, recklessly and/or intentionally breached their duty under 42 U.S.C. §1986 to prevent the commission of the civil rights violations perpetrated against plaintiffs, including violations of *42 U.S.C. §§1983 and 1985,* and substantive and procedural due process violations.

402.    The Defendants, their agents, employees and servants knew or should have known that the harassment, abuse of authority, abuse of process, threats and other wrongful acts committed against Plaintiffs violated here rights guaranteed to them under the Fourth,

Fifth and Fourteenth Amendments and *42 U.S.C. §§ 1983, 1985 and 1986.*

403.   Each of the said defendants had the authority, ability and concurrent duty under *42 U.S.C. §1986* to prevent the search, seizure, trespass, harassment, abuse of authority, abuse of process, threats and other wrongful acts against Plaintiffs, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the plaintiffs when such violations did in fact occur. Mr. Hanna was at all relevant times the US Attorney for the Central District of Los Angles, and partner of The GD Firm that employed Ms. Mills, both of whom, on information and belief, had at least divided loyalties, and/ or acting as moles, when needed, for The GD Firm within the US Attorney's Office in Los Angles.

404.   The defendants and each of their failures to stop, prevent, investigate, and/or remedy these wrongful actions constitutes a breach of their duty to do so under *U.S.C. §1986.*

405.   Said defendants (individually and collectively) had the power to prevent the continued violations of due process, fourth, fifth, and fourteenth amendments to the US Constitution against plaintiffs, yet they failed to prevent or protect the plaintiffs from unwarranted, potential, and actual harm(s) they suffered.

406.   As a result of the failure of the collective defendants to prevent the known violations stated above, the plaintiffs have suffered physical harm, extreme fear, personal humiliation and degradation, emotional and psychological harm to the detriment of their health.

407.   That by reason of the foregoing, proximate cause thereof, Plaintiffs have been injured.

408.   Plaintiffs seek actual, special, general and compensatory damages according to proof at trial.


## CLAIM X: DEFAMATION-SLANDER

**(By MJL and MJL/APC against Brian S. Kabateck, Esq.; Anastasia Mazzella; Kabateck, LLP and does 3-300)**

409.   Plaintiffs reallege and incorporate by reference each allegation of all preceding

paragraphs as if set forth herein verbatim.

410.     At the time of the adverse actions alleged herein, and on multiple occasions thereafter, Mr. Kabateck on or about October 13, 2020, during telephonic or in person conversations, slandered and defamed MJL by telling Eric Kingsley "only bad things" about MJL that caused Eric Kingsley to view MJL very negatively, as a person and a professional, to the point wherein Eric Kingsley felt comfortable to call MJL "stupid" during Eric Kingsley's deposition on February 8, 2021, and for Eric Kingsley to provide a false and misleading declaration against MJL.

411.     These claims by Defendants about Plaintiffs were slanderous and defamatory per se.

412.     MJL discovered that these defamatory claims were made on February 8, 2021. Therefore, the defamation/slander claim is timely.

413.     Plaintiffs are informed and believe, and thereon allege, that after these slanderous and defamatory statements were made about MJL orally and in writing, Defendants, and each of them, republished the slanderous and defamatory statements about Plaintiffs to numerous other persons unknown to Plaintiffs but known to Defendants. Defendants had, and have, superior knowledge of those publications than Plaintiffs themselves.

414.     In making the slanderous and defamatory statements about Plaintiffs, Defendants had actual knowledge; or reason to believe, that Plaintiffs would be under a strong compulsion to disclose the contents of the defamatory statements to a third person. Accordingly, Defendants are liable for Plaintiffs' own self-publication of the defamatory statements.

415.     Defendants foreseeably republished the slanderous and defamatory statements about Plaintiffs to persons, and on dates, yet to be ascertained, up to and including the present date.

416.     In making the slanderous and defamatory statements about Plaintiffs, Defendants lacked belief, or of reasonable grounds for belief, in the truth of the statements.

417.     In making the slanderous and defamatory statements about Plaintiffs,

Defendants engaged in the excessive publication of the statements.

418.    In making the slanderous and defamatory statements about Plaintiffs, Defendants made and published the statements for an improper purpose.

419.    In making the slanderous and defamatory statements about Plaintiffs, Defendants made and published the statements beyond the appropriate interest group.

420.    In making the slanderous and defamatory statements about Plaintiffs, Defendants made and published the statements with express and implied malice, and malice in fact, and with design and intent to injure Plaintiffs in their good name, reputation and employment.

421.    In making the slanderous and defamatory statements about Plaintiffs, Defendants made and published the statements with the intent and design to injure, disgrace and defame Plaintiffs.

422.    In making the slanderous and defamatory statements about Plaintiffs, Defendants made and published the statements with a state of mind arising from hatred or ill will for Plaintiffs, evidencing a willingness to vex, annoy or injure Plaintiffs.

423.    In making the slanderous and defamatory statements about Plaintiffs, Defendants made and published the statements based on a reckless or grossly inadequate investigation.

424.    These defendants at all relevant times were, each other agents, employees, employers, partners, alter egos, and co-conspirators therefore vicariously liable for each other's slanderous conduct and statements.

425.    As a direct and proximate result, Plaintiffs were harmed and Defendants' conduct was a substantial factor in Plaintiffs' harm.

426.    As a direct and proximate result of defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer a substantial and ongoing loss of earnings and profits according to proof at the time of trial, physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress, and medical expenses and/or other incidental expenses. Plaintiffs are, thereby, entitled to general and compensatory damages in amounts to

be proven at trial.

427.     The conduct of defendants as alleged herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights and for the deleterious consequences of defendants' actions. Defendants acted maliciously, with intent to cause harm to Plaintiffs. Defendants acted oppressively, in that their conduct was despicable, and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of their rights. The conduct of defendants, and/or their agents/employees, as alleged herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights and for the deleterious consequences of Defendants' actions. In particular, by lying about the true reasons for that illegal action, Defendants acted oppressively and with malice, as those terms are used in *California Civil Code* §3294. Defendants and each of them, and their agents/employees or supervisors, employers, authorized, condoned and ratified the unlawful conduct of each other. Consequently, Plaintiffs are entitled to punitive damages against each of said defendants, pursuant to *California Civil Code* §3294.

## CLAIM XI: BATTERY

**(By MJL against Melissa E. Mills, FBI Agent JIM DOE, and DOES 3-100 in their individual capacities)**

428.     Plaintiffs reallege and incorporate by reference each allegation of all preceding paragraphs as if set forth herein verbatim.

429.     On or about June 30, 2020, Defendants touched plaintiff or caused plaintiff to be touched with the intent to harm or offend MJL by Ms. Mills forcefully trying to rip off the surgical mask off MJL's face and the mask snaping against MJL's face and JIM Doe holding MJL handcuffed against his will by the bed of Minor B to intimidate and terrorize MJL;

430.     MJL did not consent to the touching;

431.     MJL was harmed and offended by defendants' conduct; and

432.     That a reasonable person in MJL's situation would have been offended by the touching.

433.    Defendants were not privileged or had immunity to touch MJL as they were in the course of executing an illegal, unconstitutional, excessively forceful search and seizure raid of MJL's home and of MJL's person.

434.    As a direct and proximate result, Plaintiffs were harmed and Defendants' conduct was a substantial factor in Plaintiffs' harm.

435.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff suffered and will continue to suffer a substantial and ongoing physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress, and/ or medical expenses and/or other incidental expenses. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

436.    The conduct of defendants as alleged herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights and for the deleterious consequences of defendants' actions. Defendants acted maliciously, with intent to cause harm to Plaintiffs. Defendants acted oppressively, in that their conduct was despicable, and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of their rights. The conduct of defendants, and/or their agents/employees, as alleged herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights and for the deleterious consequences of Defendants' actions. In particular, by lying about the true reasons for that illegal action, Defendants acted oppressively and with malice, as those terms are used in *California Civil Code* §3294. Defendants and each of them, and their agents/employees or supervisors, employers, authorized, condoned and ratified the unlawful conduct of each other. Consequently, Plaintiffs are entitled to punitive damages against each of said defendants, pursuant to *California Civil Code* §3294.

## CLAIM XII: ABUSE OF PROCESS

### (By MJL/MJL APC against Brian S. Kabateck, Anastasia Mazzella; Kabateck LLP, DOES 3-300)

437.    Plaintiffs reallege and incorporate by reference each allegation of all preceding

paragraphs as if set forth herein verbatim.

438.    Plaintiffs herein allege that defendants, and each of them separately or in conspiracy and collusion with others, wrongfully took depositions of MJL commencing on October 23, 2020, and, thereafter, to intentionally use these legal proceeding to illegitimately and with an improper motive, intimidated, humiliate, and harass, pressure, oppress MJL, with the aid of his undenied friend Judge Berle, to assert the 5th Amendment to enable Kabateck to propagate the false narrative in the public domain that MJL must be a criminal had he asserted the 5th.

439.    Also, Defendants invited a journalist from the Daily Journal as part of their plan to intimidate MJL to coerce Plaintiffs to forego, abandon their claim to additional attorney fees under the Jones settlement and Final Judgment, or to otherwise illegitimately deprive plaintiffs of their claims.

440.    As a direct and proximate result, Plaintiffs were harmed and Defendants' conduct was a substantial factor in Plaintiffs' harm.

441.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff suffered and will continue to suffer a substantial and ongoing physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress, and medical expenses and/or other incidental expenses. Plaintiff is, thereby, entitled to general and compensatory damages in amounts to be proven at trial.

442.    The conduct of defendants as alleged herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights and for the deleterious consequences of defendants' actions. Defendants acted maliciously, with intent to cause harm to Plaintiffs. Defendants acted oppressively, in that their conduct was despicable, and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of their rights. The conduct of defendants, and/or their agents/employees, as alleged herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights and for the deleterious consequences of Defendants' actions. In particular, by lying about the true reasons for that illegal action, Defendants acted oppressively and with malice, as those

terms are used in *California Civil Code* §3294 Defendants and each of them, and their agents/employees or supervisors, employers, authorized, condoned and ratified the unlawful conduct of each other Consequently, Plaintiffs are entitled to punitive damages against each of said defendants, pursuant to *California Civil Code* §3294.

## PRAYER FOR RELIEF

443.    The conduct previously alleged, unless and until enjoined by order of this Court, will cause great and irreparable injury to Plaintiffs.  Further, a judicial declaration is necessary and appropriate at this time so that all parties may known their respective rights and act accordingly.

WHEREFORE, Plaintiff respectfully request that this Court:

A.  Certify this case as a class action under Federal Rule of Civil Procedure 23(b)(2) on behalf of all US Citizens whose cameras, home or office based surveillance equipment were damaged, destroyed, disconnected or otherwise rendered inoperable during execution of a search warrants;

B.  Designate Plaintiff Barbara Libman as Class Representative for the proposed class;

C.  Designate Plaintiff's counsel of record as Class Counsel for the proposed class;

D.  Issue a class-wide declaratory judgment declaring that:

a.  With respect to the proposed class, government disconnecting, disabling, damaging, destroying or otherwise rendering inoperable any home or office-based security cameras or surveillance equipment in the course of executing a search warrant violates the Fourth Amendment;

b.  With respect to the proposed class, government destruction of home or office-based security cameras or surveillance equipment in the course of executing a search warrant, without just compensations, constitutes a taking for public use in violation of Fifth Amendment;

E.  Issue a class-wide permanent injunction enjoining the government from destroying, disconnecting, disabling, damaging or rendering inoperative home or office-based security cameras or surveillance equipment in the course of executing search

warrants.

F.   Order the government to immediately return the seized property of Plaintiffs, without conditions, delay or investigation under—Rule of Civil Procedure 41(g) and the Court inherent equitable authority;

444.   A declaration that Defendants' actions, described herein, violate the Fourth and Fourteenth Amendments to the United States Constitution;

445.   Declaration of rights that MJL/MJL APC are entitled to claim and be paid 29% of all monies recovered for the *Jones* class post Final Judgment, estimated at this time to be $11,020,000.00;

446.   An order enjoining all Defendants and their employees, agents, and any and all persons acting in concert with them from further violation of Plaintiffs' civil rights under the United States Constitution;

447.   An order and judgment awarding special, general and compensatory damages in the amount of $360,000,000.00;

448.   An order awarding punitive damage, where appropriate, according to proof;

449.   An order awarding Plaintiffs' reasonable attorneys' fees, litigation expenses and costs pursuant to 42 U.S.C. §1988 and any other applicable law;

450.   An order awarding such other and further relief as the court deems just and Proper.

Respectfully Submitted

Dated: December 6, 2021          LAW OFFICE OF MICHAEL J. LIBMAN, APC.

*Michael J. Libman* [E-Signature]

By:_____.

MICHAEL J. LIBMAN
Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

43. Plaintiffs hereby demand a jury trial.

Respectfully Submitted

Dated: December 6, 2021          LAW OFFICE OF MICHAEL J. LIBMAN, APC.

*Michael J. Libman* [E-Signature]

By:_____.

MICHAEL J. LIBMAN
Attorney for Plaintiffs

# EXHIBIT "1"



06-30-2020 04:59:56 AM

Front Door



06-30-2020 05:00:10 AM

Front Gate



169

# EXHIBIT "2"



# EXHIBIT "3"



Front Gate

# EXHIBIT "4"

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*

Jack Landskroner
Landskroner Grieco Merriman LLC
1360 West 9th Street
Cleveland, OH  44113
TELEPHONE NO.: 216-522-9000   FAX NO. *(Optional)*: 216-522-9007
E-MAIL ADDRESS *(Optional)*: jack@lgmlegal.com
ATTORNEY FOR *(Name)*: Antwon Jones

**FOR COURT USE ONLY**

60903262
Jul 26 2017
03:40PM
E-SERVICE
File & ServeXpress

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 600 South Commonwealth Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA  90005
BRANCH NAME:

PLAINTIFF/PETITIONER: Antwon Jones
DEFENDANT/RESPONDENT: City of Los Angeles

| **NOTICE OF ENTRY OF JUDGMENT OR ORDER** | **CASE NUMBER:** BC577267 |
|---|---|

*(Check one):*  [✓] **UNLIMITED CASE**
(Amount demanded exceeded $25,000)

[ ] **LIMITED CASE**
(Amount demanded was $25,000 or less)

**TO ALL PARTIES :**

1. A judgment, decree, or order was entered in this action on *(date)*: July 20, 2017

2. A copy of the judgment, decree, or order is attached to this notice.

Date: July 26, 2017

Jack Landskroner
_____
(TYPE OR PRINT NAME OF   [✓] ATTORNEY   [ ] PARTY WITHOUT ATTORNEY)

▶

_____
(SIGNATURE)

Form Approved for Optional Use
Judicial Council of California
CIV-130 [New January 1, 2010]

**NOTICE OF ENTRY OF JUDGMENT OR ORDER**

www.courtinfo.ca.gov

## ELECTRONIC PROOF OF SERVICE

**STATE OF OHIO, COUNTY OF CUYAHOGA**

I am a paralegal with Landskroner Grieco Merriman, LLC in the County of Cuyahoga, State of Ohio. I am over the age of 18 and not a party to the within action. My business address is 1360 West 9th Street, Suite 200, Cleveland, OH 44113.

On July 26, 2017, I served the foregoing document(s) described as **NOTICE OF ENTRY OF JUDGMENT OR ORDER** on the interested parties in this action as follows:

**BY ELECTRONIC SERVICE VIA FILE & SERVEXPRESS**: In accordance with the Court's Order Authorizing Electronic Service governing Case No. BC577267 and related matters requiring all documents to be served upon interested parties via the File & ServeXpress Service system.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 26, 2017 at Cleveland, Ohio.

_____
Deborah Kessel

ORIGINAL

RECEIVED

JUL 1 4 2017

Dept. 323

**FILED**
Superior Court of California
County of Los Angeles

JUL 2 0 2017

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
Kelly Jameson

1
2
3
4
5
6
7
8
9
10

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

BY FAX

| | |
|---|---|
| ANTWON JONES, on behalf of himself, and all other similarly situated, | Case No. BC577267 [Related to Case Nos. BC565618 (Lead), BC568722, BC571664, and BC574690] |
| Plaintiff, | [CLASS ACTION] |
| vs. | [~~PROPOSED~~] **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT** |
| CITY OF LOS ANGELES, by and through the LOS ANGELES DEPARTMENT OF WATER AND POWER, and DOES 1 through 50, inclusive, | Judge:    Hon. Elihu M. Berle |
| Defendants. | Date:     July 7, 2017 |
| | Time:     9:00 a.m. |
| | Dept.:    323 |
| | Assigned for All Purposes to the Hon. Elihu M. Berle, Dept. 323 |
| | Action Filed:    April 1, 2015 |
| | Trial Date:    None Set |

11
12
13
14
15
16
17
18
19
20
21
22
23
24

WHEREAS, plaintiff Antwon Jones ("Plaintiff"), on behalf of himself and the putative

class in this case, as well as the putative classes in the consolidated actions, *Kimhi v. The City of*

*Los Angeles*, Case No. BC536272; *Bransford v. City of Los Angeles*, Case No. BC565618; and

*Fontaine v. City of Los Angeles*, Case No. ~~BC577267~~ BC571664 (collectively, the "Actions"), moved this

25
26
27
28

1    Court for an Order, pursuant to Section 382 of the California Code of Civil Procedure ("Section

2    382") and California Civil Code § 1781 ("Section 1781"), seeking final approval of a class action

3    settlement and entry of final judgment (the "Motion"); and

4           WHEREAS, defendant the City of Los Angeles, by and through the Los Angeles

5    Department of Power and Water ("LADWP") and DOES 1 through 50, inclusive (collectively,

6

7    "Defendant") joins Plaintiff in seeking this same relief; and

8           WHEREAS, the Court reviewed the submissions of the parties, all properly and timely

9    filed objections to the Settlement, and the Parties' responses to such objections, and held a Final

10   Approval Hearing on July 7, 2017 (the "Final Approval Hearing"), and good cause appearing;

11          IT IS ORDERED that the Motion is GRANTED, subject to the following terms and

12   conditions:

13          1.      With respect to the capitalized terms set forth herein, the Court, for purposes of this

14   Final Judgment and Order ("Final Order"), adopts the definitions set forth in the Revised Class

15   Action Settlement Agreement and Limited Release dated November 9, 2016 (the "Settlement

16

17   Agreement").

18          2.      This Court has continuing and exclusive jurisdiction over the Settlement and all

19   Parties hereto for the purpose of construing, enforcing and administering the Settlement

20   Agreement.

21

22          3.      The Court finally certifies, for settlement purposes only, the following Settlement

23   Class:

24          All LADWP customers who were over-charged for electric, water,
            sewage or sanitation services between the dates of September 3,
25          2013 and December 30, 2016, and who are entitled to credits or
            refunds for electric, water, sewage or sanitation services and/or for
26          participation in the LADWP's solar incentive program between
            February 13, 2010 and December 30, 2016.
27

28

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL
JUDGMENT

Expressly excluded from the Settlement Class are the Judge to whom this case is assigned, any members of the Judge's immediate family, and counsel of record in this action.

4.     With respect to the Settlement Class, this Court finds that: (a) the members of the Settlement Class are so numerous their joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Plaintiff are typical of the claims of the Settlement Class; (d) Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of the Settlement Class in individually controlling the prosecution of the separate Actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by the Settlement Class, (iii) the desirability or undesirability of concentrating the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of the Action.

5.     Class Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order.  Such notice satisfied the requirements of California Code of Civil Procedure § 382 and California Civil Code § 1781 and Rule 3.766 of the California Rules of Court and: (a) provided the best practicable notice, (b) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement Agreement, and of their right to appear or object to or exclude themselves from the Settlement Class, (c) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice, and (d) fully complied with the applicable laws of the State of California.  Accordingly, the Court determines that all members of the Settlement Class *WHO HAVE NOT OPTED OUT* are bound by this Final Order and by the final judgment to be entered pursuant thereto.

3

[~~PROPOSED~~] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT

1    6.    June 5, 2017 was the deadline for Settlement Class Members to submit a request for

2  exclusion, an objection, or (for all Settlement Class Members with the exception of Field Work

3  Sub-Class Members) a claim form.  As of June 26, 2017, KCC received:  (a) 646 timely requests

4  for exclusion and 4 untimely requests for exclusion; and (b) 32,047 timely claims and 211

5  untimely claims.  The Court orders that the 4 untimely requests for exclusion be deemed timely.

6  Attached as Exhibit A hereto is a list of the 650 requests for exclusion.  The Court also orders that

7  the 211 untimely claims be deemed timely.

8

9    7.    The objections filed by Mr. Steven Brennan, Mr. Stan Furmanski, Ms. Catalina

10 Lopez, Ms. Carol Sidlow, Ms. Cynthia Maxwell and Mr. Marc Wutschke are overruled in their

11 entirety.

12   8.    The Settlement Agreement was arrived at after extensive arm's length negotiations

13 conducted in good faith by counsel for the parties, and is supported by the majority of the

14 members of the Settlement Class.  Accordingly, this Court hereby approves the Settlement

15 Agreement as fair, reasonable and adequate in light of the complexity, expense and duration of the

16 litigation, and the risks inherent and involved in establishing liability and damages, and in

17 maintaining the class action as to liability issues through trial and appeal.

18   9.    The promises and commitments of the Parties under the terms of the Settlement

19 Agreement constitute fair value given in exchange for the releases of the Released Claims.  For all

20 claims other than solar, this release is effective for claims which have accrued during the period of

21 September 3, 2013 to December 30, 2016.  For solar claims arising out of the solar incentive

22 program and/or credit for excess energy, this release is effective for claims accruing during the

23 period from February 13, 2010 to December 30, 2016.  The following claims are therefore

24 released against Defendant:

25   any and all claims, damages, suits, demands, liabilities, judgments, losses and
   causes of action which have accrued as of the date of entry of the Order of

4

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL
JUDGMENT

Preliminary Approval relating to or arising from the billing issues alleged in the operative pleadings in the Actions, including:

(i)     overbilling as a result of charging an incorrect rate, incorrect amount of consumption, incorrect utility tax rate or the failing to apply a discount;

(ii)    billing incorrect fees, including but not limited to late payment fees, reconnect fees and/or start service fees;

(iii)   retaining refunds during the period of September 3, 2013 to December 30, 2016 that were due;

(iv)    billing for greater quantities of water, power or sewage than otherwise would have been charged but for the existence of a premise condition;

(v)     the assessment of overdraft fees resulting from the LADWP having charged customers an incorrect billing amount; and

(vi)    for solar customers, delay in providing a reservation confirmation to and/or connecting the solar system, and/or failure to bill for energy consumed and/or generated; and/or failure to credit for excess energy generated by the customer's solar power system at any time from February 13, 2010, through December 30, 2016

sounding in law or equity, seeking damages or any other relief, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, based upon any federal or state statutory or common law including but not limited to, claims sounding in tort, contract and the consumer protection laws of the United States or of any state or other jurisdiction within the United States, and all claims, damages, suits, demands, liabilities, judgments, losses or causes of action which have been, might have been, are now, or could be asserted by any plaintiff or any Settlement Class Member arising out of, based upon, or related to, in whole or in part, the facts and circumstances underlying the claims and causes of action set forth in the Actions.

Released Claims include claims, accrued during the time periods set forth above, for economic and non-economic damages that were proximately caused by the LADWP having overbilled its customers during the time periods set forth in the operative Complaint in the *Jones Action*. These economic and non-economic damages may be direct, incidental, or consequential and, by way of example, include: repair costs; services costs (e.g., the cost of a plumber or electrician to examine or repair a premise condition); finance, interest, or overdraft charges imposed by a third party; costs related to or arising from erroneous disconnections; reconnection fees; loss of perishable items; damage to personal property; or loss of wages or business income. All such losses and damages are expressly deemed Eligible Claims pursuant to this Revised Agreement and a Settlement Class Member is entitled to seek recovery of 100% of such losses and damages through the Omnibus claims process.

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT

Released Claims also include claims for economic and non-economic damages that resulted in overbilling customers and were proximately caused by the LADWP's failure to: (i) timely undertake field investigations, conduct field maintenance, perform meter reads, or provide accurate information concerning actual utilization; (ii) prorate or allot utilization in accordance with applicable rate schedules; and (iii) comply with disconnection rules and the imposition of associated charges. All such losses and damage are expressly deemed Eligible Claims pursuant to this Revised Agreement and a Settlement Class Member is entitled to seek recovery of 100% of such losses and damages through the Omnibus claims process.

Released Claims do not include:

(i) the claims asserted in the action, *Morski v. City of Los Angeles by, and through, the Los Angeles Department of Water & Power*, Los Angeles Superior Court Case No BC568722 (the "*Morski* Action"), which allege that the LADWP violated Ordinance Nos. 180127, 182273, and 170435 (as amended by Ordinance No. 171639, Ordinance No. 173017, Ordinance No. 175964, Ordinance No. 177968 and Ordinance No. 179802) by assessing tiered billing without obtaining actual monthly meter reads and without providing regular, timely, and accurate monthly bills to its customers ("Non-Monthly Tiered Billing Claims"). This released claims exclusion also includes within its scope the assessment of tiered billing without obtaining actual monthly meter reads and without providing regular, timely, and accurate monthly bills to its customers pursuant to Ordinance Nos. 184133 and 184130;

(ii) Causes of Action 27-32 in the Third Amended Complaint filed on November 10, 2016 in the action entitled *Macias v. City of Los Angeles erroneously sued as Los Angeles Department of Water and Power, et al.*, Los Angeles Superior Court Case No. BC594049 (the "*Macias* Action");

(iii) claims for violations of California's Bane Act, Civil Code § 51.2;

(iv) claims arising out of field work investigations created after December 21, 2015;

(v) claims arising out of LADWP's failure to record or credit payments made by customers;

(vi) claims arising from the Back-Billing of customers during the period September 3, 2013 through September 10, 2015; and

(vii) claims for personal injury.

9. All members of the Settlement Class who did not make a valid request for exclusion from the Settlement Class in the time and manner provided in the Settlement Agreement are barred, permanently enjoined, and restrained from commencing or prosecuting

1   any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against

2   Defendant and/or the Released Parties based upon, relating to, or arising out of, any of the

3   Released Claims.  However, all members of the Settlement Class who did make a valid request

4   for exclusion from the Settlement Class in the time and manner provided in the Settlement

5   Agreement (as set forth in Exhibit A hereto) are not barred, permanently enjoined, or restrained

6   from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any

7   jurisdiction or court against Defendant and/or the Released Parties based upon, relating to, or

8   arising out of, any of the Released Claims.

9

10       10.   By operation of this Final Order and upon the occurrence of the Effective Date,

11   Defendant and/or the Released Parties shall be deemed to have, and by operation of this Final

12   Order shall have, fully, finally, and forever released, relinquished and discharged each and all

13   members of the Settlement Class, Plaintiff and Class Counsel from all claims (including unknown

14   claims), arising out of, relating to, or in connection with the institution, prosecution, assertion,

15   settlement or resolution of this litigation or the Released Claims.

16       11.   For good cause shown, and after review of the declarations of Plaintiffs Jones,

17   *SHARON BRANSFORD, STEVEN SHRAGER, HAYLEY FONTAINE, RACHEL*

18   Kimhi, Beckerman Megerdichian, and Novak submitted as evidence in connection with Plaintiff's *TASH*

19   Motion for Final Approval, the Court awards a service award to Plaintiffs Jones, Kimhi,

20   *BRANSFORD SHRAGER, FONTAINE, TASH*

21   Beckerman Megerdichian, and Novak, in the amount of $5,000 each for the time and expenses

22   expended in connection with the prosecution of the Action, which shall be paid by Defendant.

23   ~~The Court has reviewed the separate service award request submitted by counsel in the *Bransford*~~

24   ~~and *Fontaine* cases, seeking service awards of $5,000 each for Plaintiffs Sharon Bransford, Steven~~

25   ~~Shrager, Rachel Tash and Hayley Fontaine ("*Bransford* and *Fontaine* Plaintiffs"). Counsel in the~~

26   ~~*Bransford* and *Fontaine* cases are ordered to submit declarations from each of the *Bransford* and~~

27   ~~*Fontaine* Plaintiffs to support the requested awards by no later than Friday, July 14, 2017.~~

28

7

[~~PROPOSED~~] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL
JUDGMENT

12.  For good cause shown, the Court awards Class Counsel: (i) reasonable attorneys' fees in the total amount of $19,000,000 ($15,200,000 to Plaintiffs' counsel in the *Jones*, *Kimhi*, and *Morski* cases, and $3,800,000 to Plaintiffs' counsel in the *Bransford* and *Fontaine* cases); and (ii) expenses in the amount of $2,741,003.99 ($2,500,000 for reimbursement of expenses which have and will be incurred by the CC&B System Monitoring Expert, $212,035.28 for reimbursement of expenses incurred by Plaintiffs' counsel in the *Jones*, *Kimhi*, and *Morski* cases, and $28,968.71 for reimbursement of expenses incurred by Plaintiffs' counsel in the *Bransford* and *Fontaine* cases).  The attorneys' fees and reimbursement of expenses awarded by the Court shall be paid by Defendant within 7 business days after this Order has been entered.  Defendant will pay the amount awarded by the Court directly to an account established by Class Counsel. Class Counsel shall be responsible for allocating the attorneys' fees and expenses among Plaintiffs' counsel.

13.  For good cause shown, the Court approves the right of Class and Liaison Counsel to make quarterly applications to this Court for additional awards of reasonable attorneys' fees at the rate of twenty-nine percent (29%) of all future recoveries by Class Members subsequent to Final Approval for: (i) Field Work claims; (ii) Pre-Identified Claims Made claims; (iii) Omnibus claims; and (iv) all claims paid in connection with the Settlement by, or on behalf of, the City of Los Angeles, including all departments thereof.  The $1 million of future attorneys' fees identified in the Memorandum of Understanding executed on June 12, 2015 shall be utilized to pay any such future attorneys' fees awarded to Class Counsel by the Court and shall not be in addition to any future attorneys' fees awarded by the Court, as set forth in the Settlement Agreement. Should the Court award such future attorneys' fees to Class Counsel, Defendant will pay the amount of attorneys' fees awarded by the Court within 7 business days after the Court issues an order granting Class Counsel's application.  Defendant will pay the amount awarded by the Court

8

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT

directly to an account established by Class Counsel and Liaison Counsel, and Class Counsel shall be responsible for allocating any future attorneys' fees.

14.     The Settlement Agreement shall not be offered or be admissible in evidence by or against Defendant or cited or referred to in any other action or proceeding, except: (1) in any action or proceeding brought by or against the Parties to enforce or otherwise implement the terms of the Settlement Agreement, or (2) in any action involving Plaintiff, members of the Settlement Class, or any of them, to support a defense of res judicata, collateral estoppel, release, or other theory of claim preclusion, issue preclusion, or similar defense.

15.     If, for any reason, the Effective Date does not occur, this Final Judgment shall be deemed vacated and shall have no force or effect whatsoever.

16.     Without affecting the finality of this Judgment in any way, the Court hereby retains continuing jurisdiction over: (a) the implementation of this Settlement and any award or distribution to the Settlement Class members; (b) hearing and determining an application for attorneys' fees and costs and (c) all parties for the purpose of enforcing and administering the Settlement Agreement pursuant to California Code of Civil Procedure § 664.6 or otherwise.

17.     The Clerk is directed to enter this Final Order forthwith.

DATED: July 20 , 2017        SO ORDERED:

Hon. Elihu M. Berle

9
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT

**EXHIBIT A**

# EXHIBIT A

City of Los Angeles (Jones) Claims
Opt Outs

| ClaimID | FirstName | LastName | OptOut |
|---|---|---|---|
| JCLA1-1006184040 | LORENA P | RODRIGUEZ | 3/31/2017 |
| JCLA1-1007603852 | | PSW HAY LLC | 3/31/2017 |
| JCLA1-1017606242 | GERMAN | MORAN | 3/31/2017 |
| JCLA1-1022262475 | ALBERT W | FELDMAN | 3/31/2017 |
| JCLA1-1000144194 | ANTHA Y | ABRAHAM | 4/3/2017 |
| JCLA1-1001273974 | CHOON JA | SEO | 4/3/2017 |
| JCLA1-1001364058 | JEAN | HASSELQUIST | 4/3/2017 |
| JCLA1-1001572726 | MARIUS V | ILIESCU | 4/3/2017 |
| JCLA1-1004832044 | RITA | SHELDON | 4/3/2017 |
| JCLA1-1004935897 | MELVIN JOEL | ALVARADO | 4/3/2017 |
| JCLA1-1006065849 | SUNG M | LEE | 4/3/2017 |
| JCLA1-1006915915 | BIENVENIDO TESTA | CRUZ | 4/3/2017 |
| JCLA1-1007015772 | EDNA E | SAGE | 4/3/2017 |
| JCLA1-1007137894 | SAMUEL | OBADIA | 4/3/2017 |
| JCLA1-1009140540 | IRENE | GOLDBERG | 4/3/2017 |
| JCLA1-1009579649 | ANTONIO | PONTIS | 4/3/2017 |
| JCLA1-1010158864 | ANN | SCOTTO | 4/3/2017 |
| JCLA1-1010330624 | AZAD HOUSHANG | PISHVA | 4/3/2017 |
| JCLA1-1010854534 | DOMINIC | HOOD | 4/3/2017 |
| JCLA1-1011024144 | BORIS | SHTERN | 4/3/2017 |
| JCLA1-1011138824 | GHEORGHE | NICOLAE | 4/3/2017 |
| JCLA1-1011227339 | CHANDRA | BOND | 4/3/2017 |
| JCLA1-1011565102 | PAULA | ORSA | 4/3/2017 |
| JCLA1-1012563944 | DIANE | EDINGTON | 4/3/2017 |
| JCLA1-1014987172 | | PINZON MANAGEMENT INC. | 4/3/2017 |
| JCLA1-1015098754 | JEANNE | GOEN | 4/3/2017 |
| JCLA1-1015230768 | HOUSHANG | RAHBAN | 4/3/2017 |
| JCLA1-1016787928 | FLORENCE M | MC CAIN | 4/3/2017 |
| JCLA1-1016818866 | CHUN H | COLTHARP | 4/3/2017 |
| JCLA1-1018281681 | | 13015 WASHINGTON ACQUISITION V | 4/3/2017 |
| JCLA1-1018701648 | AMY S | COHEN | 4/3/2017 |
| JCLA1-1020117800 | HAYK | KHUDOYAN | 4/3/2017 |
| JCLA1-1020995742 | ELIZABETH A | BROWN | 4/3/2017 |
| JCLA1-1022374036 | JUNE | MARTIN | 4/3/2017 |
| JCLA1-1022380524 | R | FARELLO | 4/3/2017 |
| JCLA1-1022456016 | SMITH | TAKAYA | 4/3/2017 |
| JCLA1-1001488245 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1001725514 | BERYLE | NATHAN | 4/4/2017 |
| JCLA1-1002455901 | JEONG RAN | NA | 4/4/2017 |
| JCLA1-1003500714 | ANDREAS | KRAINER | 4/4/2017 |
| JCLA1-1003633870 | LOLA P | LA COMBE | 4/4/2017 |
| JCLA1-1003811299 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1004149760 | JOSEPHINE | GONZALEZ | 4/4/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1004350562 | JOHN | TREVINO | 4/4/2017 |
| JCLA1-1005501904 | BRUCE L | BECKER | 4/4/2017 |
| JCLA1-1005523975 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1006088016 | ARTHUR | CRAIG | 4/4/2017 |
| JCLA1-1006178228 | GLORIA | DONIS | 4/4/2017 |
| JCLA1-1007987243 | ANTON | MAYR | 4/4/2017 |
| JCLA1-1008638803 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1010339621 | CARLOS A | GONZALEZ | 4/4/2017 |
| JCLA1-1010976443 | PETER | FAIRBROTHER | 4/4/2017 |
| JCLA1-1011246988 | TERESA | RUIZ | 4/4/2017 |
| JCLA1-1011563568 | MANJU K | SHUKLA | 4/4/2017 |
| JCLA1-1012871703 | NANCY | REED | 4/4/2017 |
| JCLA1-1014842905 | EFIM | RUDIN | 4/4/2017 |
| JCLA1-1015371892 | STEVE | LOCKWOOD | 4/4/2017 |
| JCLA1-1015511236 | JERRY | LOCKENOUR | 4/4/2017 |
| JCLA1-1015761372 | SANDRA | GERSTON | 4/4/2017 |
| JCLA1-1016704682 | JENNIFER | IMAMURA | 4/4/2017 |
| JCLA1-1018810315 | JOHN J | ADAME | 4/4/2017 |
| JCLA1-1018930736 | JENNIFER | IMAMURA | 4/4/2017 |
| JCLA1-1019245859 | MARTHA | CASTRO | 4/4/2017 |
| JCLA1-1021324485 | YONG JONG | KIM | 4/4/2017 |
| JCLA1-1021331180 | NANDI | MORGAN | 4/4/2017 |
| JCLA1-1021429538 | F S | GARCIA | 4/4/2017 |
| JCLA1-1021598712 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1022395785 | J B | GILL | 4/4/2017 |
| JCLA1-1023144514 | ANTONIO | HERNANDEZ | 4/4/2017 |
| JCLA1-1000748570 | SON AE | YI | 4/5/2017 |
| JCLA1-1001075935 | IVY M | LYEW | 4/5/2017 |
| JCLA1-1002853478 | BERT | KALMAN | 4/5/2017 |
| JCLA1-1002890217 | K | MORI | 4/5/2017 |
| JCLA1-1003034900 | FRED | KAJIWARA | 4/5/2017 |
| JCLA1-1003483810 | SONG HA | CHOE | 4/5/2017 |
| JCLA1-1003625029 | VIRGINIA | GUERRERO | 4/5/2017 |
| JCLA1-1004325517 | EVELYN | MARKLEY | 4/5/2017 |
| JCLA1-1005242631 | ALINE C | KONBLETT | 4/5/2017 |
| JCLA1-1005832986 | NAHUM | GARCIA | 4/5/2017 |
| JCLA1-1006378839 | QUI | LI | 4/5/2017 |
| JCLA1-1006616730 | WILLIAM | KIM | 4/5/2017 |
| JCLA1-1007304600 | DEBORAH J | POTTER | 4/5/2017 |
| JCLA1-1007905107 | AZAD | PISHVA | 4/5/2017 |
| JCLA1-1008712655 | DIANA | KOTZIN | 4/5/2017 |
| JCLA1-1009711920 | SUSAN | DINOS | 4/5/2017 |
| JCLA1-1010032399 | FIANA | YERMUS | 4/5/2017 |
| JCLA1-1010656503 | YALE | HUANG | 4/5/2017 |
| JCLA1-1011557126 | MICHAEL | SOPHIE | 4/5/2017 |
| JCLA1-1011983303 | BENJAMIN | FEHRES | 4/5/2017 |
| JCLA1-1012158497 | FIANA | YERMUS | 4/5/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1012441300 | SHARON A | SAMPLES | 4/5/2017 |
| JCLA1-1012468348 | YUN CHEUNG | TANG | 4/5/2017 |
| JCLA1-1013402693 | KARLA | SEVERSON | 4/5/2017 |
| JCLA1-1013695674 | FRANCISCO | BOLIO | 4/5/2017 |
| JCLA1-1014212103 | DIANE L | SIMPSON | 4/5/2017 |
| JCLA1-1014512638 | MICHELLE | YERMUS | 4/5/2017 |
| JCLA1-1014584531 | CHARLES A | ZAHKA | 4/5/2017 |
| JCLA1-1015262392 | | NEXDON,LLC | 4/5/2017 |
| JCLA1-1015528406 | FIANA | YERMUS | 4/5/2017 |
| JCLA1-1015546986 | CHERYL | WLODINGER | 4/5/2017 |
| JCLA1-1017963282 | WANDA | LA FLEUR | 4/5/2017 |
| JCLA1-1018284303 | KATHERINE | HARTMAN | 4/5/2017 |
| JCLA1-1018448012 | LISA T | WONG | 4/5/2017 |
| JCLA1-1018599983 | DAVID | STADE | 4/5/2017 |
| JCLA1-1019315873 | EDUARDO D | MALDONADO | 4/5/2017 |
| JCLA1-1021263354 | ERNESTO | MEJIA PENA | 4/5/2017 |
| JCLA1-1022619292 | ILL SUNG | LEE | 4/5/2017 |
| JCLA1-1001298004 | KUN ZHEN | YE | 4/6/2017 |
| JCLA1-1002069343 | YOUNG SUP | LIM | 4/6/2017 |
| JCLA1-1003577679 | JUN JIE | JU | 4/6/2017 |
| JCLA1-1004044593 | CHUN Y | YI | 4/6/2017 |
| JCLA1-1004284349 | JOANNA | KU | 4/6/2017 |
| JCLA1-1004365098 | MARGOT ESPERANZA | FERNANDEZ | 4/6/2017 |
| JCLA1-1005039038 | ROBERT G | BADAL | 4/6/2017 |
| JCLA1-1005070547 | LAWRENCE I | KITTIVER | 4/6/2017 |
| JCLA1-1005234752 | JILL | KING | 4/6/2017 |
| JCLA1-1005447667 | MARLENE | LOVINGS | 4/6/2017 |
| JCLA1-1005460787 | GONZALO M | LARENAS | 4/6/2017 |
| JCLA1-1005550670 | FRANCES | HERMAN | 4/6/2017 |
| JCLA1-1005596417 | FREDERICK | KURI | 4/6/2017 |
| JCLA1-1005762260 | KEVORK | ANDONIAN | 4/6/2017 |
| JCLA1-1006945300 | SHIN G | YOON | 4/6/2017 |
| JCLA1-1007361263 | MARIO | SALINAS | 4/6/2017 |
| JCLA1-1008087629 | BENNY | JACKS | 4/6/2017 |
| JCLA1-1008233536 | YOUNG SUK | KIM | 4/6/2017 |
| JCLA1-1008329169 | BARBARA | BITAR | 4/6/2017 |
| JCLA1-1008482153 | JEFFREY | HERSHEY | 4/6/2017 |
| JCLA1-1008515000 | DORIS | KLEGA | 4/6/2017 |
| JCLA1-1008964956 | NAE YUN | PAK | 4/6/2017 |
| JCLA1-1013049667 | SIU YING | WONG | 4/6/2017 |
| JCLA1-1013279476 | JOSE | ALVAREZ | 4/6/2017 |
| JCLA1-1013476859 | ROSLIN L | LEWIS | 4/6/2017 |
| JCLA1-1014401550 | JONG HO | KIM | 4/6/2017 |
| JCLA1-1016316500 | KYE S | KANG | 4/6/2017 |
| JCLA1-1017447357 | JUNE L | ROACH | 4/6/2017 |
| JCLA1-1018087320 | MARIA C | DE LA ROSA | 4/6/2017 |
| JCLA1-1018607099 | BETH | BLACK | 4/6/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1018773355 | LYNNE | MOUNIER | 4/6/2017 |
| JCLA1-1019234431 | FILOMENA | MARALIT | 4/6/2017 |
| JCLA1-1020125063 | J RICHARD | CHAMBERLAIN | 4/6/2017 |
| JCLA1-1020135085 | CHRISTENE | DAGLAS | 4/6/2017 |
| JCLA1-1022151576 | THONGCHAI | WETSUWAN | 4/6/2017 |
| JCLA1-1022372882 | SALVADOR | GODOY | 4/6/2017 |
| JCLA1-1000362957 | HOLLY K | HUBBS | 4/7/2017 |
| JCLA1-1000821358 | LARRY D | SIGLER | 4/7/2017 |
| JCLA1-1000842312 | DOROTHY | REYNOLDS | 4/7/2017 |
| JCLA1-1003017568 | GEORGINA H | ALONSO | 4/7/2017 |
| JCLA1-1003362877 | ERIC | BERKLEY | 4/7/2017 |
| JCLA1-1004226667 | SUZANNE | TATUM | 4/7/2017 |
| JCLA1-1004637209 | HOWARD | ROSEN | 4/7/2017 |
| JCLA1-1005300801 | BESS | SERRANO | 4/7/2017 |
| JCLA1-1005928657 | WILLIAM | DIAZ | 4/7/2017 |
| JCLA1-1006961542 | ROSA | MELGAR | 4/7/2017 |
| JCLA1-1007617080 | ERIC | BERKLEY | 4/7/2017 |
| JCLA1-1007798998 | JEFF | GRAYSON | 4/7/2017 |
| JCLA1-1007824662 | JINGYI | CHEN | 4/7/2017 |
| JCLA1-1009245279 | PHILIP | GLASSBURN | 4/7/2017 |
| JCLA1-1009530739 | MEIRA | PEERY | 4/7/2017 |
| JCLA1-1010472011 | AMY L | LEVINE | 4/7/2017 |
| JCLA1-1011672227 | ANNETTE J | GLONEK | 4/7/2017 |
| JCLA1-1011894220 | ARTHUR R | PRESTON | 4/7/2017 |
| JCLA1-1012208877 | MARILYN M | WARREN | 4/7/2017 |
| JCLA1-1012344924 | LARRY D | SIGLER | 4/7/2017 |
| JCLA1-1012882330 | DELPHA M | INSKEEP | 4/7/2017 |
| JCLA1-1014334071 | DELORES | DIVINE | 4/7/2017 |
| JCLA1-1014520916 | SO YEUN | KIM | 4/7/2017 |
| JCLA1-1014697921 | HO | CHOI | 4/7/2017 |
| JCLA1-1016014147 | BOK YOL | CHO | 4/7/2017 |
| JCLA1-1016193149 | ROBERTO | MENDOZA ALVARADO | 4/7/2017 |
| JCLA1-1016472668 | GINGER LEE DIANE | TEMCHUK | 4/7/2017 |
| JCLA1-1017807981 | GEORGINA H | ALONSO | 4/7/2017 |
| JCLA1-1018693017 | SIGRID E | RAMOS | 4/7/2017 |
| JCLA1-1018786813 | MICHELE | PHILBIN | 4/7/2017 |
| JCLA1-1019448350 | YOUNGMEE | KANG | 4/7/2017 |
| JCLA1-1020617802 | GEORGINA H | ALONSO | 4/7/2017 |
| JCLA1-1020690518 | MICHAEL | CORRADINO | 4/7/2017 |
| JCLA1-1021324078 | JENNETTE | MEARS | 4/7/2017 |
| JCLA1-1021559881 | | PARDEE & FLEMING LANDSCAPE DES | 4/7/2017 |
| JCLA1-1000687970 | MARION L | ROSEN | 4/8/2017 |
| JCLA1-1002050650 | ROXANNE E | CLAY | 4/8/2017 |
| JCLA1-1003588891 | JEANIE | YANG | 4/8/2017 |
| JCLA1-1004742657 | ROBERT | ARROYO JR | 4/8/2017 |
| JCLA1-1005417296 | DANIELLE | SHAPIRA | 4/8/2017 |
| JCLA1-1005435618 | MARISHA | BAILEY | 4/8/2017 |

| JCLA1-1005651140 | TERESA | SAN PEDRO VIRAY | 4/8/2017 |
|---|---|---|---|
| JCLA1-1007569360 | MICHIRU | OMORI | 4/8/2017 |
| JCLA1-1007945737 | JACOB | HARLOW | 4/8/2017 |
| JCLA1-1008398128 | STARLYNN M | BURNETT | 4/8/2017 |
| JCLA1-1008993344 | AZAD HOUSHANG | PISHVA | 4/8/2017 |
| JCLA1-1009084933 | DONALD E | RENNER | 4/8/2017 |
| JCLA1-1009177770 | HOUSHANG AZAD | PISHVA | 4/8/2017 |
| JCLA1-1014318009 | | RED ROOM FILMS INC | 4/8/2017 |
| JCLA1-1014547601 | W T | MARPLE | 4/8/2017 |
| JCLA1-1018318194 | JOHN | COSTANZO | 4/8/2017 |
| JCLA1-1019463163 | GLORIA | MAULIT | 4/8/2017 |
| JCLA1-1006001166 | JAMES | COOPER | 4/9/2017 |
| JCLA1-1000596028 | A | FAGENSON | 4/10/2017 |
| JCLA1-1000739473 | ALYSSA | JACOBSEN | 4/10/2017 |
| JCLA1-1001481224 | EBERHARD | FRICKE | 4/10/2017 |
| JCLA1-1001543440 | LOYD J | HOPPER | 4/10/2017 |
| JCLA1-1002177685 | MARIA | CUELLAR | 4/10/2017 |
| JCLA1-1002241790 | FRANCISCO | GUERRERO MATA | 4/10/2017 |
| JCLA1-1002953332 | FAY | JEW | 4/10/2017 |
| JCLA1-1003047696 | CHIK | CHIKYARAPPA | 4/10/2017 |
| JCLA1-1003705685 | SAYAKA | ITO | 4/10/2017 |
| JCLA1-1005358869 | THEODORE A | GEIRINGER | 4/10/2017 |
| JCLA1-1006494588 | VICTORIA Y | FUJITA | 4/10/2017 |
| JCLA1-1007400498 | NOBUKO | HIGUCHI | 4/10/2017 |
| JCLA1-1007564458 | STEVE SABORU | KOBAYASHI | 4/10/2017 |
| JCLA1-1007797932 | RICK T | MECHTLY | 4/10/2017 |
| JCLA1-1008242942 | EBRAHIM | HAGHIGHAT | 4/10/2017 |
| JCLA1-1008532584 | JOON RAE | RHO | 4/10/2017 |
| JCLA1-1008736481 | ROBERT B | FENTON | 4/10/2017 |
| JCLA1-1008772577 | CARMELLA | CORNETT | 4/10/2017 |
| JCLA1-1008898147 | G W | GINN | 4/10/2017 |
| JCLA1-1009456083 | ROSA MIRIAM | AGUILAR | 4/10/2017 |
| JCLA1-1011464373 | DONALD | WOMACK | 4/10/2017 |
| JCLA1-1012316289 | J C | GASPAR | 4/10/2017 |
| JCLA1-1012353370 | PATRICIA A | KAATZ | 4/10/2017 |
| JCLA1-1012857670 | LOUISE | RUSSELL | 4/10/2017 |
| JCLA1-1012951375 | JOHN R | HOMES | 4/10/2017 |
| JCLA1-1013817281 | JOHN J | MURPHY III | 4/10/2017 |
| JCLA1-1014271665 | SHELIA | PURWIN | 4/10/2017 |
| JCLA1-1014446716 | PATRICIA | DENNEY | 4/10/2017 |
| JCLA1-1014776279 | VICTORIA Y | FUJITA | 4/10/2017 |
| JCLA1-1016656718 | BARBARA | RABENOWITZ | 4/10/2017 |
| JCLA1-1017833230 | PERRY | HEINITZ | 4/10/2017 |
| JCLA1-1018100695 | WILLIAM | SPEARS | 4/10/2017 |
| JCLA1-1018953574 | | OPTIMUS CONSTRUCTION | 4/10/2017 |
| JCLA1-1019515856 | TERRY | BOWYER | 4/10/2017 |
| JCLA1-1020024925 | VASILE | TERIS | 4/10/2017 |

| JCLA1-1021049387 | ROBERT B | FENTON | 4/10/2017 |
|---|---|---|---|
| JCLA1-1021347159 | MIGUEL A | CASIANO | 4/10/2017 |
| JCLA1-1021393509 | EBERHARD | FRICKE | 4/10/2017 |
| JCLA1-1000489515 | MARY | TOLEDO | 4/11/2017 |
| JCLA1-1000796779 | ZENAIDA | SABINO | 4/11/2017 |
| JCLA1-1002088402 | RICHARD | SANDIFER | 4/11/2017 |
| JCLA1-1002423848 | SVETLANA | HAKOPYAN | 4/11/2017 |
| JCLA1-1003359795 | H G | MC LENNAN | 4/11/2017 |
| JCLA1-1003649360 | CASPER | SAGOIAN | 4/11/2017 |
| JCLA1-1003991688 | HUGH G | MCLENNAN | 4/11/2017 |
| JCLA1-1004013710 | DAVID | LAFEVERS | 4/11/2017 |
| JCLA1-1004536127 | AL A | NIXON | 4/11/2017 |
| JCLA1-1005601860 | ELAINE | LIPSHIN | 4/11/2017 |
| JCLA1-1007782692 | CHARLES G | ARNOLD | 4/11/2017 |
| JCLA1-1008492582 | A A | NIXON | 4/11/2017 |
| JCLA1-1008752614 | MATTHEW | BUESE | 4/11/2017 |
| JCLA1-1009825984 | JORGE E | GRUNAVER | 4/11/2017 |
| JCLA1-1012363171 | ROBERT A | BERMAN | 4/11/2017 |
| JCLA1-1014471826 | H G | MC LENNAN | 4/11/2017 |
| JCLA1-1015297706 | ELEONORA E | NYREN | 4/11/2017 |
| JCLA1-1017744688 | ADRIANA | TRINGONE | 4/11/2017 |
| JCLA1-1020377232 | H G | MC LENNAN | 4/11/2017 |
| JCLA1-1020475412 | AL A | NIXON | 4/11/2017 |
| JCLA1-1020991992 | BERTHA | BARBA | 4/11/2017 |
| JCLA1-1022132792 | CLARA | DRYDEN | 4/11/2017 |
| JCLA1-1000516474 | MARIVICK S | SCHULZ | 4/12/2017 |
| JCLA1-1001097777 | JACINTO | AGUILA | 4/12/2017 |
| JCLA1-1001173678 | | OPTIMUS CONSTRUCTION, INC. | 4/12/2017 |
| JCLA1-1002345456 | ANDREA | JUCKNIESS KEMERER | 4/12/2017 |
| JCLA1-1002634113 | | OPTIMUS CONSTRUCTION | 4/12/2017 |
| JCLA1-1004333447 | MERCEDES | TECSON | 4/12/2017 |
| JCLA1-1004714726 | | OPTIMUS CONSTRUCTION, INC. | 4/12/2017 |
| JCLA1-1006055118 | BARBARA | DARCY | 4/12/2017 |
| JCLA1-1006137548 | | OPTIMUS CONSTRUCTION, INC. | 4/12/2017 |
| JCLA1-1007402075 | HELEN M | HEALY | 4/12/2017 |
| JCLA1-1009778986 | SICHEN | LI | 4/12/2017 |
| JCLA1-1014156068 | | OPTIMUS CONSTRUCTION, INC. | 4/12/2017 |
| JCLA1-1015029647 | MASATO | TAKAHASHI | 4/12/2017 |
| JCLA1-1015556515 | EDWARD | MAZIARZ | 4/12/2017 |
| JCLA1-1019640960 | | OPTIMUS CONSTRUCTION INC | 4/12/2017 |
| JCLA1-1019992123 | E | FLORES | 4/12/2017 |
| JCLA1-1020325402 | DOROTHY | GROSWIRTH | 4/12/2017 |
| JCLA1-1020965002 | LAZARO R | MURILLO | 4/12/2017 |
| JCLA1-1021023957 | JOHN | LLERENAS | 4/12/2017 |
| JCLA1-1022041444 | H G | MC LENNAN | 4/12/2017 |
| JCLA1-1000272079 | PEG A | SHIPMAN | 4/13/2017 |
| JCLA1-1001973089 | JENNIFER R | STERNBACH | 4/13/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1002450926 | VERNITA | JOHNSON | 4/13/2017 |
| JCLA1-1002558956 | NESTOR | GONZALEZ | 4/13/2017 |
| JCLA1-1005394296 | CAROL ANN | BRANT | 4/13/2017 |
| JCLA1-1009124900 | KATHY | HANLON | 4/13/2017 |
| JCLA1-1010131184 | ROLAND | JABONILLO | 4/13/2017 |
| JCLA1-1010822055 | W W | LUND | 4/13/2017 |
| JCLA1-1011333767 | RICHARD A | MURRAY | 4/13/2017 |
| JCLA1-1011377489 | BARBARA J | LE BLANC | 4/13/2017 |
| JCLA1-1014485967 | DIANE | VANETTE | 4/13/2017 |
| JCLA1-1016597908 | JOHN | VANDYGRIFF | 4/13/2017 |
| JCLA1-1021554278 | ANTHONY | EDWARDS | 4/13/2017 |
| JCLA1-1000357031 | ROMERO R | AGCAOILI | 4/14/2017 |
| JCLA1-1001106865 | RICHARD | MICALLEF | 4/14/2017 |
| JCLA1-1005510474 | CATALINA | VILLALOBOS | 4/14/2017 |
| JCLA1-1005805873 | ADAM | HOCHBERG | 4/14/2017 |
| JCLA1-1006135626 | MEGHAN L | BECKMANN | 4/14/2017 |
| JCLA1-1008562807 | BILLIE J | KENDRICK | 4/14/2017 |
| JCLA1-1011220709 | BARRY R | MORA | 4/14/2017 |
| JCLA1-1015738028 | ALEXANDRIA | EN | 4/14/2017 |
| JCLA1-1016379617 | MARIE | MONGES | 4/14/2017 |
| JCLA1-1017324727 | CATALINA | VILLALOBOS | 4/14/2017 |
| JCLA1-1018716505 | MARGARET | KHIN | 4/14/2017 |
| JCLA1-1020903678 | VICTOR | JAUREGUI JR | 4/14/2017 |
| JCLA1-1021911348 | HUNTER | BROWN | 4/14/2017 |
| JCLA1-1008422258 | GAGE | ROARK | 4/15/2017 |
| JCLA1-1012012611 | ROSEMARIE T | BALMACEDA | 4/15/2017 |
| JCLA1-1015028420 | ROSARIO | JURGENS | 4/15/2017 |
| JCLA1-1019639474 | KYE SUN | KIM | 4/15/2017 |
| JCLA1-1020647728 | JESSY | ALFARO | 4/15/2017 |
| JCLA1-1021402290 | GEORGE E | MURPHY | 4/15/2017 |
| JCLA1-1000023818 | CASEY | STOLBERG | 4/17/2017 |
| JCLA1-1000215997 | FRANK G | GOMEZ | 4/17/2017 |
| JCLA1-1000892778 | DIANE | BOOBAR | 4/17/2017 |
| JCLA1-1004843356 | GRACIE | VAN BRUNT | 4/17/2017 |
| JCLA1-1008389161 | SUREEPORN | SOMTAMITWONG | 4/17/2017 |
| JCLA1-1009563726 | M A | ORTNER | 4/17/2017 |
| JCLA1-1012348717 | LARRY Z | SOBEL | 4/17/2017 |
| JCLA1-1013508181 | JEAN | VERNON | 4/17/2017 |
| JCLA1-1014862191 | YIKAI | LIN | 4/17/2017 |
| JCLA1-1015647332 | SHENG | JIANG | 4/17/2017 |
| JCLA1-1017216479 | BORZOUYEH | POURSHARIF | 4/17/2017 |
| JCLA1-1004914270 | YOON SEO | KANG | 4/18/2017 |
| JCLA1-1005676984 | ALYTHEA | READE | 4/18/2017 |
| JCLA1-1007758058 | JOHN | VIDOVICH DBA | 4/18/2017 |
| JCLA1-1008226343 | CHARLES E | MADRID | 4/18/2017 |
| JCLA1-1010051067 | KANA | KAMITO | 4/18/2017 |
| JCLA1-1011461706 | JOHN | VIDOVICH DBA | 4/18/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1011846195 | JOHN | VIDOVICH DBA | 4/18/2017 |
| JCLA1-1012357589 | JOHN | VIDOVICH DBA | 4/18/2017 |
| JCLA1-1016383150 | DIANE | JORDAN | 4/18/2017 |
| JCLA1-1020839112 | OLIVIA | SONG | 4/18/2017 |
| JCLA1-1000931986 | TERESA | ROMERO | 4/19/2017 |
| JCLA1-1001851617 | REBECCA | DUFENDACH | 4/19/2017 |
| JCLA1-1002789540 | TRACIE | BEER | 4/19/2017 |
| JCLA1-1002886635 | NANCY | TILLOTSON | 4/19/2017 |
| JCLA1-1006498460 | NESIM | HASON | 4/19/2017 |
| JCLA1-1010485431 | CAROLINE | BLACK | 4/19/2017 |
| JCLA1-1010595784 | NANCY | TILLOTSON | 4/19/2017 |
| JCLA1-1011065819 | GEORGE W | TODD | 4/19/2017 |
| JCLA1-1012423204 | AMBER | LASTOSKIE | 4/19/2017 |
| JCLA1-1014188768 | TERESA | ROMERO | 4/19/2017 |
| JCLA1-1017373990 | JASON | BAUSTIN | 4/19/2017 |
| JCLA1-1018252096 | MARGARITA | SUAREZ | 4/19/2017 |
| JCLA1-1022529676 | KENNETH H | FRASER | 4/19/2017 |
| JCLA1-1006822291 | CHRIS | DESSER | 4/20/2017 |
| JCLA1-1007062339 | VIRGINIA | SMITH | 4/20/2017 |
| JCLA1-1009531620 | DAVID | CHIEN | 4/20/2017 |
| JCLA1-1009662112 | IAN | MCCLARREN | 4/20/2017 |
| JCLA1-1011908190 | G | MADRID | 4/20/2017 |
| JCLA1-1011962462 | SEMYON | GINZBURG | 4/20/2017 |
| JCLA1-1011964244 | RODELIO | CADAY | 4/20/2017 |
| JCLA1-1015932142 | RAMONA | YERA | 4/20/2017 |
| JCLA1-1016407939 | RAPHAEL | GARCIA | 4/20/2017 |
| JCLA1-1017305854 | ALEXANDRA | JULIANO | 4/20/2017 |
| JCLA1-1020481137 | OSAMU | SUGIMOTO | 4/20/2017 |
| JCLA1-1020823283 | MIN | KANG | 4/20/2017 |
| JCLA1-1000757552 | D H | LIPPMAN | 4/21/2017 |
| JCLA1-1002167817 | RUTH | RHODES | 4/21/2017 |
| JCLA1-1003861792 | ELIZABETH A | HOAGE | 4/21/2017 |
| JCLA1-1004754957 | NAOMI | BIANGELLA | 4/21/2017 |
| JCLA1-1005437831 | JACKIE | LEDERFINE | 4/21/2017 |
| JCLA1-1005825610 | PHILIP | ANNINOS | 4/21/2017 |
| JCLA1-1006710213 | D H | LIPPMAN | 4/21/2017 |
| JCLA1-1009650050 | DALE | UYEDA | 4/21/2017 |
| JCLA1-1014137489 | DALE | UYEDA | 4/21/2017 |
| JCLA1-1016913869 | ELAINE B | LEIGH | 4/21/2017 |
| JCLA1-1017007217 | JEFF | LEADFORD | 4/21/2017 |
| JCLA1-1018597883 | IDA | ALEXANDER | 4/21/2017 |
| JCLA1-1007628340 | BARBARA | MUSSELL | 4/22/2017 |
| JCLA1-1007899158 | MAEBELL | MARSHALL | 4/22/2017 |
| JCLA1-1012411044 | JUNKO | OSHIRO | 4/22/2017 |
| JCLA1-1014780292 | ORVAL | AUFDEMBERGE | 4/22/2017 |
| JCLA1-1021739197 | MEGAN | SCHILLING | 4/22/2017 |
| JCLA1-1000041077 | LAURA | TIZ | 4/24/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1000283127 | ALLISON D | OXMAN | 4/24/2017 |
| JCLA1-1000702090 | MICHAEL E | BOWLUS | 4/24/2017 |
| JCLA1-1003833284 | CURTIS H | BAER | 4/24/2017 |
| JCLA1-1004087594 | WOO B | SHIM | 4/24/2017 |
| JCLA1-1004898533 | IMELDA | ACOSTA | 4/24/2017 |
| JCLA1-1006088989 | YONGSHENG | JIAO | 4/24/2017 |
| JCLA1-1006620770 | MAY | BIN-JASSEM | 4/24/2017 |
| JCLA1-1007018518 | RENE | LEMUS | 4/24/2017 |
| JCLA1-1010285009 | NADINE | DE LILLIO | 4/24/2017 |
| JCLA1-1013312988 | ANDREW | JUSTICE | 4/24/2017 |
| JCLA1-1014669561 | BRUCE | AOKI | 4/24/2017 |
| JCLA1-1017608296 | TALAL | ALRABIAH | 4/24/2017 |
| JCLA1-1017643288 | BLANCA M | CALITO | 4/24/2017 |
| JCLA1-1020970499 | SHARON CATHERINE | BROWN | 4/24/2017 |
| JCLA1-1021610771 | ZACHARY | SCHORR | 4/24/2017 |
| JCLA1-1022336223 | MICHAEL | BOWLUS | 4/24/2017 |
| JCLA1-1000497330 | CLAUDIA | FLORES | 4/25/2017 |
| JCLA1-1001069390 | MINJI | KIM | 4/25/2017 |
| JCLA1-1001659481 | DJ | CARLILE | 4/25/2017 |
| JCLA1-1002290708 | CLAUDIA | FLORES | 4/25/2017 |
| JCLA1-1005196761 | HOLLY | GOSNELL | 4/25/2017 |
| JCLA1-1006787330 | ROBERT | KAWAHARA | 4/25/2017 |
| JCLA1-1007958421 | | KESTER SOLUTIONS LLC | 4/25/2017 |
| JCLA1-1007999608 | WM A | ROLSTON | 4/25/2017 |
| JCLA1-1008148040 | CARLO | IRIGOYEN | 4/25/2017 |
| JCLA1-1011659697 | MICHAEL | CASIANO | 4/25/2017 |
| JCLA1-1016293020 | | KESTER SOLUTIONS LLC | 4/25/2017 |
| JCLA1-1016930020 | CLAUDIA | FLORES | 4/25/2017 |
| JCLA1-1008876887 | GEORGETTE | TUCK | 4/26/2017 |
| JCLA1-1009332961 | ELAINE | DALY | 4/26/2017 |
| JCLA1-1015124240 | AREN | AZIZIAN | 4/26/2017 |
| JCLA1-1005016771 | NANCY | GOLDSTEIN | 4/27/2017 |
| JCLA1-1006138684 | RANDY | YAP | 4/27/2017 |
| JCLA1-1012658449 | JAY | STEIN | 4/27/2017 |
| JCLA1-1015197442 | JESSICA | FREITAS | 4/27/2017 |
| JCLA1-1018713565 | CAROLE | HUGHES | 4/27/2017 |
| JCLA1-1019494034 | MIKE L | WORLE | 4/27/2017 |
| JCLA1-1021683671 | EVELYN | HAMMOND | 4/27/2017 |
| JCLA1-1002845009 | TAMMY | SIBLEY | 4/28/2017 |
| JCLA1-1004198280 | WILLIAM M | MACKIE | 4/28/2017 |
| JCLA1-1005105138 | JON K | KENNEDY | 4/28/2017 |
| JCLA1-1009069250 | VIVIAN | LISCANO | 4/28/2017 |
| JCLA1-1010654292 | | AEG MANAGEMENT LACC LLC | 4/28/2017 |
| JCLA1-1012608050 | STUART A | WALL | 4/28/2017 |
| JCLA1-1016911718 | BONNY R | HENDERSON | 4/28/2017 |
| JCLA1-1001306236 | NELSON F | CHAVARRIA | 4/29/2017 |
| JCLA1-1014033470 | HEATHER | JOHNSON | 4/29/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1002006376 | KATHRYN | CORNFORD | 5/1/2017 |
| JCLA1-1003685781 | TONY | TRAN | 5/1/2017 |
| JCLA1-1003690041 | CHERYL | HODGE | 5/1/2017 |
| JCLA1-1004617712 | ANH N | MA | 5/1/2017 |
| JCLA1-1006623361 | CASSANDRA | BOH KAI TING | 5/1/2017 |
| JCLA1-1011911981 | ANTHONY I | ZABATTA | 5/1/2017 |
| JCLA1-1012801616 | SIMIA | RASSOULI | 5/1/2017 |
| JCLA1-1012870890 | PHYLLIS | MOHR | 5/1/2017 |
| JCLA1-1013460880 | J | WHITE | 5/1/2017 |
| JCLA1-1014984424 | GREGORY | GERARDIS | 5/1/2017 |
| JCLA1-1015778119 | ROSELLEN | TRUNNELL | 5/1/2017 |
| JCLA1-1016386710 | LISA | LJEVAJA | 5/1/2017 |
| JCLA1-1017806535 | CHRISTINE | JOHNSON | 5/1/2017 |
| JCLA1-1020603054 | ERIN | ENG | 5/1/2017 |
| JCLA1-1000957870 | AMANDA | LUCIUS | 5/2/2017 |
| JCLA1-1001341724 | LEONARDO | RAYA | 5/2/2017 |
| JCLA1-1008006602 | KERRY L | MCCUMBER | 5/2/2017 |
| JCLA1-1018015108 | STEPHANE | JAUROYOU | 5/2/2017 |
| JCLA1-1022368753 | CYNTHIA | WRIGHT | 5/2/2017 |
| JCLA1-1008145025 | KARL | LIGON | 5/3/2017 |
| JCLA1-1011972930 | ESTHER | JOO | 5/3/2017 |
| JCLA1-1018302409 | NOEL | BOYT | 5/3/2017 |
| JCLA1-1019783583 | JENNIFER | SALDANA | 5/3/2017 |
| JCLA1-1022111167 | ISSABELL | HOKE | 5/3/2017 |
| JCLA1-1002240700 | C | JARAMILLO | 5/4/2017 |
| JCLA1-1005648603 | HENRY A | KELLY | 5/4/2017 |
| JCLA1-1009029487 | MARY | JARAMILLO | 5/4/2017 |
| JCLA1-1009879260 | KEVIN | CLOOBECK | 5/4/2017 |
| JCLA1-1020550252 | CARLA | SCHILLER | 5/4/2017 |
| JCLA1-1000995496 | GUISELA | URRUTIA | 5/5/2017 |
| JCLA1-1004669836 | SUSAN | CHISHOLM | 5/5/2017 |
| JCLA1-1007222743 | ANJALEE | KHARKAR | 5/5/2017 |
| JCLA1-1007407263 | SUSAN | CHISHOLM | 5/5/2017 |
| JCLA1-1007622369 | ANNAMARIE | TROHA | 5/5/2017 |
| JCLA1-1012320260 | TADASHI | KOWTA | 5/5/2017 |
| JCLA1-1013679334 | SUSAN | CHISHOLM | 5/5/2017 |
| JCLA1-1016712707 | ESTHER | URIBE | 5/5/2017 |
| JCLA1-1018027823 | DORIS | FASE | 5/5/2017 |
| JCLA1-1021766186 | ANEL | MORALES | 5/5/2017 |
| JCLA1-1021982091 | SUSAN | CHISHOLM | 5/5/2017 |
| JCLA1-1002683408 | INGA | SREBNYTSKA | 5/6/2017 |
| JCLA1-1012857204 | JAMES | SHEETS | 5/6/2017 |
| JCLA1-1001201965 | GAYANTHI | MADUGALLE | 5/8/2017 |
| JCLA1-1002426880 | ERNEST | KUNG | 5/8/2017 |
| JCLA1-1003851096 | JARED | HODES | 5/8/2017 |
| JCLA1-1008209856 | MELISSA | LEE | 5/8/2017 |
| JCLA1-1014017530 | ELHAM | HAMZEH | 5/8/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1019299436 | SURJAN | SINGH | 5/8/2017 |
| JCLA1-1023005786 | MARLENE S | LESSIN | 5/8/2017 |
| JCLA1-1015154352 | JARADPORN | WRUWATTANANON | 5/9/2017 |
| JCLA1-1019135409 | LESLIE | BERLIN | 5/9/2017 |
| JCLA1-1022698796 | LESLIE | BERLIN | 5/9/2017 |
| JCLA1-1002125324 | WILLIAM | WAGNER | 5/10/2017 |
| JCLA1-1007252847 | MARLA | KOMOROWSKI | 5/10/2017 |
| JCLA1-1011146975 | | CENTER FOR LIFELONG LEARNERS C | 5/10/2017 |
| JCLA1-1015130704 | JOAN P | BARROW | 5/10/2017 |
| JCLA1-1004550367 | SANDRA | DAVIDSON | 5/11/2017 |
| JCLA1-1010657410 | LIA C | AZEAL | 5/11/2017 |
| JCLA1-1017330867 | NGAN S | WONG | 5/11/2017 |
| JCLA1-1000270009 | YOOVABEE | PHUAPHES | 5/15/2017 |
| JCLA1-1002318335 | ELISSA R | GREENE | 5/15/2017 |
| JCLA1-1002707250 | ILSE | COTA | 5/15/2017 |
| JCLA1-1003686192 | DELIA | ALVIDREZ | 5/15/2017 |
| JCLA1-1007605626 | ARDIS | FLENNIKEN | 5/15/2017 |
| JCLA1-1009218212 | CARLOS | PALOMO | 5/15/2017 |
| JCLA1-1009226622 | MATIN | SHARAFATKHAH | 5/15/2017 |
| JCLA1-1014987202 | JANE EDWINA | SEYMOUR | 5/15/2017 |
| JCLA1-1018995811 | HEATHER | VICKERS | 5/15/2017 |
| JCLA1-1021218421 | NANETTE M | THOMAS | 5/15/2017 |
| JCLA1-1023022052 | ALI | PEREZ | 5/15/2017 |
| JCLA1-1002897084 | JOYCE M | PATTENSON | 5/16/2017 |
| JCLA1-1004758049 | LYNETTE M | ODEN | 5/16/2017 |
| JCLA1-1009765671 | DAGMAR C | SZABADOS | 5/16/2017 |
| JCLA1-1010615653 | CATALINA M | FREDELUCES | 5/16/2017 |
| JCLA1-1017576807 | DUEK SOON | SUNG | 5/17/2017 |
| JCLA1-1002512646 | TAE EUN | KIM | 5/18/2017 |
| JCLA1-1006652434 | MARJORIE | WALLACE | 5/18/2017 |
| JCLA1-1010078283 | MARJORIE A | WALLACE | 5/18/2017 |
| JCLA1-1017289816 | ZEEWAN | LEE | 5/18/2017 |
| JCLA1-1017431590 | BRIAN | AARON | 5/18/2017 |
| JCLA1-1001783220 | SARA | AVILA | 5/19/2017 |
| JCLA1-1005936722 | | COFFMAN SPECIALTIES INC | 5/19/2017 |
| JCLA1-1006211900 | SUSAN | MCCARTHY | 5/19/2017 |
| JCLA1-1011093510 | RICHARD A | HAMPTON | 5/19/2017 |
| JCLA1-1012643131 | WILLIAM H | SHARPE | 5/19/2017 |
| JCLA1-1016851448 | JON | MILANO | 5/19/2017 |
| JCLA1-1020811005 | LEWIS | MORRIS | 5/19/2017 |
| JCLA1-1000705528 | ELEANOR | MEYER | 5/20/2017 |
| JCLA1-1005667446 | ELEANOR | MEYER | 5/20/2017 |
| JCLA1-1013551893 | BARBARA E | HOLLAND | 5/20/2017 |
| JCLA1-1006025677 | FRANCISCO | CARCAMO | 5/22/2017 |
| JCLA1-1015780350 | MILAGROS | RAMOS | 5/22/2017 |
| JCLA1-1017346089 | MINORU | HIRUTA | 5/22/2017 |
| JCLA1-1017795878 | ANDREAA | FRINCU | 5/22/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1019254408 | J V | SIEBERT | 5/22/2017 |
| JCLA1-1022889443 | NERMEEN | ALDAOUD | 5/22/2017 |
| JCLA1-1000731880 | PATRICIA | ROSKI | 5/23/2017 |
| JCLA1-1003346294 | PATRICIA | ROSKI | 5/23/2017 |
| JCLA1-1005154643 | WEN SHENG | YEH | 5/23/2017 |
| JCLA1-1005447365 | KATHY | ORRICO | 5/24/2017 |
| JCLA1-1005591652 | MIKE G | KIM | 5/24/2017 |
| JCLA1-1007301970 | HEATHER | LEFEVRE | 5/24/2017 |
| JCLA1-1007724730 | FRED J | RODRIGUEZ | 5/24/2017 |
| JCLA1-1011555182 | ELEANOR J | RAUCHER | 5/24/2017 |
| JCLA1-1012237630 | ELISA | VITALICIO | 5/24/2017 |
| JCLA1-1016945671 | TRACY | KIMBALL | 5/24/2017 |
| JCLA1-1001338790 | | LESTER BROS | 5/25/2017 |
| JCLA1-1003838413 | ANNIE S | SZETO | 5/25/2017 |
| JCLA1-1004158084 | NICK G | KONAKAS | 5/25/2017 |
| JCLA1-1004510870 | | OPTIMUS CONSTRUCTION, INC. | 5/25/2017 |
| JCLA1-1006423060 | UBALDO | RAMOS | 5/25/2017 |
| JCLA1-1007771313 | | OPTIMUS CONSTRUCTION, INC. | 5/25/2017 |
| JCLA1-1011012472 | BARBARA J | KONAKAS | 5/25/2017 |
| JCLA1-1006618520 | AMY | LIN | 5/26/2017 |
| JCLA1-1006707085 | ETHAN | ADKINS | 5/26/2017 |
| JCLA1-1011529262 | XIAOKAI | QIAN | 5/26/2017 |
| JCLA1-1018817697 | ROSEMARY | LUISI | 5/26/2017 |
| JCLA1-1020451874 | AMY | LIN | 5/26/2017 |
| JCLA1-1020636777 | MONIQUE | VAN STEENKISTE | 5/26/2017 |
| JCLA1-1022516205 | KELLY | NAM | 5/26/2017 |
| JCLA1-1013369998 | VERNA J | MC ADAM | 5/27/2017 |
| JCLA1-1004562365 | DAVID L | RIVERA | 5/30/2017 |
| JCLA1-1007138963 | JEFFREY | PIFKO | 5/30/2017 |
| JCLA1-1007175710 | GLEN W | REDMAN | 5/30/2017 |
| JCLA1-1007195789 | ELYNE C | RUDIN | 5/30/2017 |
| JCLA1-1009970992 | JEFFREY R | PIFKO | 5/30/2017 |
| JCLA1-1011147165 | LORCAN | KILROY | 5/30/2017 |
| JCLA1-1015259855 | DAVID L | RIVERA | 5/30/2017 |
| JCLA1-1016665890 | INGRID | MUELLER | 5/30/2017 |
| JCLA1-1017799318 | JOHN P | HARTWELL | 5/30/2017 |
| JCLA1-1018744312 | INAN | OLMEZ | 5/30/2017 |
| JCLA1-1023082888 | DAVID L | RIVERA | 5/30/2017 |
| JCLA1-1002772311 | MICHELLE E | MC CONNELL | 5/31/2017 |
| JCLA1-1004884800 | CARMEN | PEREZ | 5/31/2017 |
| JCLA1-1006896244 | MARYAM | SHAHREZA | 5/31/2017 |
| JCLA1-1007174935 | CARMEN | PEREZ | 5/31/2017 |
| JCLA1-1007214414 | DAVID | MCDOWELL | 5/31/2017 |
| JCLA1-1007862688 | ROBERT A | KLEIN | 5/31/2017 |
| JCLA1-1008151050 | BINGEN | CORTAZAR | 5/31/2017 |
| JCLA1-1010052349 | MATTHEW | BEALE | 5/31/2017 |
| JCLA1-1012278867 | EDYTHE | BRONSTON | 5/31/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1013168780 | DANIELA YAZMIN | ROJAS-RAMIREZ | 5/31/2017 |
| JCLA1-1018788727 | CARMEN | PEREZ | 5/31/2017 |
| JCLA1-1019373776 | IGOR | GRANIZO | 5/31/2017 |
| JCLA1-1020048395 | ERIN | GONZALES | 5/31/2017 |
| JCLA1-1022346920 | DANIEL | MONTOYA | 5/31/2017 |
| JCLA1-1000699633 | MYUNG JI | KIM | 6/1/2017 |
| JCLA1-1001599969 | JEANNE | WANLASS | 6/1/2017 |
| JCLA1-1002199620 | RYAN T | HURST | 6/1/2017 |
| JCLA1-1003207260 | JEANNIE C | WANLASS | 6/1/2017 |
| JCLA1-1003743102 | LEM | BUI | 6/1/2017 |
| JCLA1-1004300859 | LISA | REDDICK | 6/1/2017 |
| JCLA1-1008971618 | JEANNE | WANLASS | 6/1/2017 |
| JCLA1-1010160354 | KORIE | SCHMIDT | 6/1/2017 |
| JCLA1-1012124819 | GILLIAN L | ANGLIN | 6/1/2017 |
| JCLA1-1014456720 | VINCENT | MANZULLO | 6/1/2017 |
| JCLA1-1019080396 | JEANNE | WANLASS | 6/1/2017 |
| JCLA1-1019288183 | ZINA | HANDLEY | 6/1/2017 |
| JCLA1-1019681608 | ALICE | PICCININI | 6/1/2017 |
| JCLA1-1021143855 | ANDREW | MUSISI | 6/1/2017 |
| JCLA1-1002818672 | CONSTANCIO | LAZCANO- | 6/2/2017 |
| JCLA1-1006615482 | M | RICHEY | 6/2/2017 |
| JCLA1-1007610590 | RICARDO A | PEREZ | 6/2/2017 |
| JCLA1-1009368664 | WAYNE | IMBER MD | 6/2/2017 |
| JCLA1-1009482220 | GWENN A | MOXLEY | 6/2/2017 |
| JCLA1-1011720442 | GURDEZ | SIGNH | 6/2/2017 |
| JCLA1-1012982327 | PRISCILLA | JAYLONI | 6/2/2017 |
| JCLA1-1015161316 | MAC | DI ROSARIO | 6/2/2017 |
| JCLA1-1016097751 | LYUBOV | KAMENETSKAYA | 6/2/2017 |
| JCLA1-1018269584 | SHERRY | HUGHES | 6/2/2017 |
| JCLA1-1019752858 | PATRICIA | HORTON | 6/2/2017 |
| JCLA1-1021709492 | NINA | LEONARD | 6/2/2017 |
| JCLA1-8000000016 | GURDEV | SINGH | 6/2/2017 |
| JCLA1-1000044190 | DAVID P | KAPLAN | 6/3/2017 |
| JCLA1-1002803551 | RUDOLFO | CALIMAG | 6/3/2017 |
| JCLA1-1011990180 | ASHLYNN | PASTOREK | 6/3/2017 |
| JCLA1-1012378187 | BRUCE | ARNOLD | 6/3/2017 |
| JCLA1-1013079540 | PETRA | CASTRO DELGADO | 6/3/2017 |
| JCLA1-1015779301 | MARIA VIRGINIA | GUERRERO | 6/3/2017 |
| JCLA1-1015846548 | RATIROM | AWAIYAWANON | 6/3/2017 |
| JCLA1-1016079702 | ANTHONY R | DESOTO | 6/3/2017 |
| JCLA1-1016441380 | HERSCHEL E | LYONS | 6/3/2017 |
| JCLA1-1017978131 | RENEE | HAROUTUNIAN | 6/3/2017 |
| JCLA1-1019159618 | LUZ | CRUZ | 6/3/2017 |
| JCLA1-1020499532 | KERIM | OMAROV | 6/3/2017 |
| JCLA1-1020613718 | GRIFFIN | FONTANA | 6/3/2017 |
| JCLA1-1021359467 | EUGENIA E | GONZALEZ | 6/3/2017 |
| JCLA1-1000404803 | KATIE | MITASZKA | 6/5/2017 |

| | | | |
|---|---|---|---|
| JCLA1-1000486982 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1000821781 | DARRYL | BURTON | 6/5/2017 |
| JCLA1-1001947720 | KATHY | BAUER | 6/5/2017 |
| JCLA1-1002335868 | SUPHASUTA | DOUNGRAKSA | 6/5/2017 |
| JCLA1-1002407338 | CHRISTIANN M | ADAMS | 6/5/2017 |
| JCLA1-1002480000 | DARRYL | BURTON | 6/5/2017 |
| JCLA1-1002624916 | BELLA | YOUSSEF | 6/5/2017 |
| JCLA1-1003972136 | BRANDON | BUCHLER | 6/5/2017 |
| JCLA1-1004887140 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1005239746 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1005441464 | NABIL | TERTA | 6/5/2017 |
| JCLA1-1005642958 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1006050191 | THERESA | DAUGHERTY | 6/5/2017 |
| JCLA1-1006871926 | TERRI K | TOGIAI | 6/5/2017 |
| JCLA1-1007039183 | KATHY REITERMAN | BAUER | 6/5/2017 |
| JCLA1-1009466275 | HARRY | WACHTEL | 6/5/2017 |
| JCLA1-1010647512 | KATHY | BAUER | 6/5/2017 |
| JCLA1-1011983460 | JEONG EUN | BAEK | 6/5/2017 |
| JCLA1-1011987902 | KATHY REITHMAN | BAUER | 6/5/2017 |
| JCLA1-1012762068 | ALEJANDRA | ROJAS | 6/5/2017 |
| JCLA1-1012818314 | DARRYL | BURTON | 6/5/2017 |
| JCLA1-1013042670 | ORAZIA | CASTILLE | 6/5/2017 |
| JCLA1-1014334543 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1014785936 | CARON | VEAZEY | 6/5/2017 |
| JCLA1-1015626769 | FLORA | CHEUNG | 6/5/2017 |
| JCLA1-1016498276 | KATHY REITERMAN | BAUER | 6/5/2017 |
| JCLA1-1017068615 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1017925054 | ALESSANDRO | AMANTE | 6/5/2017 |
| JCLA1-1018007431 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1018108904 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1018185321 | JODI | ROWE | 6/5/2017 |
| JCLA1-1018842063 | NICK | PRIOVOLOS | 6/5/2017 |
| JCLA1-1019163178 | CHRISTOPHER | BROWN | 6/5/2017 |
| JCLA1-1019379324 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1019640537 | DARRYL | BURTON | 6/5/2017 |
| JCLA1-1019669632 | ARNOLD | LINARES | 6/5/2017 |
| JCLA1-1021580783 | JO ANN | WESLEY | 6/5/2017 |
| JCLA1-1022016881 | DEBORAH | HOLLAND | 6/5/2017 |
| JCLA1-1022328980 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1012920208 | HENOCH | AZALI | 6/9/2017 Late |
| JCLA1-1020055960 | MARIA | MONTGOMERY | 6/10/2017 Late |
| JCLA1-1002396450 | DIANNE | MCDANIEL | 6/12/2017 Late |
| JCLA1-1000609634 | GAVRIELLE | WOLF | 6/20/2017 Late |

# EXHIBIT "5"

| | |
|---|---|
| **From:** | John G. Heller |
| **To:** | Michael Libman (mjl@libmanlaw.com) |
| **Cc:** | Lauren Kramer Sujeeth |
| **Subject:** | FW: Michael Libman |
| **Date:** | Tuesday, June 30, 2020 7:54:08 AM |

Michael:

Following up on my message, here's the email Lauren received an hour and half ago from the AUSA.

**From:** Lauren Kramer Sujeeth <lsujeeth@rjo.com>
**Sent:** Tuesday, June 30, 2020 7:17 AM
**To:** John G. Heller <JHeller@rjo.com>
**Subject:** Fwd: Michael Libman

Lauren Kramer Sujeeth | Shareholder
ROGERS JOSEPH O'DONNELL | a Professional Law Corporation
311 California Street, 10th fl | San Francisco, CA 94104
415.956.2828 main | 415.956.6457 fax
lsujeeth@rjo.com | www.rjo.com

Notice to recipient: This email is meant for only the intended recipient(s) of the transmission and may be privileged by law. If you receive this email in error, please notify us immediately. Do not print, copy, or disseminate it. Please delete the email from your system. Thank you.

**From:** Mills, Melissa (USACAC) 2 <Melissa.Mills@usdoj.gov>
**Sent:** Tuesday, June 30, 2020 6:16:05 AM
**To:** Lauren Kramer Sujeeth <lsujeeth@rjo.com>
**Subject:** Michael Libman

Lauren, the FBI is executing a sealed search warrant at the home of your client Michael Libman this morning. There were no arrests, and we remain interested in your client's cooperation. Feel free to contact me with any questions.

Melissa

# EXHIBIT "6"











