ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Guy C. Nicholson (State Bar No. 106133)
   gnicholson@egcfirm.com
Kathryn L. McCann (State Bar No. 245198)
   kmccann@egcfirm.com
Jason Y. Kelly (State Bar No. 274144)
   jkelly@egcfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendant Eric M. George

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. LIBMAN, an individual, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>UNITED STATES OF AMERICA, National Government, et al.,<br><br>　　　　　Defendants. | Case No. 2:21-CV-09455-FMO (MAA)<br><br>Hon. Fernando M. Olguin<br>Magistrate Maria A. Audero<br><br>**DEFENDANT ERIC M. GEORGE'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　　March 24, 2022<br>Time:　　10 a.m.<br>Crtrm.:　6D |

1    TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on March 24, 2022, at 10:00 a.m., or as soon

3    thereafter as this matter may be heard before the Honorable Fernando M. Olguin,

4    United States District Judge, in the above-entitled Court, located at the First Street

5    Courthouse, Courtroom 6D, 6th Floor, 350 West 1st Street, Los Angeles, California,

6    90012, Defendant Eric M. George ("Mr. George" or "Defendant") will and hereby

7    does move this Court for an order dismissing with prejudice the First Amended

8    Complaint ("FAC") (Dkt. No. 77) pursuant to Federal Rules of Civil Procedure 8a,

9    12(b)(1), and 12(b)(6) on the following grounds:

10        Count III of the FAC claims Mr. George, and certain other defendants, violated

11   42 U.S.C. § 1983.  (Dkt. No. 77 at 64-67.)  The FAC fails to state facts sufficient to

12   constitute a viable claim against Mr. George.  This Court also lacks subject matter

13   jurisdiction over the claim and/or otherwise should abstain.

14        This motion is based on this notice of motion, the accompanying memorandum

15   of points and authorities, the request for judicial notice and for incorporation by

16   reference, the Declaration of Kathryn L. McCann (the "McCann Declaration") as well

17   as the exhibits attached thereto, all pleadings and documents on file with the Court, the

18   motions and supporting papers of the other defendants, and such further written and/or

19   oral evidence and argument as the Court may allow.

20        On February 8, 2022, counsel for Defendant attempted to initiate a conference

21   of counsel pursuant to L.R. 7-3 by sending a detailed meet and confer letter to

22   Plaintiffs' counsel, setting forth Defendant's positions and legal authority regarding

23   this Motion.  However, counsel for Plaintiffs refused to complete the meet and confer

24   process unless counsel for Defendant agreed to be recorded.   In light of this

25   unreasonable demand, not required under any rules, coupled with Plaintiffs' counsel's

26   general refusal to engage in reasonable discourse, further meet and confer proved futile.

27   (*See* McCann Decl. ¶¶ 2-6, Exhs. 1-5.)

28

1       Mr. George respectfully requests that the Court dismiss the FAC, and the one

2   claim for relief therein against him, with prejudice.

3   DATED:  February 17, 2022       ELLIS GEORGE CIPOLLONE
                                O'BRIEN ANNAGUEY LLP

4                                     Guy C. Nicholson

5                                     Kathryn L. McCann
                                  Jason Y. Kelly

6

7                               By:       */s/ Kathryn L. McCann*

8                                     Kathryn L. McCann

9                       Attorneys for Defendant Eric M. George

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.  INTRODUCTION ............................................................................................ 1

II. SUMMARY OF MATERIAL FACTS ........................................................... 1

    A.  The *Jones* Action ................................................................................ 1

    B.  Landskroner, Paradis, Kiesel, And Libman ........................................ 2

    C.  Mr. Libman Is Unsuccessful In The State Court, Accordingly There Must Be A Conspiracy Against Him – One Of The Conspirators Being Judge Berle .................................................... 3

    D.  The Complaint, Initiating This Action, And The FAC ........................ 5

III. LEGAL STANDARD ..................................................................................... 6

IV. ARGUMENT .................................................................................................. 7

    A.  Mr. George Is Not A State Actor ........................................................ 8

    B.  Even If Mr. George Had Been A State Actor, The FAC Fails To Allege That He Violated Plaintiffs' Civil Rights ................................ 9

    C.  Plaintiffs' Conspiracy-Based Claim Is Implausible ........................... 10

    D.  Plaintiffs' Claim Is Not Ripe ............................................................. 10

    E.  The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claim ...................... 11

    F.  The *Noerr-Pennington* Doctrine Bars Plaintiffs' Claim .................... 13

    G.  The *Younger* Abstention Doctrine Applies Here ............................... 15

    H.  Leave To Amend Should Be Refused .................................................. 16

V.  CONCLUSION ............................................................................................. 17

1981650

DEFENDANT ERIC M. GEORGE'S NOTICE OF MOTION AND MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................ 6, 7

*Baffert v. California Horse Racing Bd.,*
    332 F.3d 613 (9th Cir. 2003) .................................................................. 15

*Ball v. Cal. Dep't of Corrs. and Rehab.,*
    No. 13-cv-1483, 2013 WL 5272991 (N.D. Cal. Sept. 17, 2013) ........................... 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................... 6, 10

*Bianchi v. Rylaarsdam,*
    334 F.3d 895 (9th Cir. 2003), *cert. denied,* 540 U.S. 1213 (2004) ..................... 12

*Burlington Ins. Co. v. Panacorp., Inc.,*
    758 F. Supp. 2d 1121 (D. Haw. 2010) ...................................................... 15

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.,*
    944 F.2d 1525 (9th Cir.1991), *aff'd,* 508 U.S. 49 (1993) ................................. 14

*Cooper v. Ramos,*
    704 F.3d 772 (9th Cir. 2012) ........................................................... 11, 12

*Daniels v. Williams,*
    474 U.S. 327 (1986) .......................................................................... 7

*Doe & Assocs. L. Offs. v. Napolitano,*
    252 F.3d 1026 (9th Cir. 2001) ............................................................... 12

*Edmonson v. Leesville Concrete Co., Inc.,*
    500 U.S. 614 (1991) .......................................................................... 8

*Estate of Duran v. Chavez,*
    No. 2:14-cv-02048, 2015 WL 8011685 (E.D. Cal. Dec. 4, 2015) ......................... 8

*Freeman v. Lasky, Hass & Cohler,*
    410 F.3d 1180 (9th Cir. 2005) ............................................................... 14

*Gadda v. State Bar of Cal.*,
   511 F.3d 933 (9th Cir. 2007) ................................................................................ 16

*Haring v. Wells Fargo Bank N.A.*,
   No. 18-cv-3310, 2018 WL 10471109 (N.D. Cal. Oct. 17, 2018) ........................ 13

*Howard v. Cty. of Riverside*,
   No. 12-cv-700, 2013 WL 12138760 (C.D. Cal. Jan. 10, 2013) ............................ 7

*In re Century Aluminum Co. Secs. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ........................................................................... 6, 7

*Johnson v. Quality Loan Serv. Corp.*,
   No. 18-cv-9140, 2018 WL 6978196 (C.D. Cal. Dec. 18, 2018) ........................... 7

*Juidice v. Vail*,
   430 U.S. 327 (1977) .......................................................................................... 15

*Karim-Panahi v. Los Angeles Police Dept.*,
   839 F. 2d 621 (9th Cir. 1988) .............................................................................. 8

*Kougasian v. TMSL, Inc.*,
   359 F.3d 1136 (9th Cir. 2004) ........................................................................... 12

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................................................... 7

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) .......................................................................................... 11

*Navajo Nation v. Dep't of the Interior*,
   876 F.3d 1144 (9th Cir. 2017) ........................................................................... 13

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ................................................................................... 6

*Oregon Nat'l Res. Council v. Mohla*,
   944 F.2d 531 (9th Cir. 1991) ............................................................................. 14

*Pleasant v. Turner*,
   No. 13-cv-329, 2013 WL 5798994 (E.D. Cal. Oct. 28, 2013) .............................. 9

*Price v. State of Hawaii*,
   939 F.2d 702 (9th Cir. 1991) ............................................................................... 8

*Reno v. Cath. Soc. Servs., Inc.*,
  509 U.S. 43 (1993) ............................................................................. 11

*Ricks v. City of Pomona*,
  No. 18-cv-7862, 2019 WL 296199 (C.D. Cal. Jan. 23, 2019) ................................ 8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ................................................................. 6

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ......................................................... 13, 14

*Sykes v. State of Cal. (Dept. of Motor Vehicles)*,
  497 F.2d 197 (9th Cir. 1974) ............................................................ 8, 9

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ................................................................ 11

*West v. Atkins*,
  487 U.S. 42 (1988) ................................................................................ 7

*Yang v. Dar-Al-Handash Consultants*,
  250 F. App'x 771 (9th Cir. 2007) ........................................................... 7

**STATUTES**

42 U.S.C. § 1983 ..................................................................................... 5, 7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) .................................................. 6, 7

Federal Rule of Evidence 201 ..................................................................... 7

DEFENDANT ERIC M. GEORGE'S NOTICE OF MOTION AND MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

The First Amended Complaint (Dkt. No. 77; "FAC") attempts to assert 13 claims for relief against 23 defendants – including several government agencies, the Attorney General of the United States, a Judge of the Los Angeles Superior Court, and numerous attorneys.  The single claim (Count III) asserted against movant Eric M. George ("Mr. George") accuses him of participating in a far-flung conspiracy to violate the civil rights of Michael J. Libman and his law firm (collectively, "Plaintiffs").

Count III must be dismissed with prejudice because:  (i) Plaintiffs' fanciful and utterly implausible allegations fail to describe the acts Mr. George supposedly committed in furtherance of a conspiracy; (ii) Mr. George is not a state actor; (iii) the FAC is devoid of allegations showing that Mr. George owed a duty of care to Plaintiffs or that any such duty was breached – in fact, the FAC alleges the absence of a duty; and (iv) to the extent Plaintiffs can articulate the "harm" supposedly done to them, those events have nothing to do with Mr. George and are not ripe for adjudication, and the only conceivable remedy Plaintiffs might have lies exclusively with the Los Angeles Superior Court or with the California Court of Appeal.

Mr. George therefore requests that this Court grant this Motion in its entirety and dismiss the FAC without leave to amend.

**II.    SUMMARY OF MATERIAL FACTS**

**A.     The *Jones* Action**

In 2014, the class action lawsuit known as *Antwon Jones v. City of Los Angeles* (the "*Jones* Action") was filed against the City of Los Angeles (the "City," also a defendant here) in the Los Angeles Superior Court to recover overpayment for utility services resulting from a defective billing system.  (Dkt. No. 77 ¶¶ 2, 56.)  Jack Landskroner ("Mr. Landskroner") and Michael J. Libman – one of the Plaintiffs here

1   – represented the class.  (*Id.* ¶ 58.)  The Honorable Elihu Berle was, and still is, the

2   presiding judge.  (Dkt. No. 77 ¶¶ 42, 59, Ex. 4 ¶¶ 2, 16.)

3        The *Jones* Action was settled on July 7, 2017, following a fairness hearing

4   during which Judge Berle found the settlement to be fair, adequate, and reasonable.

5   (Dkt. No. 77 ¶¶ 59-60, 62.)  As class counsel, Plaintiffs in the instant case were

6   awarded, and were paid, attorneys' fees totaling $1.65 million.  (*Id.* ¶ 102.)  The Final

7   Judgment in that case also authorized class counsel to file applications for additional

8   fees awards of 29% of any post-judgment recovery to the class on a quarterly basis.

9   (*Id.* ¶ 63.)  No such applications or motions have been filed.  (*E.g.*, *id.* ¶¶ 104-07,

10  346.)  The Final Judgment also provided that Judge Berle retained jurisdiction over

11  all matters pertinent to administering and closing out the settlement, including further

12  awards, if any, of attorneys' fees.  (Dkt. No. 77, Ex. 4 ¶¶ 2, 16.)

13       **B.**    **Landskroner, Paradis, Kiesel, And Libman**

14       At the same time the City was defending itself in the *Jones* Action, the City

15  was prosecuting a lawsuit against PricewaterhouseCoopers ("PwC") seeking damages

16  to remediate the billing systems failures that caused the overbilling issues that lead to

17  the *Jones* Action.  (Dkt. No. 77 ¶ 65.)  The City was represented by Paul O. Paradis

18  ("Mr. Paradis"), among others, in the PwC lawsuit.  (*Id.* ¶¶ 65-66.)  As it turned out,

19  Mr. Paradis was also secretly representing Mr. Jones in the *Jones* Action.  (*Id.* ¶ 66.)

20  In other words, at the same time Mr. Paradis was defending the City, he was

21  representing a litigant suing the City – his own client.  (*Id.*)

22       Ultimately, it was learned that Mr. Landskroner secretly paid a kickback to

23  Mr. Paradis of $2.2 million from the attorney's fees paid by the City to

24  Mr. Landskroner in connection with his role as class co-counsel in the *Jones* Action.

25  (*Id.* ¶ 309.)  Mr. Landskroner was removed as class-counsel and Mr. Paradis recently

26  entered a guilty plea for the crimes he committed by orchestrating the kick-back

27  scheme, among other crimes.  (*Id.* ¶¶ 79, 84, 307, 309.)  Prominent Los Angeles

28  attorney Brian Kabateck ("Mr. Kabateck") was appointed by Judge Berle as new lead

-2-

class counsel in the *Jones* Action.  (*Id.* ¶ 84.)  In 2019, Mr. George also began representing the City in its lawsuit against PwC.  (*Id.* ¶ 82.)

As for Mr. Libman, as a direct consequence of his refusal to render a full accounting of the $1.65 million in attorneys' fees he received from the *Jones* Action settlement, and his refusal to cooperate with post-judgment discovery Mr. Kabateck and Judge Berle were pursuing to learn the truth, Judge Berle granted Mr. Kabeteck's motion requiring Mr. Libman to disgorge $1.65 million in attorneys' fees he received years earlier from the City, assessed discovery sanctions against Mr. Libman totaling $116,000.00, and issued contempt of court sanctions against Libman of $44,000.00.  (*Id.* ¶¶ 274, 303.)  Mr. Libman has appealed those ruling to the California Court of Appeal.  (*See* Request for Judicial Notice ("RJN"), filed concurrently, Ex. 6 [Notices of Appeal, *Jones v. City of Los Angeles*, Los Angeles Superior Court Case No. BC577267].)

C.   **Mr. Libman Is Unsuccessful In The State Court, Accordingly There Must Be A Conspiracy Against Him – One Of The Conspirators Being Judge Berle**

Fairly summarized, Mr. Libman speculates that there are at least three, if not more, unethical and perhaps illegal conspiracies afoot – each targeting him for intimidation and abuse.

One such conspiracy involves the FBI, the United States Attorney's Office, and the law firm of Gibson Dunn, LLP.  According to Mr. Libman, the conspirators included Mr. Kabateck and "his team," Assistant United States Attorney Melisa J. Mills – a former Gibson Dunn associate, and Edward M. Robbins – the Special Master appointed by Judge Berle in the *Jones* Action.  (Dkt. No. 77 ¶¶ 91, 114, 230, 232.) Mr. Libman alleges that the goal of the search warrant was not to investigate a crime but rather, was a "planned intimidation raid" "discussed and agreed to between defendants Mills, Kabateck and 'his team' . . ." (*id.* ¶ 230) to convince Mr. Libman to "stop investigating Judge Berle and [Mr.] Kabateck (*id.* ¶ 232).

Another conspiracy pertains to the aforementioned litigation by the City against PwC – PwC being represented by the Gibson Dunn law firm.  It looks like the participants here included Gibson Dunn attorneys, former Gibson Dunn attorneys who had since joined the United States Attorney's Office, among possibly others.  (*Id.* ¶¶ 384, 392, 402.)  Mr. Libman alleges that a Gibson Dunn partner threatened him with an "investigation" to assist PwC in defending the City's lawsuit.  (*Id.* ¶ 122.)  Mr. Libman accuses the Assistant United States Attorney who participated in the search of Mr. Libman's residence as being subservient to Gibson Dunn; their "big-law and corporate overlord."  (*Id.* ¶ 119.)

The final conspiracy, so far, rests on the idea that Judge Berle and Mr. Kabateck acted in concert with one another to deprive Mr. Libman of his present and future property rights.  Without alleging what Mr. Kabateck supposedly did, or precisely what he agreed to do, Mr. Libman complains that the conspiracy resulted in the Orders requiring him to disgorge the $1.65 million in attorneys' fees, requiring him to pay discovery sanctions of $116,000.00, and fining him $44,000.00 for contempt of court.  (*Id.* ¶ 303.)  Mr. Libman seems to want this Court to intervene on his behalf despite the fact that those Orders are on appeal.  (RJN, Ex. 6.)

Mr. Libman goes on to theorize that:  (i) even though he is entitled to file an application in the *Jones* Action for additional attorneys' fees, such an application, if made to Judge Berle, would be denied because the proverbial "fix" is in (Dkt. No. 77 ¶¶ 13, 106-08, 351)[1]; and (ii) that the conspirators (including Judge Berle) have decided to make sure that the millions of dollars of attorney's fees Mr. Libman would

---

[1]   Without any foundation whatsoever, Mr. Libman appears to have concluded that things might not be going his way because, what else, Judge Berle most likely was on the take.  In paragraph 266 of the FAC, Mr. Libman recounts feeling "duty bound" to ask Judge Berle to explain his purchase of real property because of the "***suspicious timing***" of the cash purchase "intertwined with Judge Berle's approval of the 67.5 million *Jones Settlement* and its funding."  (Dkt. No. 77 ¶ 266 (emphasis in original).)

allegedly be entitled to receive, if such an application were made, would be transferred to Mr. Kabateck as a back door pay-off designed to sweep the alleged "incompetence, failures and carelessness in prosecuting the City's action against PWC under the proverbial rug and create the 'optics' that Judge Berle did not mishandle the LADWP/PWC fiasco." (*Id*. ¶¶ 105-07.)

*The FAC barely mentions Mr. George, movant here, which explains why there are no allegations showing that he agreed to participate in these unusual (implausible) conspiracies, that he was even aware of the conspiracies, or knowingly did anything in furtherance of any supposed conspiracy.   Indeed, Mr. George's only "connection" to the conspiracy is serving as one of the outside attorneys for the City, having been co-counsel with Mr. Kabateck in unrelated matters, and allegedly having a friendship with Mr. Kabateck.* (*Id*. ¶¶ 86, 104-05, 346, 355.)

### D.   The Complaint, Initiating This Action, And The FAC

Plaintiffs commenced this action on December 6, 2021.  (Dkt. No. 1.)   In response, defendants Kinglsey & Kingsley APC and Erik Kingsley, as well as the Kabateck Defendants, filed motions to dismiss.  (Dkt. Nos. 41, 49.)  Plaintiffs failed to oppose either motion; accordingly, the Court vacated the hearing date and granted the motions with leave to amend.  (Dkt. No. 75.)  This Court specifically warned that, *"[i]n preparing the First Amended Complaint, plaintiffs shall carefully evaluate the contentions set forth in defendants' motions*." (*Id.* (emphasis added).)

On February 3, 2022, Plaintiffs filed the instant FAC but failed to heed the Court's prior admonition as they barely addressed the issues raised by the motions. (Dkt. No. 77.)  Again, only one claim for relief is asserted against Mr. George – a Section 1983 Claim (Count III) which, like the original Complaint, remains devoid of allegations of wrongdoing against him.

### III.   <u>LEGAL STANDARD</u>

A court may dismiss a claim or complaint where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *see also* Fed. R. Civ. P. 12(b)(6).

To survive dismissal, a plaintiff is "obligat[ed] to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted); *see also Ball v. Cal. Dep't of Corrs. and Rehab.*, No. 13-cv-1483, 2013 WL 5272991, at *2 (N.D. Cal. Sept. 17, 2013) ("Sweeping conclusory allegations will not suffice; the plaintiff must instead 'set forth specific facts as to each individual defendant's deprivation of protected rights.'").

These inflexible rules, and one other, are particularly relevant here given the absence of factual allegations leveled against Mr. George, and the utterly absurd nature of the allegations that are made – many of which are conveniently stated "on information and belief."   The other inflexible rule is that a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" which requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Also, "a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).   The FAC fails on all accounts.   Accordingly, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir.

1  2013) (quoting *Iqbal*, 556 U.S. at 678). "Something more is needed, such as facts

2  tending to exclude the possibility that the alternative explanation is true." *Id.*

3      Although a court is generally limited to the pleadings on a Rule 12(b)(6)

4  motion, there are "two exceptions": judicial notice under Federal Rule of

5  Evidence 201 and incorporation by reference. *Lee v. City of Los Angeles*, 250 F.3d

6  668, 688-89 (9th Cir. 2001); *see also Yang v. Dar-Al-Handash Consultants*, 250 F.

7  App'x 771, 772 (9th Cir. 2007) (explaining that a court need not "blindly accept the

8  allegations in the pleadings as true if these allegations are contradicted by uncontested

9  facts set forth in . . . documents that are referred to in the non-moving party's

10  pleading" or "facts that are included in materials that can be judicially noticed");

11  *Johnson v. Quality Loan Serv. Corp.*, No. 18-cv-9140, 2018 WL 6978196, at *2-3

12  (C.D. Cal. Dec. 18, 2018). Courts need not accept the factual allegations as true when

13  the allegations are contradicted by judicially noticeable materials. *Howard v. Cty. of*

14  *Riverside*, No. 12-cv-700, 2013 WL 12138760, at *5 (C.D. Cal. Jan. 10, 2013).

15  ## IV.   ARGUMENT

16      Once again, the only claim for relief asserted against Mr. George appears in

17  Count III, alleging that he violated Plaintiffs' civil rights within the meaning of

18  42 U.S.C. § 1983. Plaintiffs therefore must allege that Mr. George performed some

19  intentional act which deprived them of a specific, identifiable, civil right. *See West v.*

20  *Atkins,* 487 U.S. 42, 48-49 (1988); *see also Daniels v. Williams*, 474 U.S. 327, 333-

21  34 (1986).

22      Plaintiffs face insurmountable problems. First, the FAC is devoid of

23  allegations (factual allegations) demonstrating that Mr. George was a state actor – as

24  only state actors can be liable under 42 U.S.C. section 1983. Second, the FAC does

25  not allege that Mr. George violated Plaintiffs' civil rights at all. Third, the "harm"

26  Plaintiffs supposedly sustained cannot be adjudicated in this forum – the only relief

27  Plaintiffs might be entitled to pursue, they are pursuing in the California Court of

28  Appeal. Fourth, at least part of the relief Plaintiffs seek is not ripe for adjudication.

### A.    Mr. George Is Not A State Actor

Only state actors can violate section 1983.  *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620 (1991) (recognizing that "the conduct of private parties lies beyond the Constitution's scope in most instances . . .").  And while it is possible for a private party to become a state actor where he or she provides significant assistance to a state actor (*Price v. State of Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991)), there are no such allegations to that effect against Mr. George.

Examining the purported harm (whether that harm constitutes a violation of a civil right or not) suffered by Plaintiffs, it becomes crystal clear that Mr. George could not have rendered significant (or any) aid to a state actor.  In this regard, the harm Plaintiffs say they suffered relates to Judge Berle's Orders requiring Mr. Libman to disgorge $1.65 million in attorneys' fees and pay $116,000.00 in discovery sanctions and contempt of court fines of $44,000.00.  (Dkt. No. 77 ¶¶ 303.)  However, neither Mr. George nor the City instituted the proceedings leading up to these Orders.  (*Id.* ¶¶ 273-274.)

To the extent Plaintiffs rely on their conspiracy allegations to advance a contrary argument, the FAC still fails to allege a viable claim for relief.  In the Ninth Circuit, in a civil rights lawsuit based on a conspiracy, a mere allegation of a conspiracy without factual specificity – as is the case with the FAC – is insufficient.  *See Estate of Duran v. Chavez*, No. 2:14-cv-02048, 2015 WL 8011685, at *13 (E.D. Cal. Dec. 4, 2015); *see also Ricks v. City of Pomona*, No. 18-cv-7862, 2019 WL 296199, at *6 (C.D. Cal. Jan. 23, 2019).  The complaint must contain more than legal conclusions and must put forward specific facts that support a conspiracy.  *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F. 2d 621, 626 (9th Cir. 1988).[2]

---

[2]    Count III also fails as to Mr. George if the Court finds that any government officials or employees are immune from liability.  In the Ninth Circuit, "[p]rivate persons cannot be held liable for conspiracy under the Civil Rights Statutes if the other conspirators are state officials who are themselves immune to liability under the facts

1    There simply are no plausible allegations in the FAC showing that Mr. George

2    was acting at all, much less acting at the behest of a state actor, to commit or aid a

3    purported violation of Plaintiffs' civil rights.

4    **B.**   **Even If Mr. George Had Been A State Actor, The FAC**

5    **Fails To Allege That He Violated Plaintiffs' Civil Rights**

6    In Part IX of the FAC, paragraphs 130 through 198, Plaintiffs purport to

7    describe their "persecution" and describe the acts which violated their civil rights.

8    None of those allegations pertain to, or describe, any wrongful act on Mr. George's

9    part, nor do they show how, or whether, Mr. George aided a state actor in violating

10   Plaintiffs' civil rights.  Indeed, all of the allegedly wrongful acts were, according to

11   Mr. Libman, committed by Judge Berle or Mr. Kabateck.

12   Judge Berle allegedly repeatedly raised his voice to Mr. Libman, mocked

13   Mr. Libman, cut Mr. Libman off during oral argument, rejected multiple "notices of

14   fraud" filed by Mr. Libman, summarily removed Mr. Libman as "liaison" class

15   counsel, improperly struck a lien notice filed by Mr. Libman,[3] issued a restraining

16   Order against Mr. Libman to prevent him from harassing Mr. Kabateck, and rejected

17   Mr. Libman's request that Judge Berle recuse himself from the *Jones* Action.  (*E.g.*,

18   Dkt. No. 77 ¶¶ 133, 159, 168, 177, 178, 181, 182, 183, 190, 239, 248, 303.)

19   Mr. Kabateck ran afoul of Mr. Libman by somehow "brazenly" attempting to take

20   credit for Mr. Libman's work, harassing Mr. Libman at every turn, and submitting a

21   false report to Judge Berle, among other vaguely alleged indignities.  (*E.g.*, Dkt.

22   No. 77 ¶¶ 123, 124, 125, 165, 176, 191, 269, 449.)

23

24   alleged." *Sykes v. State of Cal. (Dept. of Motor Vehicles)*, 497 F.2d 197, 202 (9th Cir.

25   1974); *see also Pleasant v. Turner*, No. 13-cv-329, 2013 WL 5798994, at *6 n.6 (E.D.
     Cal. Oct. 28, 2013).

26   [3]   Judge Berle struck Plaintiffs' Notice of Lien related to attorneys' fees in the *Jones*

27   Action that had never been applied for, much less approved.  (*See* Dkt. No. 77 ¶¶ 130,
     131, 168.)

28

1   None of these alleged events has anything to do with Mr. George.  And while
2   not listed in paragraphs 130 through 198, to the extent Plaintiffs meant to include the
3   aforementioned disgorgement and related Orders issued by Judge Berle as
4   constitutional violations, they also have nothing to do with Mr. George.

5   ### C.   Plaintiffs' Conspiracy-Based Claim Is Implausible

6   One of the reasons courts review complaints to assess whether the allegations
7   are plausible is to objectively make a determination as to whether the facts, if
8   seemingly implausible, are sufficient to state a claim.  The more implausible the
9   allegations appear, the more likely they can never be proven and all the more reason
10   to disallow the pleader from alleging important facts on information and belief.
11   *Twombly,* 550 U.S. at 557-58 (dismissal appropriate where plaintiffs' allegations do
12   not plausibly suggest an entitlement to relief).

13   This raises the question of whether, based on the FAC (Plaintiffs' second
14   opportunity to state their claims), it is plausible that Plaintiffs were indeed the targets
15   of more than one conspiracy to harm them and deprive them of their civil rights?  Is
16   it plausible that Judge Berle was the main actor moving the conspiracy forward for
17   his personal and economic benefit?  Or is it more likely than not that Mr. Libman is
18   simply unable to appreciate the reality that he bears responsibility for where he finds
19   himself?  One thing is certain, Mr. George had nothing to do with Mr. Libman's
20   situation and should not be required to answer the FAC.

21   ### D.   Plaintiffs' Claim Is Not Ripe

22   Plaintiffs' contend that their civil rights might be violated because any future
23   motion to recover additional attorney's fees (equal to 29% of any recoveries realized
24   for the *Jones* Action post-judgment) (Dkt. No. 77 ¶¶ 13, 104-08, 346-47, 351, 360)
25   would be dead on arrival because the conspirators have secretly agreed to award the
26   fees belonging to Plaintiffs to Mr. Kabateck.  (*Id*. ¶ 105.)  That is, according to
27   Plaintiffs, undue bias, or corruption, or both, will cause Judge Berle to summarily
28

DEFENDANT ERIC M. GEORGE'S NOTICE OF MOTION AND MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES

1   deny any such fee request and give Plaintiffs' property to Mr. Kabateck.  (*Id.* ¶¶ 107,
2   351.)

3        Ignoring the rank implausibility of such allegations, the import of other
4   allegations in the FAC demonstrate that Plaintiffs' theory is not only highly
5   speculative but flat out wrong.  In pleadings filed in the *Jones* Action, Mr. Kabateck
6   informed Judge Berle that he plans to seek attorneys' fees at some future date but
7   measured only by the actual hours his law firm has devoted to the *Jones* Action since
8   his appointment as new class counsel, not by the 29% that Libman claims he is entitled
9   to recover.  (RJN, Ex. 7 at 14 [Joint Status Report, *Jones v. City of Los Angeles*, Los
10  Angeles Superior Court Case No. BC577267, filed on December 10, 2021].)
11  Mr. Libman's idea that Judge Berle is part of a secret plan to turn over millions of
12  dollars of attorneys' fees belonging to Plaintiffs to Mr. Kabateck is a sad figment of
13  Mr. Libman's imagination.  (*Id.*; *see also* Dkt. No. 77 ¶¶ 105, 345.)

14       Even if Plaintiffs' allegations were plausible, the foregoing issues are not ripe
15  for adjudication because Plaintiffs have not yet even filed a motion for attorneys' fees
16  – the harm they fear is purely hypothetical.  The ripeness doctrine is "drawn both from
17  Article III limitations on judicial power and from prudential reasons for refusing to
18  exercise jurisdiction" and is "designed to prevent the courts, through avoidance of
19  premature adjudication, from entangling themselves in abstract disagreements." *Nat'l*
20  *Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citing *Reno v. Cath.*
21  *Soc. Servs., Inc.*, 509 U.S. 43, 58, n.18 (1993)); *see also Thomas v. Anchorage Equal*
22  *Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).  A court cannot "declare rights in
23  hypothetical cases," but rather, a court's role is "to adjudicate live cases or
24  controversies consistent with the powers granted the judiciary in Article III of the
25  Constitution." *Thomas*, 220 F.3d at 1138.

26       ### E.   The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claim

27       The *Rooker-Feldman* doctrine "instructs that federal courts are without
28  jurisdiction to hear direct appeals from the judgments of state courts." *Cooper v.*

1  *Ramos*, 704 F.3d 772, 777 (9th Cir. 2012); *see also Doe & Assocs. L. Offs. v.*
2  *Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) ("[F]ederal district courts lack
3  jurisdiction to review the final determinations of a state court in judicial
4  proceedings.").   The doctrine applies to any state court decision, not just final
5  judgments.   *Napolitano*, 252 F.3d at 1029-30 (rejecting argument that "*Rooker-*
6  *Feldman* should not operate to deny jurisdiction here because the state court's denial
7  of the motion to quash was an interlocutory order, rather than a final judgment"; the
8  "doctrine is not premised on the availability of Supreme Court review of the state
9  court decision") (collecting authorities).

10      If a plaintiff brings a "de facto appeal" of a state court decision, "*Rooker-*
11  *Feldman* requires that the district court **dismiss the suit for lack of subject matter**
12  **jurisdiction**."   *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)
13  (emphasis added); *see also Napolitano*, 252 F.3d at 1029-30.   To determine whether
14  *Rooker-Feldman* applies, courts "pay close attention to the relief sought by the
15  federal-court plaintiff."   *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003),
16  *cert. denied*, 540 U.S. 1213 (2004) (citation omitted).   If the court cannot grant the
17  relief sought without "undoing" the decision of the state court, the *Rooker-Feldman*
18  doctrine bars the claim.   *Id.*

19      Here, the doctrine bars the claim against Mr. George because Plaintiffs' claim
20  amounts to an appeal – to this federal Court – from various Orders Judge Berle issued
21  in the *Jones* Action.   Described another way, even though Mr. George is not alleged
22  to have had anything to do with the Orders, Plaintiffs' objective is to nullify those
23  Orders by shifting the underlying blame from Mr. Libman and his actions to
24  Mr. George, among others, and a conspiracy.   (*See* Dkt. No. 77 ¶¶ 303, 359.)   Recall
25  Plaintiffs' allegation that they have been deprived of their "property rights from the
26  *Jones* settlement agreement and Final Judgment" (*i.e.*, the attorneys' fees which Judge
27  Berle disgorged in the *Jones* Action).   (*Id.*)

28

To avoid the *Rooker-Feldman* doctrine, the FAC alleges that "Plaintiff[s] are expressly not seeking relief from the Federal Court to annul, void or reverse the Orders and Judgments entered by Defendants Judge Berle against MJL [Michael J. Libman] in March of 2021, including the contempt, sanctions, and disgorgement orders/judgments.  Therefore, defenses of abstention doctrines, including *Rooker-Feldman . . .* are not applicable in this case." (*Id.* ¶ 311.)

Aside from the fact that the foregoing allegation stands in direct conflict with how Plaintiffs describe their lost property rights (*id.* ¶¶ 303, 359), "[s]imply declaring [*e.g.* alleging] that the *Rooker-Feldman* doctrine is inapplicable does not make it so." *See Haring v. Wells Fargo Bank N.A.*, No. 18-cv-3310, 2018 WL 10471109, at *3 (N.D. Cal. Oct. 17, 2018) (citing *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) ("Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss.")).  Regardless of how Plaintiffs try to frame it, the relief they seek intrinsically requires this Court to revisit the propriety of the decisions Judge Berle made in the *Jones* Action.  *See Haring*, 2018 WL 10471109, at *3 (dismissing an action that required the court to revisit and reverse the state court's ruling "regardless of the legal bases of [the] plaintiff's claims").

For these essential reasons, the *Rooker-Feldman* doctrine should be applied in favor of Mr. George to end this needless lawsuit, particularly given Plaintiffs have asked the California Court of Appeal to step in and determine whether Judge Berle's Orders should be affirmed or reversed.  (RJN, Ex. 6.)

## F.    The *Noerr-Pennington* Doctrine Bars Plaintiffs' Claim

Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.  *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  Petitioning conduct includes all "litigation activities which constitute 'communication[s] to the court,'" such as complaints, answers, and "'other assorted

documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something.'" *Sosa*, 437 F.3d at 933 (quoting *Freeman v. Lasky, Hass & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005)).

The doctrine protects "not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit.'" *Id.* at 934-35 (citing *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.,* 944 F.2d 1525, 1528-29 (9th Cir.1991), *aff'd*, 508 U.S. 49 (1993)). Even "communications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity." *Id.* at 935.

Further, a heightened pleading standard applies to claims subject to the *Noerr-Pennington* protection. *See Oregon Nat'l Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) ("Where a claim involves the right to petition governmental bodies under *Noerr-Pennington*, however, we apply a heightened pleading standard."). The plaintiff "'must include allegations of the specific activities' which bring the defendant's conduct into one of the exceptions to *Noerr-Pennington* protection." *Id.* (explaining this "is necessary to avoid 'a chilling effect on the exercise of this fundamental First Amendment right'").

Plaintiffs' claim against Mr. George is undeniably based on his participation in protected petitioning conduct in the *Jones* Action, as well as the City's lawsuit against PwC. Plaintiffs' Count III seeks to impose personal civil liability against Mr. George based on his client, the City's, litigation in the *Jones* Action, the City's decision to dismiss its lawsuit against PwC, and – again – the City's purported future position in anticipated court filings regarding requests for attorneys' fees. (*E.g.*, Dkt. No. 77 ¶¶ 104, 105, 139-41, 306, 360.)

1    **G.    The *Younger* Abstention Doctrine Applies Here**

2    "*Younger* abstention is a 'circumscribed exception to mandatory federal

3    jurisdiction . . . .'" *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 617 (9th

4    Cir. 2003).  The doctrine is based on "the notion of 'comity,' that is, a proper respect

5    for state functions, a recognition of the fact that the entire country is made up of a

6    Union of separate state governments, and a continuance of the belief that the National

7    Government will fare best if the States and their institutions are left free to perform

8    their separate functions in their separate ways." *Juidice v. Vail*, 430 U.S. 327, 334

9    (1977).  *Younger* applies when the federal relief sought "interfere[s] in some manner

10   with the state litigation," *Baffert*, 332 F.3d at 617, even if the "the federal proceeding

11   would not 'directly interfere' in the ongoing state proceedings," *Burlington Ins. Co.*

12   *v. Panacorp., Inc.*, 758 F. Supp. 2d 1121, 1135 (D. Haw. 2010).

13   Federal courts look to whether "there is a pending state proceeding that

14   implicates important state interests and provides the federal plaintiff with an

15   opportunity to raise federal claims." *Baffert*, 332 F.3d at 617.  The Court need only

16   consider "'(1) The nature of the state proceedings in order to determine whether the

17   proceedings implicate important state interests, (2) the timing of the request for

18   federal relief in order to determine whether there are ongoing state proceedings, and

19   (3) the ability of the federal plaintiff to litigate its federal constitutional claims in state

20   proceedings.'" *Id.*

21   If allowed to proceed in this Court, Plaintiffs' claim against Mr. George would

22   directly compete with Judge Berle's continuing jurisdiction in the *Jones* Action, and

23   with the jurisdiction of the California Court of Appeal to which Plaintiffs have

24   appealed the disgorgement and sanctions Orders.  In effect, as mentioned previously,

25   Plaintiffs should not be allowed to use Count III as a vehicle to avoid the

26   consequences of those Orders by shifting them to Mr. George and the other defendants

27   here.  This Court should abstain.

28

### H.   <u>Leave To Amend Should Be Refused</u>

The FAC should be dismissed with prejudice because there is no hope of curing its defects through amendment.  *E.g.*, *Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007) (affirming dismissal without leave to amend where plaintiff failed to "suggest[] any possible way that he could cure his complaint to survive dismissal upon amendment").  Count III against Mr. George is fatally defective because of its nature and the relief sought (*i.e.*, effectively seeking to appeal and undo Judge Berle's decisions in the *Jones* Action).  These are not minor technicalities or deficiencies that could be resolved in a further amended complaint, but flaws that run contrary to established legal doctrine.

Plaintiffs have already had one chance to address and correct the identical deficiencies raised in the motions previously filed by the Kabateck and Kingsley Defendants.  (*See* Dkt. Nos. 41, 49, 75.)  The best that can be said of the FAC is that it includes a few additional but insufficient and conclusory paragraphs that fail to remedy the problems, as addressed above, and do not in any event pertain to Mr. George.  (*See, e.g.*, Dkt. No. 77 ¶¶ 311, 351, 357.)  Mr. George therefore requests that this Court put an end to Plaintiffs' improper attempt to use this Court to validate Mr. Libman's perceived "conspiracies."

//
//
//
//
//
//
//
//
//
//

## V.     <u>CONCLUSION</u>

For each of the foregoing reasons, this Court should grant this Motion and dismiss the FAC's Count III against Mr. George with prejudice and without leave to amend.

DATED:  February 17, 2022           ELLIS GEORGE CIPOLLONE
                                    O'BRIEN ANNAGUEY LLP
                                         Guy C. Nicholson
                                         Kathryn L. McCann
                                         Jason Y. Kelly


                                    By:     */s/ Kathryn L. McCann*
                                            Kathryn L. McCann
                                    Attorneys for Defendant Eric M. George